**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| RUSTY STRICKLAND, | ) | |
| ALAN AND AMY WEST FARMS, | ) | |
| ALAN WEST, | ) | |
| AMY WEST, | ) | |
| DOUBLE B FARMS, LLC, and | ) | |
| BRYAN BAKER, | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-60-Z |
| | ) | |
| THE UNITED STATES DEPARTMENT OF AGRICULTURE, | ) | |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, | ) | |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, and | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
|      Defendants. | ) | |

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION OR, IN THE ALTERNATIVE, RELIEF UNDER 5 U.S.C. § 705**

---

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 2

I.    Plaintiffs face irreparable harms. ........................................................... 2

II.   Plaintiffs brought this case with reasonable promptness owing to its nature and
      complexity................................................................................................ 6

III.  USDA fails to demonstrate that Plaintiffs are not likely to succeed on the merits.    8

      A.    The programs fall squarely within the Major Questions Doctrine. ...    8

      B.    Progressive factoring is discriminatory and is not insulated from review.    11

            1.    Progressive factoring discriminates based on race and sex. ..    11

            2.    USDA ignores binding Fifth Circuit law explaining that progressive
                  factoring is reviewable. ........................................................    12

            3.    Progressive factoring is arbitrary and capricious...................    13

      C.    USDA cannot prevail under strict scrutiny. .......................................    14

            1.    USDA cannot show a compelling interest. ............................    14

            2.    The programs are not narrowly tailored.................................    19

IV.   An injunction is in the public interest, and USDA's claimed harms are exaggerated.    22

CONCLUSION................................................................................................    23

CERTIFICATE OF COMPLIANCE .........................................................    25

CERTIFICATE OF SERVICE ....................................................................    25

i

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Adarand Constructors v. Peña,*
    515 U.S. 200 (1995) ................................................................................ 14

*ADT, LLC v. Cap. Connect, Inc.,*
    145 F. Supp. 3d 671 (N.D. Tex. 2015) .................................................... 7

*Ala. Ass'n of Realtors v. HHS,*
    141 S. Ct. 2485 (2021)............................................................................ 11

*Arlington Heights v. Metropolitan Housing Development Corp.,*
    429 U. S. 252 (1977) ............................................................................... 12

*Armstrong v. Turner Indus., Inc.,*
    141 F.3d 554 (5th Cir. 1998) .................................................................. 6

*Arnold v. Garlock, Inc.,*
    278 F.3d 426 (5th Cir. 2001) .................................................................. 8

*Brewer v. W. Irondequoit Cent. Sch. Dist.,*
    212 F.3d 738 (2d Cir. 2000) .................................................................. 3

*BST Holdings L.L.C. v. OSHA,*
    17 F.4th 604 (5th Cir. 2021)................................................................... 8, 22

*City of Richmond v. J.A. Croson Co.,*
    488 U.S. 469 (1989) ................................................................ 2, 9, 14, 15, 17

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.,*
    218 L. Ed. 2d 71 (2024).......................................................................... 12

*Data Mktg. P'ship, LP v. DOL,*
    45 F.4th 846 (5th Cir. 2022)................................................................... 13

*Dean v. City of Shreveport,*
    438 F.3d 448 (5th Cir. 2006) ................................................................. 15, 17

*Encino Motorcars, LLC. v. Navarro,*
    579 U.S. 211 (2016) ............................................................................... 13

*Faust v. Vilsack,*
    519 F. Supp. 3d 470 (E.D. Wis. 2021) .................................................. 15

*FCC v. Fox TV Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................... 13, 14

*Fisher v. Univ. of Tex. at Austin*,
    570 U.S. 297 (2013) ........................................................ 19

*Free Speech Coal., Inc. v. Paxton*,
    2024 U.S. App. LEXIS 5555 (5th Cir. 2024) ............................ 22

*Free the Nipple-Fort Collins v. City of Fort Collins*,
    916 F.3d 792 (10th Cir. 2019) ............................................ 3

*Greer's Ranch Café v. Guzman*,
    540 F. Supp. 3d 638 (N.D. Tex. 2021) ................................ 3, 17

*Grupo Acerero S.A. de C.V. v. United States*,
    615 F. Supp. 3d 1339 (CIT 2023) ........................................ 16

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................ 12

*Holman v. Vilsack*,
    2021 U.S. Dist. LEXIS 127334 (W.D. Tenn. 2021) ......... 15, 17, 18, 19, 21

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
    2019 U.S. Dist. LEXIS 227044 (N.D. Tex. 2019) .................... 6, 7

*League of United Latin Am. Citizens v. Abbott*,
    601 F. Supp. 3d 147 (W.D. Tex. 2022) ................................ 1, 3

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ............................................ 22

*Louisiana v. EPA*,
    2024 U.S. Dist. LEXIS 12124 (W.D. La. 2024) ...................... 9

*Marks Org., Inc. v. Joles*,
    784 F. Supp. 2d 322 (S.D.N.Y. 2011) .................................. 7

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ............................................ 3

*Miller v. Vilsack*,
    2021 U.S. Dist. LEXIS 264778 (N.D. Tex. 2021) ......... 3, 10, 15, 18, 19

*Moore v. USDA ex rel. FMHA*,
    993 F.2d 1222 (5th Cir. 1993) ............................................ 3

*NRA of Am., Inc. v. Bureau of ATF*,
    2024 U.S. Dist. LEXIS 57557 (N.D. Tex. 2024) .................... 7

*Nuziard v. Minority Bus. Dev. Agency*,
    676 F. Supp. 3d 473 (N.D. Tex. 2023) ................................................................. 1

*Nuziard v. Minority Bus. Dev. Agency*,
    2024 U.S. Dist. LEXIS 38050 (N.D. Tex. 2024) .............. 2, 4, 9, 15, 17, 18, 19, 20, 21, 22

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No.*,
    551 U.S. 701 (2007) ..................................................................... 16

*Sackett v. EPA*,
    143 S. Ct. 1322 (2023) .................................................................... 9

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ..................................................................... 16

*Shaw v. Hunt*,
    517 U.S. 899 (1996) ..................................................................... 2, 15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    143 S. Ct. 2141 (2023)……………………………………........…    4, 11, 14, 17, 20, 21, 22

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ..................................................................... 8

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) ..................................................................... 12, 13

*United States v. Paradise*,
    480 U.S. 149 (1987) ..................................................................... 20

*Ultima Servs. Corp. v. USDA*,
    2023 U.S. Dist. LEXIS 124268 (E.D. Tenn. 2023) ................................................ 15

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302, 324 (2014) ..................................................................... 11

*Vanderstok v. BlackHawk Mfg. Grp. Inc.*,
    659 F. Supp. 3d 736 (N.D. Tex. 2023) ................................................................. 8

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021) ..................................................................... 15, 17

*Walker v. City of Mesquite*,
    169 F.3d 973 (5th Cir. 1999) ..................................................................... 20

*Webster v. Doe*,
    486 U.S. 592 (1988) ..................................................................... 12

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022)................................................................... 8, 10, 11

*Wireless Agents, LLC. v. T-Mobile USA, Inc.*,
    2006 U.S. Dist. LEXIS 37783 (N.D. Tex. 2006) ................................ 6

*Wygant v. Jackson Bd. of Educ.*,
    476 U.S. 267 (1986) ....................................................................... 15

*Wynn v. Vilsack*,
    545 F. Supp. 3d 1271 ..............................................................15, 16, 18, 19

**Statutes**

5 U.S.C. § 551(4) ................................................................................. 13

5 U.S.C. § 553(a)(2) ............................................................................ 13

7 U.S.C. § 2003(e)(1) ......................................................................... 9

7 U.S.C. § 2003(f) ............................................................................... 10

Pub. L. 117-169, § 22007(e) (2022) ................................................. 10, 16

**Regulations**

7 C.F.R. § 1466 ................................................................................... 6

Executive Order 13985, *Advancing Racial Equity and Support for Underserved Communities
    Through the Federal Government*, 86 Fed. Reg. 7009 (Jan. 25, 2021).................. 9

Executive Order 14091, *Further Advancing Racial Equity and Support for Underserved
    Communities Through the Federal Government*, 88 Fed. Reg. 10825 (Feb. 22, 2023)    9, 17

Notice of Funds Availability; Emergency Relief Program 2022 (ERP 2022),
    88 Fed. Reg. 74404 (Oct. 31, 2023) ........................................ 11, 12, 13

Notice of Funds Availability; Emergency Relief Program (ERP),
    87 Fed. Reg. 30164 (May 18, 2022)........................................ 11, 14

**Other Authorities**

11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 Irreparable Harm (3d ed. 2022)    3

v

## INTRODUCTION

"The route to achieving Equity will not be accomplished through treating everyone equally." U.S. Dep't of Agric., What is Equity, 2 (2023), https://perma.cc/7G76-EYS8. USDA's casual disregard for the constitutional command of equality is embodied by its response brief, with its paper-thin justifications for an eager embrace of official discrimination. USDA seeks to rewrite the Constitution by replacing equality with what it deems a higher goal—"Equity," with a capital E—despite repeated court losses. USDA gives no reason why this Court should not hand it another.

Unable to deny that it is actively discriminating, USDA hopes that the Court will permit it to continue until a final ruling. USDA argues Plaintiffs' injuries can be remedied monetarily and so its discrimination is not irreparable even though courts in this district routinely grant similar preliminary injunction requests. *See Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473 (N.D. Tex. 2023) (*Nuziard I*). But the stigmatic harm inflicted by an equal protection injury cannot be quantified or remedied with money. *Id*. at 484 (holding minimal lapses in equal protection "unquestionably constitutes irreparable injury") (quoting *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 182 (W.D. Tex. 2022) (*LULAC*) (citing cases)). In any case, it will only be easier to fix USDA's race and sex discrimination on the back end if less funds are spent during the pendency of this litigation. That serves everyone's interests.

USDA falls far short of showing that the merits of Plaintiffs' case are insubstantial. On major questions, nothing could be more politically significant in 2024 than state-sanctioned discrimination. USDA itself considers it of such paramount importance that it insists on embedding a focus on race and sex in "everything [it] do[es]." U.S. Dep't of Agric., Equity Action Plan 2023 Update, 2 (2024), https://perma.cc/PQH3-4B3W. Nor can USDA satisfy strict scrutiny. In fact, it relies on almost exactly the same body of evidence that failed time and again to show a compelling

1

interest. Only this time (1) USDA lacks any kind of congressional imprimatur on its discrimination; (2) its evidence is even more stale; and (3) none of it has anything to do with satisfying its actual burden here—showing past discrimination in USDA disaster relief programs. Its evidence is just more of the sorts of statistical disparities that courts reject as insufficient. USDA does not mention the great strides Congress took in 2022 to address USDA's past discrimination with $2.2 billion dollars to compensate victims of USDA's discrimination. USDA also fails to show that its programs are narrowly tailored. It does not discuss whether it considered alternatives when race-neutral ways to help distressed farmers obviously exist. USDA uses them in the challenged programs through the "limited resource" category. Finally, court after court has rejected these exact racial categories as simultaneously over- and under-inclusive.

Lastly, Plaintiffs satisfy the balance of harms and public interest factor, which merge in cases against the government. The public interest lies in the protection of constitutional rights and against unlawful agency action.

## ARGUMENT

### I.     Plaintiffs face irreparable harms.

As Plaintiffs explained in their opening brief, equal protection violations are irreparable. Pls.' Br. in Sup. of Mot. for Prelim. Inj., ECF No. 11, at 22–23. This is because discrimination "cause[s] 'stigmatic harm'" that cannot be redressed by any legal remedy. *Nuziard v. Minority Bus. Dev. Agency*, No. 23-CV-0278, 2024 U.S. Dist. LEXIS 38050, at *120–21 (N.D. Tex. Mar. 5, 2024) (*Nuziard II*) (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989)); *see Shaw v. Hunt*, 517 U.S. 899, 908 (1996) ("[A] racial classification causes fundamental injury to the individual rights of a person." (internal quotation marks omitted)). It is ongoing because "[t]he badge of inequality and stigmatization conferred by racial discrimination is a cognizable

harm in and of itself . . . ." *Moore v. USDA ex rel. FMHA*, 993 F.2d 1222, 1224 (5th Cir. 1993). And "[a]n ongoing constitutional deprivation can be sufficient to establish irreparable harm." *Miller v. Vilsack*, No. 21-cv-0595, 2021 U.S. Dist. LEXIS 264778, at *30 (N.D. Tex. July 1, 2021). ERP 2022 is an ongoing program; discriminatory relief payments are happening *right now* in ERP 2022, exacerbating the injuries. Defs.' Resp. to Pls.' Mot. for Prelim. Inj., ECF No. 21, at 11. The other seven programs could also recalculate payments. Ducheneaux Decl., ECF No. 21-1 ¶ 89. Plaintiffs' proof of their stigmatic injury is unrebutted. *See* Rusty Strickland Decl., ECF No. 10-1 ¶¶ 23; Alan West Decl., ECF No. 10-2 ¶¶ 22; Bryan Baker Decl., ECF No. 10-3 ¶¶ 22.

Courts in this Circuit routinely hold that constitutional violations like the right to equal treatment are irreparable, not only First Amendment violations. *See, e.g.*, *LULAC*, 601 F. Supp. 3d at 182 (explaining equal protection violations "inflict irreparable injuries because the loss of constitutional freedoms for even minimal periods of time unquestionably constitutes irreparable injury"); *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 651 (N.D. Tex. 2021) (holding plaintiffs denied equal treatment irreparably harmed); *Miller*, 2021 U.S. Dist. LEXIS 264778, at *30 (same). USDA exclusively relies on out-of-circuit precedent even as it complains that Plaintiffs cite out-of-circuit precedent like *Vitolo*, which *Miller* and *Nuziard II* both cited favorably. ECF No. 21 at 17 n.4. The Eleventh Circuit, on which USDA relies, is the outlier in this respect. *See, e.g.*, *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744 (2d Cir. 2000); 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 Irreparable Harm (3d ed. 2022) (explaining that when a "deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

USDA tries to argue that *Nuziard II* is distinguishable, but it fails to show that this case is different. ECF No. 21 at 18. While USDA correctly quotes one part of *Nuziard II*, "an irreparable injury lacks clear metrics to compute damages," *id*. at 18 (quoting *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at \*120), it omits the part explaining why discrimination itself cannot be computed: "*Damages don't remedy stigmatic harms*." *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at \*120 (emphasis added). Nowhere does Ducheneaux figure in the cost of the stigmatic harm of being treated worse based on race and sex—because there is no such number.

A black man is barred from taking free water bottles from a table labeled "Whites Only." Because of the discrimination, he buys a water bottle from a vending machine for $1. Does $1 compensate him fully for the injuries he has sustained? In USDA's view, that $1 would be a full remedy. Further, according to USDA, the government may even leave up the sign until a court rules on the merits; after all, what harm could it do him to keep treating others better than he was on account of their race? These views are anathema to equal protection. There is no adequate remedy for the injustice of being treated worse based solely on one's skin color or sex. *Id.* at \*120.

USDA's continuing payments based on race and sex inflict further injuries on Plaintiffs. True, we know what USDA would have paid Plaintiffs if they were of the preferred races or sex. *See* ECF No. 21-1 ¶¶ 89–93. And perhaps sufficient funds will allow USDA to pay them more once this case ends. But Plaintiffs' injuries are not purely economic. "The entire point of the Equal Protection Clause is that treating someone differently because of their skin color is *not* like treating them differently . . . because they play the violin poorly or well." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2162 (2023) (*SFFA*). Had USDA denied Plaintiffs disaster relief benefits based on their skill with the violin, their only harm would be monetary. But that is not what happened here.

4

Further, USDA never explains how it thinks it can recalculate Plaintiffs' payments at the rate available to its preferred races and sex through (presumably) some unspecified regulatory provision. *See* ECF No. 21-1 ¶ 89. Plaintiffs got paid the correct amount; it was just via an unconstitutional formula. USDA does not explain how it could adjust amounts correctly awarded under a formula enacted through regulations with the force and effect of law. Nor, for that matter, do Plaintiffs seek such a remedy. *See* Compl., ECF No. 1, at 46–47 (requesting relief).

Even as USDA asserts that Plaintiffs' harms are in the past, it cannot bring itself to say—or even suggest—that it will not continue discriminating against them in future programs. USDA simply claims that "Plaintiffs can have no certainty about . . . what criteria USDA may use in administering any such programs." ECF No. 21 at 12. Given USDA's emphatic commitment to equity and what that entails, Plaintiffs know what criteria USDA will use, and that lost legal battles will not deter USDA from continuing. Plaintiffs have shown in their declarations that they often use USDA's programs. *See* ECF No. 10-1 ¶¶ 14–20; ECF No. 10-2 ¶¶ 14–20; ECF No. 10-3 ¶¶ 12–20. That Plaintiffs did not point to another specific upcoming program in their Complaint is only evidence that USDA had not published another program. Yet. USDA's commitment to "[c]entering equity in everything we do" provides certainty that it will continue to employ race and sex preferences throughout its programs. The Court need look no further than USDA's own Equity Action Plan. *See generally* Equity Action Plan 2023 Update.

That plan lists ways USDA plans to discriminate based on race and sex. USDA intends to (1) "continue and expand grant and cooperative agreement programs that [provide various] assistance to underserved farmers," *id.* at 21; (2) "target direct assistance [like ad-hoc disaster programs] and technical support based on degree of need. USDA is implementing [support for] underserved producers," *id.*; (3) "[i]ntegrate equity into proposal analysis, outreach, scoring, and

guidance related to federal investments," *id.* at 31; (4) "update[e] proposal evaluation criteria to value proposal benefits to disadvantaged communities," *id.* USDA is already acting on this plan. USDA just informed one plaintiff that it is continuing down this path. Alan West applied for the Environmental Quality Incentives Program only to receive a letter in April 2024 informing him that, because of his race and sex, other farmers' proposals would be scored better than his and be more likely to receive funding. Alan West Suppl. Decl. ¶¶ 4–7; *see also* 7 C.F.R. § 1466 *et seq.* (2024) (detailing the program and when USDA may provide favored treatment based on race and sex in it). His application remains pending. Alan West Suppl. Decl. ¶ 6. Plaintiffs must only "allege a likelihood of future violations of their rights"—and they do. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998). Plaintiffs' continuing usage of USDA's programs and USDA's unflagging allegiance to the Biden administration's equity agenda provides that likelihood.

No one disputes that USDA denied Plaintiffs equal access to disaster relief benefits. No one disputes that USDA keeps issuing payments based on race or sex. No way exists to compensate them for the indignity of being discriminated against by USDA, an agency that is, after all, supposed to be helping them recover from natural disasters.

## II.    Plaintiffs brought this case with reasonable promptness owing to its nature and complexity.

USDA asserts that Plaintiffs waited too long to seek a preliminary injunction against the eight sprawling disaster relief programs here. In support, it cites a handful of patent and commercial cases where courts found delays of several months to over a year problematic. *See* ECF No. 21 at 19–20 (citing *Wireless Agents, LLC. v. T-Mobile USA, Inc.*, No. 05-CV-0094, 2006 U.S. Dist. LEXIS 37783 (N.D. Tex. June 6, 2006) and *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 17-CV-3200, 2019 U.S. Dist. LEXIS 227044 (N.D. Tex. Sept. 18, 2019)). Here, Plaintiffs allege an ongoing constitutional injury stemming from the government's use of suspect race and

sex classifications each time that it makes payments using a protected characteristic. These cases could not be less alike. Other courts in the Northern District of Texas have been presented with—and rejected—this exact same sleight of hand with these exact cases in other cases involving important constitutional rights. *See NRA of Am., Inc. v. Bureau of ATF*, No. 23-CV-1471, 2024 U.S. Dist. LEXIS 57557, at *30 (N.D. Tex. Mar. 29, 2024) ("As Plaintiff correctly notes, the cases relied on by Defendants involved commercial trademark rights, whereas this case involves constitutional rights and regulations affecting those rights.").

At best, USDA's cases stand only for the proposition that Plaintiffs should provide a "good explanation" for any delay. *Leaf Trading Cards*, 2019 U.S. Dist. LEXIS 227044, at *3 (internal quotation marks omitted). And even absent a satisfying explanation, an unreasonable delay merely "militates against" the need for injunctive relief. *Id.* (internal quotation marks omitted). In any event, Plaintiffs have a good explanation. The challenged programs were implemented recently, some as late as September and October 2023. Once the programs start, it takes time to find counsel, study complex federal programs, understand the extent of the discrimination that is occurring, prepare and file litigation, and then seek preliminary relief. Still, Plaintiffs moved for a preliminary injunction in April 2024, within months of these latest program notices.

Moreover, courts regularly "permit delays when determining the imminence of alleged irreparable harm where delays were 'caused by [plaintiff's] good faith efforts to investigate facts and law.'" *ADT, LLC v. Cap. Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (quoting *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333–34 (S.D.N.Y. 2011)). These are complicated programs, with byzantine funding formulas buried in the Federal Register, and released without the long deliberative process of notice-and-comment rulemaking. As USDA acknowledges, the challenged programs featured rolling application windows and payment distributions spanning

7

many months. *See* ECF No. 21 at 3. Plaintiffs prudently took time to assess before seeking a preliminary injunction. Some delay in that process is appropriate and does not diminish the ongoing irreparable harm. *See Vanderstok v. BlackHawk Mfg. Grp. Inc.*, 659 F. Supp. 3d 736, 743 (N.D. Tex. 2023) (crediting even a plaintiff's mistaken assumptions as a good explanation for delay, when a plaintiff subsequently acted diligently).

III.    **USDA fails to demonstrate that Plaintiffs are not likely to succeed on the merits.**

USDA does not dispute that when "(1) 'a *serious legal question* is involved' and (2) 'the balance of the equities weighs *heavily* in favor of granting the stay,'" a "'movant need only present a substantial case on the merits.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020) (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001)). Plaintiffs exceed that threshold by showing a strong likelihood of success.

A.    **The programs fall squarely within the Major Questions Doctrine.**

The major questions doctrine addresses the "particular and recurring problem [of] agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022). USDA fails altogether to address Plaintiffs' argument that the programs are economically significant. *See* ECF No. 11 at 17; *BST Holdings L.L.C. v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021) (holding major questions doctrine applies when agency imposes a mere $3 billion in compliance costs and "purports to definitively resolve *one of today's most hotly debated political issues*" (emphasis added)). Secretary Vilsack thinks race-obsessed equity is "essential" for the Nation's economy. Equity Action Plan 2023 Update at 2. USDA takes a stab at political significance, but in 2024, few questions are more consequential than state-sanctioned discrimination. President Biden—USDA's boss—thinks it so important that he has embedded it across the "whole-of-government." Executive Order 13985, *Advancing Racial Equity and Support for Underserved Communities Through the*

*Federal Government*, 86 Fed. Reg. 7009 (Jan. 25, 2021). Everyone agrees on the significance of race and sex discrimination. If Congress wanted that to be a consideration in disaster relief, it would have said so. *Cf. Louisiana v. EPA*, No. 23-CV-00692, 2024 U.S. Dist. LEXIS 12124, at *80 (W.D. La. Jan. 23, 2024) ("[W]hen Congress wants to allow disparate impact claims, it uses particular language." (quotation omitted)).

The government cannot have it both ways. It cannot insist publicly that "addressing systemic racism" requires a "multi-generational commitment" and "an ambitious, whole-of-government approach to racial equity" while assuring this Court that the topic is so inconsequential that bureaucrats can make discrimination official United States policy without Congress saying a word. Executive Order 14091, *Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government*, 88 Fed. Reg. 10825 (Feb. 22, 2023). Race and sex preferences are supposed to be a last resort. The American people expect to hold elected officials accountable when they make the contentious decision to employ race or sex as a remedy. State-sanctioned discrimination cannot be authorized on autopilot.

USDA argues that discrimination was "expressly committed to the Secretary's discretion" through statutory silence. ECF No. 21 at 28. But USDA must provide "clear evidence that [USDA] is authorized to regulate in the manner it proposes" for major questions. *Sackett v. EPA*, 143 S. Ct. 1322, 1341 (2023). And government-sponsored discrimination is never entitled to deference. *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *88–89 (stating that deference "has no place in equal protection analysis" (quoting *J.A. Croson Co.*, 488 U.S. at 501)). Silence is not enough.

USDA damages its case that implementing race and sex preferences through regulations is permissible by pointing to programs that, like § 1005, Congress actually authorized. *See* ECF No. 21 at 28 (citing 7 U.S.C. § 2003(e)(1)). Even though the socially disadvantaged definition has been

used for roughly 20 years, it typically has congressional authorization. *See id.*; *see also* 7 U.S.C. § 2003(f). The Court should require the challenged programs be authorized with the same clarity with which Congress authorized similar programs designed to alleviate race and sex discrimination. *See, e.g.*, Inflation Reduction Act of 2022, Pub. L. 117-169, § 22007(e) (2022) (setting aside $2.2 billion for farmers who "have experienced discrimination" in USDA farm lending programs); *Miller*, 2021 U.S. Dist. LEXIS 264778, at *5 (describing § 1005's clear authorization). In any event, the longstanding existence of an unchallenged agency action does not prevent application of the major questions doctrine. *See West Virginia*, 142 S. Ct. at 2610 (observing that prior EPA rule cited as historical precedent "was never addressed by a court"). And that fact pattern bears little relation to this case—every time a court has considered USDA's discriminatory definitions in a benefits program, USDA has lost. *See* ECF No. 11 at 11–12.

To support the argument that discrimination-by-regulation is not novel, USDA adds that it is "far from unprecedented" in disaster relief programs. ECF No. 21 at 29. Then it cites the eight programs that Plaintiffs challenge as proof. *Id.* ("[The use of the socially disadvantaged farmer designation] in disaster relief programs is far from unprecedented—Plaintiffs themselves have identified eight recent programs using this designation."). The circular logic is dizzying.

USDA says that it only provided "modest benefits," but the benefits are anything but. *Id.* Rusty Strickland and his wife Alison make a perfect, apples-to-apples test case. They own and operate a farm together. ECF No. 10-1 ¶ 6. Rusty received $7,272.71 under ERP 2022 Track 1. *Id.* ¶ 20. Alison received *$71,900.96 for exactly the same loss*. *Id.* A benefit of 888.64% is not modest. Across all their eligible programs, Rusty received $220,331; Alison received $326,097—48% more. *Id.* ¶¶ 14–20; *see also* ECF No. 21-1 ¶¶ 90–92 (detailing similar numbers for other plaintiffs). This is an enormous difference based entirely on one protected characteristic: sex.

That is all USDA has to say about major questions. It is not enough. On the other side of the scale, the Supreme Court stresses how serious it is when the government chooses to discriminate. *See SFFA*, 143 S. Ct. at 2162–63 (explaining government discrimination is "odious to a free people," only permitted "in the most extraordinary case" (quotation omitted)). Again, USDA and the Biden Administration's frequent pledges of allegiance to the discriminatory equity agenda show that they agree with its political significance. *See* ECF No. 11 at 16. It is a top priority.

Because USDA sought to address a major question—whether a farmer afflicted by a natural disaster should get more money based on race and sex—USDA has the burden of pointing to "clear congressional authorization," not mere statutory silence. *West Virginia*, 142 S. Ct at 2614 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). USDA admits that it lacks it. "[E]ach of the statutes authorizing the challenged programs are silent as to how the appropriated funds should be distributed, including the use of the socially disadvantaged farmer designation." ECF No. 21 at 28. USDA may not "decide[] to do" through regulatory action "what Congress had not" done through statute. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2486 (2021) (per curiam).

**B. Progressive factoring is discriminatory and is not insulated from review.**

**1. Progressive factoring discriminates based on race and sex.**

By arguing that progressive factoring is "race- and sex-neutral," ECF No. 21 at 23, USDA shows that it understands neither how its progressive factoring system works nor how it is different from past programs. In ERP 2021 Phase 1, USDA provided every farmer with disaster relief and refunded their insurance premiums. Notice of Funds Availability; Emergency Relief Program (ERP), 87 Fed. Reg. 30164, 30168 (May 18, 2022). In ERP 2022, USDA provided every farmer with disaster relief but did not refund insurance premiums to some farmers based on their race and sex. *See* Notice of Funds Availability; Emergency Relief Program 2022 (ERP 2022), 88 Fed. Reg. 74404, 74410 (Oct. 31, 2023). To stay within congressional allotments, it had to turn to progressive

11

factoring. *Id.* But rather than reducing every farmer's payment equally, USDA reduced *only* the

disaster relief payments using progressive factoring. *Id.* This left the insurance refunds—paid from

the same bucket of money and not available to some farmers because of their race and sex—

untouched.[1] *Id.*; *see also* ECF No. 21 at 24 (admitting insurance refunds and other discriminatory

benefits are added on after progressive factoring is applied).[2] Progressive factoring never touched

the insurance refunds that it gave out based on race and sex. Because this is a constitutional claim,

the APA cannot insulate it from review. *Webster v. Doe*, 486 U.S. 592, 603 (1988) ("We do not

think § 102(c) may be read to exclude review of constitutional claims.").

### 2.    USDA ignores binding Fifth Circuit law explaining that progressive factoring is reviewable.

USDA argues that progressive factoring is beyond judicial review because it is "committed

to agency discretion by law." ECF No. 21 at 24–25 (citing cases from the D.C. Circuit and relying

on a line of cases descended from *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). But Fifth Circuit

precedent recognizes that *Heckler* concerned the unreviewability of nonenforcement decisions.

*Texas v. Biden*, 20 F.4th 928, 978 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528, 2548

(2022). Review of agency rules, however, is categorically distinct. *Id.* ("*Heckler* does not apply to

---

[1] Plaintiffs also explained how progressive factoring discriminates based on race and sex in its interaction with NAP. *See* ECF No. 11 at 20–21. And Plaintiffs explained how USDA knew and intended that progressive factoring would function in a racially discriminatory manner. *Id.* (quoting USDA statements). This discrimination can be inferred from the fact that progressive factoring targets farms owned by those not of USDA's favored races and sex. *Id.* It is also shown by USDA's decision to exempt insurance refunds from progressive factoring at the same time it suddenly switched to denying those refunds to some farmers based on race and sex. *See id.*; *see also Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 218 L. Ed. 2d 71, 74 (2024) (Alito, J, dissenting from denial of certiorari) ("Even a policy that is race neutral on its face may be unconstitutional if it is adopted for a 'racially discriminatory intent or purpose.'" (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U. S. 252, 265–66 (1977)). USDA's response never engages with these facts. *See* ECF No. 21 at 23–24.

[2] USDA's brief accidentally states that Track 1 payments were increased by 15% based on race and sex—that is a component of Track 2, not Track 1. *See* ECF No. 21 at 24.

agency rules."). "*Heckler*'s progeny never has allowed the executive to affirmatively enact prospective, class-wide rules without judicial review." *Id.* at 983; *see also Data Mktg. P'ship, LP v. DOL*, 45 F.4th 846, 856 n.2 (5th Cir. 2022) (explaining why, under the rule of orderliness, the *Texas v. Biden* panel's "understanding of arbitrary-and-capricious review [and] reviewability under *Heckler v. Chaney*" remains binding). ERP 2022 is a rule. Progressive factoring is a component of that rule. *See* 5 U.S.C. § 551(4) (defining "rule"); ERP 2022, 88 Fed. Reg. 74404; *cf.* 5 U.S.C. § 553(a)(2). The Court should apply the ordinary presumption of reviewability to progressive factoring and review it under the arbitrary and capricious standard.

### 3.    Progressive factoring is arbitrary and capricious.

USDA cites a two-sentence footnote of the ERP 2022 Notice of Funding Availability, concluding that it "properly explained the underlying basis for" progressive factoring. ECF No. 21 at 28. Two sentences in a footnote do not show that USDA's decision to depart from its past funding formula was reasoned. *See Data Mktg. P'ship*, 45 F.4th at 857 (switching to a "materially different" definition without explanation is "the hallmark of 'an arbitrary and capricious change from agency practice'" (quoting *Encino Motorcars, LLC. v. Navarro*, 579 U.S. 211, 222 (2016))). The sentences make no mention of reliance interests. They lack any explanation of how USDA weighed the costs and benefits of the new system. In fact, they never mention the costs. Nor do they discuss why some portions of the payment were progressively factored and others were not. Arbitrary-and-capricious review is a forgiving standard, but it still requires the agency provide "a reasoned explanation for its action." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009).

USDA's explanation fails. It argues that disaster relief benefits are never guaranteed and are subject to congressional appropriations. But that does not make it unreasonable for Plaintiffs to have expected a fair share. Plaintiffs are members of trade organizations who had the rational expectation that USDA would use the money much the same as it had in prior years—refunding

as much of *everyone's* insurance premiums and disaster losses as it could. *See* ERP 2021 Phase 1, 87 Fed. Reg. at 30168. The Plaintiffs knew they would get less because Congress gave USDA less. But what they could not have expected was for USDA to switch to a novel progressive factoring system and deny them insurance premium refunds altogether because of their skin color and sex.

USDA is supposed to help farmers recover. It owes more—a lot more—in times of natural disasters. It cannot so easily ignore the reliance interests at issue that are especially acute in times of distress. It has failed to demonstrate it considered any alternatives (for instance, reducing the insurance refunds as well as disaster relief payments to stay within budget). And it has failed to "display awareness that it *is* changing position." *Fox TV Stations*, 556 U.S. at 515.

**C.    USDA cannot prevail under strict scrutiny.**

The parties agree that USDA must satisfy strict scrutiny.[3] ECF No. 21 at 29; ECF No. 11 at 11; *see also Adarand Constructors v. Peña*, 515 U.S. 200, 224 (1995) ("[A]ny person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny."). Strict scrutiny requires both a compelling interest and a narrowly tailored— meaning necessary—use of race. *SFFA*, 143 S. Ct. at 2162. USDA's attempts to justify its discrimination repeat the same stale evidence rejected by every court in the past. USDA fails to establish a compelling interest. And it fails to show that the programs are narrowly tailored.

**1.    USDA cannot show a compelling interest.**

USDA must show a "strong basis in evidence for its conclusion that remedial action was necessary" to have a compelling interest. *J.A. Croson Co.*, 488 U.S. at 500 (quoting *Wygant v.*

---

[3] USDA's response does not appear to differentiate between the standards for race discrimination and sex discrimination. As such, Plaintiffs focus their reply on race discrimination, and rest on their opening brief's analysis of the sex discrimination at issue. *See* ECF No. 11 at 14–15.

*Jackson Bd. of Educ.*, 476 U.S. 267, 277 (1986) (plurality op.)). "The Agency cannot point to general social ills and call it a day. Rather, it must identify the 'who, what, when, where, why, and how' of relevant discrimination." *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *65 (quoting *J.A. Croson Co.*, 488 U.S. at 492). Put differently, "alleviat[ing] the effects of societal discrimination is not a compelling interest." *Id.* (quoting *Shaw*, 517 U.S. at 909–10). If it were, equality "would be lost in a mosaic of shifting preferences based on inherently unmeasurable claims of past wrongs." *J.A. Croson Co.*, 488 U.S. at 506.

USDA's burden is well established. It must show (1) more than a "generalized assertion of past discrimination in an industry"; (2) "evidence of *intentional* discrimination in the past"; and (3) governmental participation in that discrimination. *Miller*, 2021 U.S. Dist. LEXIS 264778, at *24 (emphasis added) (citing *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021)).

USDA does not carry its burden. Given the sheer number of times that courts rejected USDA's justifications for its "socially disadvantaged" benefits programs in 2021, it faces a daunting task. *See Holman v. Vilsack*, No. 21-1085, 2021 U.S. Dist. LEXIS 127334, at *31 (W.D. Tenn. Jul. 8, 2021); *Miller*, 2021 U.S. Dist. LEXIS 264778, at *28; *Wynn v. Vilsack*, 545 F. Supp. 3d 1271. 1284–85 (M.D. Fla. 2021); *Faust v. Vilsack*, 519 F. Supp. 3d 470, 475–76 (E.D. Wis. 2021); *see also Ultima Servs. Corp. v. USDA*, No. 20-cv-00041, 2023 U.S. Dist. LEXIS 124268, at *60 (E.D. Tenn. July 19, 2023); *cf. Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *109. Making USDA's task harder still, it must show evidence of *recent* discrimination on its part. *See Dean v. City of Shreveport*, 438 F.3d 448, 457 (5th Cir. 2006); *Holman*, 2021 U.S. Dist. LEXIS 127334, at *19. Any evidence that was too stale in 2021 has not grown fresher in 2024; USDA must produce

evidence that post-dates 2021.[4] Also, the evidence of USDA's past bigotry ignores the significant remedial efforts taken by Congress to remediate USDA's past racism. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 (2007) (explaining that once past wrongs are remedied "[a]ny continued use of race must be justified on some other basis"); *Wynn*, 2021 U.S. Dist. LEXIS 117042, at *5 ("Due to the significant remedial measures previously taken by Congress, for purposes of this case, the historical evidence does little to address the need for continued remediation through Section 1005."). And Congress just took another extraordinary remedial step USDA never mentions—an additional outlay in 2022 of $2.2 billion dollars for farmers who suffered discrimination at USDA's hands. Inflation Reduction Act of 2022, Pub. L. 117-169, § 22007(e). When combined with the estimated $2.4 billion from *Pigford* and similar settlements, the total in compensation payments alone comes to over $4.6 billion for victims of

---

[4] USDA cites exactly one piece of evidence newer than 2021 and it is not nearly good enough. ECF No. 21 at 31 (citing Todd, Jessica E. et al., Washington, D.C: Economic Research Service, U.S. Department of Agriculture, *An Overview of Farms Operated by Socially Disadvantaged, Women, and Limited Resource Farmers and Ranchers in the United States* (2024) (2024 SDFR Overview)). For one thing, the data used in the study "came from the 2017–20 Agricultural Resource Management Survey (ARMS), an annual cross-sectional survey of farms in the contiguous United States." 2024 SDFR Overview at 6. For another, no portion of the study identifies discriminatory actions taken by USDA or in any way links them to its statistical findings. *See generally id.* And the study itself is *harmful* to USDA in critical areas. It indicates that much more than 10% of farms are socially disadvantaged, *see id.* at 4 (noting 9 percent of farms were racially socially disadvantaged); *id.* at 23 (noting 7 percent of farms were entirely owned by women and 44 percent had at least one woman owner); *id.* at 32 (noting 2.2 owners on average for a joint farm, meaning many of that 44 percent would be socially disadvantaged), and it finds that white farmers are at *greater* financial risk than Hispanic farmers in 3 out of 4 metrics and at greater financial risk than non-Hispanic socially disadvantaged farmers in 2 out of 4 metrics, *id.* at 18. And finally, given that the study was published in February of 2024, it is impossible for the agency to have relied upon it in crafting these regulations, making it irrelevant to judicial review under the APA. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *cf., e.g.*, *Grupo Acerero S.A. de C.V. v. United States*, 615 F. Supp. 3d 1339, 1346 (CIT 2023) ("The record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers . . . .").

USDA's discrimination. *See Holman*, 2021 U.S. Dist. LEXIS 127334, at *6 (discussing *Pigford*). USDA certainly can't claim that it resumed mistreating minority farmers while the government is simultaneously touting the "important progress" it has made in "addressing systemic racism" since 2021. Executive Order 14091. This is all good news for the Administration's equity agenda, but it is the opposite of evidence that helps USDA justify employing race and sex as a remedy right now. It is fair to ask if USDA's woeful history is an evergreen justification for an equity agenda fixated on race with "no logical endpoint." *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *99.

Beyond Congress's prior remedial efforts, USDA cannot show a compelling interest for three more reasons. *First*, even though it must rely on more than generalized assertions, and "without more, 'statistical disparities don't cut it,'" unless there is a single decision maker, *id.* at *65–66 (quoting *Vitolo*, 999 F.3d at 361), USDA continues to argue that the use of statistics is "well settled." ECF No. 21 at 30 (citing *Dean,* 438 F.3d at 454).[5] None of its evidence suggests that USDA itself has engaged in specific, intentional discrimination. *See SFFA*, 143 S. Ct. at 2162 (explaining that the government must point to "specific, identified instances of past discrimination that violated the Constitution or a statute"). It points only to disparate outcomes. *Second*, none of it involves USDA discrimination in disaster relief. *J.A. Croson Co.*, 488 U.S. at 497 (holding generalized assertions of past discrimination within a governmental entity are insufficient); *Greer's Ranch Café*, 540 F. Supp. 3d at 650 (noting an "industry-specific inquiry [is] needed to support a compelling interest for a government-imposed racial classification"). Nearly all of it pertains to discrimination in lending, not disaster relief. USDA also cites inequality in pandemic

---

[5] *Nuziard II* explains how USDA is misreading *Dean*: "*Dean* simply noted that the government need not produce a 'formal finding of discrimination' before using a 'race-conscious remedy.'" *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *66 (quoting *Dean*, 438 F.3d at 455). *Dean* in no way permits an agency to rely on statistical disparities alone without linking them to its own past discriminatory actions. *See id.* USDA never addresses this.

relief. ECF No. 21 at 33. But courts reviewing § 1005 rejected the argument that intentional discrimination caused the disparities in past pandemic relief. *See Miller*, 2021 U.S. Dist. LEXIS 264778, at \*16–18; *Holman*, 2021 U.S. Dist. LEXIS 127334, at \*12–13. *Third*, USDA's evidence lacks even a mention of discrimination against many individual groups that USDA has classed as "socially disadvantaged," like Alaskan Natives. USDA is just recycling weak evidence.

Most of USDA's evidence has, in fact, been rejected by a court already. USDA leaves it to the Court to parse the evidence to identify where USDA thinks proof of intentional discrimination lurks. *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at \*72 (noting that the burden is on the government to direct courts to, not the court's job to "mine" the record to find better evidence for the agency). The evidence already rejected by other courts includes:

- ECF No. 21 at 5–6 (*Pigford* and similar settlements). *Wynn*, 545 F. Supp. 3d at 1285, 1279 ("Due to the significant remedial measures previously taken by Congress, for purposes of this case, the historical evidence does little to address the need for continued remediation through Section 1005."); *see also Holman*, 2021 U.S. Dist. LEXIS 127334, at \*16, \*23–24.

- ECF No. 21 at 6–7 (GAO 19-539 (2019); GAO 19-464 (2019)). *Wynn*, 545 F. Supp. 3d at 1279–80, nn.5–6 (noting the reports "fail to connect those barriers to prior or ongoing discrimination by USDA . . . .").

- ECF No. 21 at 6–7 (Floor Statements of Sens. Booker and Stabenow, March 5, 2021, reported at S1262–66). *Wynn*, 545 F. Supp. 3d at 1278 n.4 ("[A]ny floor statement made by legislators advocating for Section 1005's passage that are not backed by statistical or anecdotal evidence should likely be afforded little or no weight."); *see also Holman*, 2021 U.S. Dist. LEXIS 127334, at \*24 (same).

- ECF No. 21 at 6 (Floor Statement of Rep. Scott, 167 Cong. Rec. H765 (Feb. 26, 2021)); *id*. (S. 278, "Emergency Relief for Farmers of Color Act of 2021"). *Holman*, 2021 U.S. Dist. LEXIS 127334, at \*9–10 (citing portions of S. 278 and Rep. Scott's statement), \*16–20 ("Defendants here, as in Vitolo, have failed to establish that the government has a compelling interest in remedying the effects of past and present discrimination through the distribution of benefits on the basis of racial classifications.").

- ECF No. 21 at 8 (letter from thirteen professors), *id*. at 33 (House Ag. Comm. Hr'g on U.S. Ag. Policy and the 2012 Farm Bill (Apr. 21, 2010); House Ag. Comm. Hr'g on USDA Oversight 45, 50 (July 22, 2015)). *Holman*, 2021 U.S. Dist. LEXIS 127334, at \*7 n.8, \*8–10, & \*16 ("Defendants cannot meet the first prong because the evidence does not show that Section 1005 targets a specific episode of past discrimination.").

- ECF No. 21 at 7–8 (providing statistics arguing that USDA's Market Facilitation program and Coronavirus Food Assistance Program went mostly to nonminority farmers). *Wynn*, 545 F. Supp. 3d at 1280 (explaining that "[e]ven taking these statistics at face value, they are less useful than they may appear to be," and explaining the flaws of the statistics in detail); *see also Holman*, 2021 U.S. Dist. LEXIS 127334, at *17–19 (same); *Miller*, 2021 U.S. Dist. LEXIS 264778, at *26 (same).

The evidence USDA presents that has not already been rejected by another court is: the 2024 report, *see supra* n.4; the 2021 Congressional Research Service report on Farm Service Agency Committees, *see* ECF No. 21 at 33; and a statement at the 2019 Civil Rights Hearing, *id*. at 7.[6] The CRS report is not evidence at all. It is a summary of changes made to FSA committees over the past 20 years. *See* Congressional Research Service (CRS), FSA Comms.: In Brief (Jan. 29, 2021), https://perma.cc/HA3L-PDPG. And the 2019 Civil Rights Hearing statement just points at more statistics without linking them to discrimination by USDA. *See* Review of the Off. of the Assistant Sec'y for Civil Rights, Hr'g before the House Subcomm. on Nutrition, Oversight, and Dep't Ops., Comm. on Ag., 116th Cong. 25, 9 (2019) (Adams). USDA does not point to anything showing recent intentional active or passive discrimination on its part.

### 2. The programs are not narrowly tailored.

"It doesn't matter if it's the easiest, most administrable, most well-intentioned program in the world—it cannot be based on race if it is not strictly necessary to achieve the relevant compelling interest." *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *99 (citing *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 312 (2013)).). This rule tightly cabins the government's ability to use

---

[6] USDA also cites the Emergency Relief for Farmers of Color Act of 2021, S. 278, 117th Cong., § 2, ¶ 5(A)-(C) (intr'd Feb. 8, 2021), the bill that was the predecessor to § 1005. Given the fate of § 1005, it is mystifying that USDA would cite this evidence. Regardless, S. 278 relied on GAO 19-539—a report that *Wynn* ruled did not identify intentional discrimination and in which the most recent specific date of alleged discrimination cited is in 2008. *Id.* § 2 ¶ 2. S. 278 was otherwise justified by system-wide, historical injustices in the remote past that cannot satisfy strict scrutiny. *See, e.g.*, *id.* §§ 2(1)(B) (institutional civil rights violations), (4) Native American removal beginning in 1830).

19

race. A "race-conscious remedy will not be deemed narrowly tailored until less sweeping alternatives—particularly race neutral ones—have been considered and tried." *Walker v. City of Mesquite*, 169 F.3d 973, 983 (5th Cir. 1999) (quotation marks omitted). And even after that, a race-conscious remedy must be neither over- nor under-inclusive, it may not use race as a negative or use racial stereotyping, and it must have an endpoint. *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *87 (citing and quoting *SFFA*, 143 S. Ct. at 2168–70). Once these hard requirements are satisfied, the *Paradise* factors inform whether a race-conscious remedy is appropriate. *Id.*; *see also United States v. Paradise*, 480 U.S. 149, 171 (1987). USDA satisfies none of these requirements.

USDA did not show that it considered nondiscriminatory alternatives. *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *103 ("[T]he Agency alone bears the burden of showing race-neutral alternatives were considered."). It discusses attempts by Congress to use race-neutral alternatives and argues they failed to address lingering disparities. ECF No. 21 at 32–33. But that doesn't show that USDA considered alternatives before enacting these programs. Also, remedying failed federal policy is never a compelling interest. *See Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *76–77. Finally, the evidence it presents is dated—some of it over 20 years old—and primarily considered whether minority farmers were aware of USDA's programs. ECF No. 21 at 32–33.

USDA did not address Plaintiffs' most fundamental argument about tailoring. The programs separately provide enhanced benefits for farmers with less financial access who are "vulnerable." ECF No. 11 at 13. A socially disadvantaged farmer who is not already getting extra help is, by definition, not suffering from a lack of access to capital. This is fatal. It shows that USDA has an easily available alternative. *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at *99–100.

USDA's programs are both under- and over-inclusive. These defined lists of disadvantaged races have failed time and again for this reason. *See, e.g.*, *id.* at *88–93; *Holman*, 2021 U.S. Dist.

LEXIS 127334, at \*15–17. USDA offers nothing new here. *See* ECF No. 21 at 34–36. The categories USDA excludes are incoherent. *See* ECF No. 11 at 13–14 ("Jewish-Americans are excluded despite a well-documented history of discrimination; the same is true of Italian-Americans, Irish-Americans, Slavic-Americans, and Arab-Americans."). The preferred categories are equally nonsensical; for example, "Oprah Winfrey is presumptively disadvantaged." *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at \*92. And USDA's admission that the socially disadvantaged farmer category only sometimes includes women helps underscore its arbitrariness. ECF No. 21 at 28.

The poor fit highlights another fatal flaw: USDA relies on negative stereotyping. As in *Nuziard II*, USDA continues to assume that "race is a reliable proxy for disadvantage . . . . The inverse is true, too." *Nuziard II*, 2024 U.S. Dist. LEXIS 38050, at \*93–94. A Texas farmer descended from Spanish royalty who inherited a ranch on a land grant from the king of Spain in the 1700s gets more money than a distressed farmer who is a refugee from the fall of Afghanistan in 2021. "The illogic is absolutely radiant." *Id*. at \*94.

Nowhere in USDA's explanation is an endpoint provided. *See SFFA*, 143 S. Ct. at 2170. USDA never gives one, or even hints that one exists. Instead, it targets an amorphous, unreachable goal; equal outcomes, even if USDA never comes out and says it. *See* ECF No. 21 at 33. Each program USDA launches might have an endpoint, but this pattern of inserting race into every disaster relief program has none to achieve equal outcomes. USDA asks the Court to trust it to stop discriminating when it no longer needs to. *See SFFA*, 143 S. Ct. at 2168 ("The universities' main response to these criticisms is, essentially, 'trust us.'").

Nor does USDA address the other race- and sex-neutral alternatives at its disposal. Why can it not just ramp up enforcement of anti-discrimination laws? *Nuziard II*, 2024 U.S. Dist. LEXIS

38050, at *103. Has USDA taken employment actions against its own employees who are, apparently, chronically mistreating those who rely on its services? Why won't private lawsuits by aggrieved farmers work as they did in *Pigford*? Silence indicates that USDA prefers "an inherent benefit in race *qua* race—race for race's sake." *Id*. at *102 (quoting *SFFA*, 600 U.S. at 220).

The programs are inflexible and have a significant negative effect on third parties. USDA attempts to handwave away the rigid standards of the programs by noting that other racial groups can be approved in writing. But as recognized in *Nuziard II*, that does nothing to cure the inflexibility: "There is no way for an applicant who isn't listed in [the programs] to access [the additional benefits] without first undertaking additional steps inapplicable for those listed." *Id.* at *105 (describing the MBDA). USDA does the same when discussing negative effects on third parties; it dismisses the impact as an acceptable burden. *See* ECF No. 21 at 34. But, as explained earlier, *see supra* II.A, USDA's race and sex discrimination reduced the amount of money available for other recipients. The tailoring problems are evident on the face of these programs.

## IV.    An injunction is in the public interest, and USDA's claimed harms are exaggerated.

Plaintiffs' injury outweighs any interest USDA has in continuing to discriminate. *See Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (explaining that neither the government nor the public has an interest "in the perpetuation of an unlawful agency action"). Indeed, any interest USDA claims in an unconstitutional and illegal regulation "is illegitimate." *BST Holdings*, 17 F.4th at 618; *see also Free Speech Coal., Inc. v. Paxton*, No. 23-50627, 2024 U.S. App. LEXIS 5555, at *43 (5th Cir. Mar. 7, 2024). More practically, if the Court does not enjoin USDA now and it eventually loses the case, the mess it needs to clean up will be much, much larger. Enjoining USDA now is better—under the law, for the people USDA serves, and for USDA itself.

Rather than address these cases or this well-known standard, USDA performs a soccer flop. *See* ECF No. 21-1 ¶ 106. It insists it must halt all disaster relief should the Court require it to stop

discriminating based on race and sex and rethink its progressive factoring.[7] *See* ECF No. 21 at 20–22. This is perplexing. Plaintiffs merely requested an injunction that:

- Bars USDA from increasing payments or providing any extra relief based on the "socially disadvantaged," *i.e.*, race- and sex-based, category;

- Bars USDA from making any payments larger than they would be absent progressive factoring.

*See* ECF No. 11 at 24. At most, this amounts to an addendum to USDA's calculation process. The proposed injunction gives USDA *more* money to spend on disaster relief in any nondiscriminatory manner it chooses. It can continue to issue payments. It can even enhance payments based on the nondiscriminatory traits it already uses—veteranship, recency, and financial vulnerability. If USDA is in danger of running out of money, it can hold sufficient funds in abeyance to make all eligible farmers whole without accounting for impermissible characteristics. Plaintiffs requested this limited injunction on purpose. They know the importance of disaster relief and do not want USDA's lawful operations hamstrung. *See, e.g.*, ECF No. 10-1 ¶¶ 13 (detailing his farm's disaster losses and how important USDA's disaster relief was).

## CONCLUSION

This Court should immediately stop USDA's efforts to excise equality from the Constitution and replace it with equity. Plaintiffs ask this Court to enter an immediate injunction or stay halting USDA's race- and sex-based discrimination and progressive factoring.

---

[7] Plaintiffs do make one minor clarification prompted by USDA's concerns. Plaintiffs do not request that the Court enjoin the agency from using progressive factoring in future programs. Such an injunction would reach too far. The implementation of progressive factoring in ERP 2022 is unlawful and inadequately explained. However, it would be inappropriate to prejudge future uses of similar factoring schemes, which may be lawful.

Dated: <u>May 17, 2024</u>.                                   Respectfully submitted,


<u>/s/ Braden H. Boucek</u>
BRADEN H. BOUCEK
  Georgia Bar No. 396831
  Tennessee Bar No. 021399
BENJAMIN I. B. ISGUR
  Virginia Bar No. 98812
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
(770) 977-2131
bboucek@southeasternlegal.org
bisgur@southeasternlegal.org

WILLIAM E. TRACHMAN
  Colorado Bar No. 45684
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wtrachman@mslegal.org

ED MCCONNELL
  Texas Bar No. 13442500
Tormey & McConnell, LLC
310 SW 6th Ave.
Amarillo, TX 79101
Tel. (806) 355-2700; Fax. (806) 355-4771
ed@tmcattorneys.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief conforms to the requirements of Local Rule 7.2. It was prepared in 12-point Times New Roman Font. It is double-spaced and has margins that are at least one inch on all four sides. No text other than page numbers is in the margins.

Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent through the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK