## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| RUSTY STRICKLAND, | ) | |
| ALAN AND AMY WEST FARMS, | ) | |
| ALAN WEST, | ) | |
| AMY WEST, | ) | |
| DOUBLE B FARMS, LLC, and | ) | |
| BRYAN BAKER, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-60-Z |
| | ) | |
| THE UNITED STATES DEPARTMENT OF AGRICULTURE, | ) | |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, | ) | |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, and | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendants. | ) | |

---

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

---

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES..................................................................... iii

INTRODUCTION ................................................................................ 1

ARGUMENT....................................................................................... 2

I.     Progressive factoring is arbitrary and capricious. ........................................ 2

     A.     Progressive factoring is not insulated from review............................ 2

     B.     Progressive factoring is arbitrary and capricious............................... 3

           1.     USDA forfeits any argument that its decision to steer funds to smaller operations and shallower losses was not arbitrary and capricious. ................................................................. 4

           2.     Refined arguments using new information are not new claims. 4

           3.     The administrative record does not reveal USDA's decisionmaking........................................................ 6

II.     Congressional silence is not a blank check for USDA to discriminate......... 8

     A.     Race and sex discrimination implicate the major questions doctrine. 9

     B.     USDA lacks statutory authority under any analysis. ....................... 13

III.     This Court should continue to hold that USDA unlawfully discriminated based on race and sex. ......................................................................... 13

IV.     This Court should vacate and remand the Rule and enter a permanent injunction. ................................................................................. 18

     A.     Vacatur is the proper remedy, and it cannot be party-restricted........ 18

     B.     This Court should order a 90-day deadline for compliance .............. 22

     C.     This Court should also order a permanent injunction. ...................... 23

CONCLUSION.................................................................................... 25

CERTIFICATE OF COMPLIANCE ....................................................... 26

CERTIFICATE OF SERVICE ................................................................................. 26

## TABLE OF AUTHORITIES

*Airlines for Am. v. Dep't of Transp.*,
  110 F.4th 672 (5th Cir. 2024).................................................................... 9, 10

*All. for Fair Bd. Recruitment v. SEC*,
  No. 21-60626, Slip Op. (5th Cir. Dec. 11, 2024) (en banc) ................................. 9, 11, 12, 13

*Allied-Signal, Inc. v. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993)................................................................... 21

*Atl. Mut. Ins. Co. v. Comm'r*,
  523 U.S. 382 (1998)............................................................................. 22

*Bay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)............................................................................. 24

*Baystate Med. Ctr. v. Leavitt*,
  587 F. Supp. 2d 37 (D.D.C. 2008)............................................................... 23

*Bisgaard v. Bitgood*,
  4:22-cv-03279, 2024 U.S. Dist. LEXIS 14490 (S.D. Tex. 2024)................................. 24

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*,
  419 U.S. 281 (1974)............................................................................. 6

*BP Chems. Ltd. v. Jiangsu Sopo Corp. (Group)*,
  285 F.3d 677 (8th Cir. 2002)................................................................... 22

*Career Colls. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024)................................................................... 19

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023)................................................................... 20

*Cent & S.W. Servs. v. EPA*,
  220 F.3d 683, (5th Cir. 2000).................................................................. 21

*City of Richmond v. J.A. Croson Co.*,
  488 U.S. 469 (1989)............................................................................. 21

*Contender Farms, L.L.P. v. USDA*,
  779 F.3d 258 (5th Cir. 2015)................................................................... 13

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
  144 S. Ct. 2440 (2024)......................................................................... 19, 20

*Cutrera v. Board of Supervisors,*
   429 F.3d 108 (5th Cir. 2005)..................................................................... 5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
   591 U.S. 1 (2020)......................................................................... 7, 8, 19

*Douglas v. Wells Fargo Bank,*
   992 F.3d 367 (5th Cir. 2021)..................................................................... 6

*F.E.C. v. Cruz,*
   596 U.S. 289 (2022)................................................................................ 19

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000)........................................................................... 11, 12

*Franciscan Alliance, Inc. v. Becerra,*
   47 F.4th 368 (5th Cir. 2022)................................................................... 19

*Fund Managers v. SEC,*
   103 F.4th 1097 (5th Cir. 2024)............................................................... 19

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.,*
   968 F.3d 454 (5th Cir. 2020)............................................................... 8, 13

*Heckler v. Chaney,*
   470 U.S. 821 (1985)................................................................................. 2

*Heckler v. Mathews,*
   465 U.S. 728 (1984)............................................................................... 22

*Holman v. Vilsack,*
   No. 21-1085, 2021 U.S. Dist. LEXIS 127334 (W.D. Tenn. 2021) ...... 14, 16, 17

*Huawei Techs. USA, Inc. v. FCC,*
   2 F.4th 421 (5th Cir. 2023)...................................................................... 6

*Jones v. Cain,*
   600 F.3d 527 (5th Cir. 2010).................................................................. 21

*Kiakombua v. Wolf,*
   498 F. Supp. 3d 1 (D.D.C. 2020)........................................................... 19

*League of United Latin Am. Citizens v. Perry,*
   548 U.S. 399 (2006)............................................................................... 11

*Lewis v. United States,*
   No. 18-1838, 2020 U.S. Dist. LEXIS 198326 (E.D. La. 2020)............... 23

*Lincoln v. Vigil,*
   508 U.S. 182 (1993)........................................................................... 3

*Magwood* v. *Patterson,*
   561 U. S. 320 (2010)......................................................................... 10

*Med-Cert Home Care, LLC v. Becerra,*
   No. 3:18-CV-02372-E, 2023 U.S. Dist. LEXIS 169087 (N.D. Tex. Sep. 2023) ... 5

*Merck & Co. v. Dep't of Health & Hum. Servs.,*
   962 F.3d 531 (D.C. Cir. 2020).......................................................... 8

*Michigan v. EPA,*
   576 U.S. 743 (2015)........................................................................ 8

*Miller v. Vilsack,*
   2021 U.S. Dist. LEXIS 264778 (N.D. Tex. 2021) ............................... 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,*
   463 U.S. 29 (1983)...................................................................... 6, 7

*N.C. Coastal Fisheries Reform Grp. v. Capt. Gaston LLC,*
   76 F.4th 291 (4th Cir. 2023)............................................................ 12

*NFIB V. OSHA,*
   595 U.S. 109 (2022)........................................................................ 13

*Nuziard v. Minority Bus. Dev. Agency*
   721 F. Supp. 3d 431 (N.D. Tex. 2024) ............................... 1, 11, 22, 24

*Oklahoma v. Castro-Huerta,*
   597 U.S. 629 (2022)........................................................................ 10

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No.,*
   551 U.S. 701 (2007)........................................................................ 15

*Rapanos v. United States,*
   547 U.S. 715 (2006)........................................................................ 10

*Reed v. Neopost United States, Inc.,*
   701 F.3d 434 (5th Cir. 2012)............................................................ 5

*Russello v. United States,*
   464 U.S. 16 (1983).......................................................................... 13

*Seatrax, Inc. v. Sonbeck Int'l, Inc.,*
   200 F.3d 358 (5th Cir. 2000)............................................................ 5

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943)................................................................................. 4

*Southwestern Elec. Power Co. v. U.S. EPA*,
   920 F.3d 999 (5th Cir. 2019) ................................................................ 19

*Strickland v. USDA*,
   No. 2:24-CV-60-Z, 2024 U.S. Dist. LEXIS 101547 (N.D. Tex. 2024)........ *passim*

*Tex. Med. Ass'n v. U.S. HHS*,
   654 F. Supp. 3d 575 (E.D. Tex. 2023) ................................................. 19

*Tex. Med. Ass'n v. HHS*,
   No. 6:23-cv-59, 2023 U.S. Dist. LEXIS 135310 (E.D. Tex. 2023) ..................... 21

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021) ................................................................ 3

*United States v. Texas*,
   599 U.S. 670 (2023) .......................................................................... 20

*Wells v. City of Alexandria*,
   178 Fed. Appx. 430 (5th Cir. 2006) ...................................................... 21

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ....................................................................... 1, 9

*Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*,
   586 U. S. 9 (2018) ............................................................................. 3

*Wynn v. Vilsack,*
   545 F.Supp.3d 1271 (M.D. Fla. 2021) .............................................. 16, 17

**Statutes and Regulations**

5 U.S.C. § 701(a)(2) ................................................................................. 2

5 U.S.C. § 706 ..................................................................................... 19, 20

7 U.S.C. § 9081 ....................................................................................... 10

Pub. L. 117-169, § 22007(e) (2022) (IRA) ............................................... 14

7 C.F.R. § 1416.1(a)(1) ........................................................................... 10

**Other Authorities**

*The Past and Future of Universal Vacatur*,
   133 Yale L. J. 2304 (2024)................................................................. 19

Vacatur, Nationwide Injunctions, and the Evolving APA,
    98 Notre Dame L. Rev. 1997 (2023) .................................................................... 20

**INTRODUCTION**

USDA contends that its power to distribute disaster relief funds is unbounded by the Constitution and practical considerations. It argues that this Court lacks power to review its payment formulas. Defs.' Mot. for Summary J., ECF No. 38 at 10–13. And it asserts that it can unilaterally discriminate based on race and sex without any statutory authorization from Congress. *See id.* at 20. USDA defends itself by admitting of its own history of woeful racial discrimination, but even discrimination on the order of USDA's does not justify discrimination into eternity. *See id.* at 22–32. Its stale evidence of past discrimination will not do in the context of strict scrutiny. USDA totally ignores the extraordinary—and recent—efforts to address USDA's past racism. Those efforts more than address whatever residue of its past mistreatment could possibly remain. Without careful judicial review by this Court, USDA will continue to invoke its past racism to justify implementing discriminatory, irrational payment formulas.

USDA's contentions place no limits on its ability to continue to actively discriminate in the name of achieving "equity." Past discrimination cannot serve as an evergreen justification. So-called "remedial discrimination" must have an end date. *See Nuziard v. Minority Bus. Dev. Agency* (*Nuziard II*), 721 F. Supp. 3d 431, 494 (N.D. Tex. 2024). USDA's brief treats its past mistreatment of some (but not all) races as a permanent pass to discriminate until it achieves its hazy goal of "equity."

USDA's positions on the unreviewability of its decisions and the requirement of Congressional authorization are unpersuasive. Neither is how our Constitution works. *See West Virginia v. EPA*, 597 U.S. 697, 723 (2022) ("Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency [may] add

pages and change the plot line." (internal quotation marks omitted)). The Court should not permit USDA to thumb its nose at the requirement of equality or the other branches of government.

## ARGUMENT

Even with the benefit of a complete administrative record, USDA has been unable to marshal the kind of evidence it needs to succeed before this Court. On the contrary, a review of the administrative record reveals serious deficiencies in USDA's adoption of "progressive factoring." The record does not illuminate the agency's decisionmaking process. Without a sufficient record showing the careful consideration USDA was required to use when crafting progressive factoring, its adoption of progressive factoring was arbitrary and capricious.

Nor has USDA presented good reason for this Court to conclude that Congress had authorized it to discriminate based on race and sex. Congress said no such thing. The Court should reprimand USDA for drawing such consequential power from congressional silence. USDA instead focuses its energy on a renewed—but repetitive—attempt to defend its race and sex discrimination. Even if this Court does conclude that USDA had statutory authority to discriminate, USDA has presented no meaningful new evidence that would permit it to pass either of strict scrutiny's searching prongs. This Court should vacate and remand the challenged programs.

## I.        Progressive factoring is arbitrary and capricious.

### A.        Progressive factoring is not insulated from review.

USDA again argues that progressive factoring is wholly insulated from review, despite what this Court already concluded. ECF No. 38 at 10–12 (relying on 5 U.S.C. § 701(a)(2) and *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). But as this Court explained, "*Heckler* applies, 'if at all, to one-off agency enforcement decisions rather than to agency rulemakings.'" *Strickland v.*

*USDA*, No. 2:24-CV-60-Z, 2024 U.S. Dist. LEXIS 101547, at *6 (N.D. Tex. June 7, 2024) (citing *Texas v. Biden*, 20 F.4th 928, 984 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528, 2548 (2022)). This accords with Supreme Court precedent: "to honor the presumption of review, we have read the exception in §701(a)(2) quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 586 U. S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)) There is no reason for the Court to be persuaded by Defendants' analysis of *Lincoln v. Vigil*.

*Lincoln v. Vigil* does not control the result here for two reasons. First, *Lincoln* is an application of *Heckler*, and the Fifth Circuit has already held in *Texas v. Biden* that *Heckler* does not apply to rulemaking like that here. *See Lincoln*, 508 U.S. at 193 (applying the *Heckler* framework). Second, USDA distorts the reasoning in *Lincoln* when it claims that the funds at issue here are a "lump-sum appropriation." *See* ECF No. 38 at 12. The Supreme Court explained in *Lincoln* that it was addressing appropriations lacking statutory restrictions. *See Lincoln*, 508 U.S. at 192. That is different from the appropriations here, which are individual appropriations aimed at disaster relief for individual calendar years and causes. This Court should maintain its prior holding that progressive factoring is reviewable and reconsider whether progressive factoring is arbitrary and capricious with the benefit of the complete administrative record.

### B. Progressive factoring is arbitrary and capricious.

This Court initially held that USDA's decision to institute progressive factoring was not arbitrary and capricious. *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *7. Plaintiffs respectfully request that this Court revisit that holding with the benefit of the full administrative record. The

administrative record revealed so many flaws in USDA's process that progressive factoring cannot be justified.

### 1. USDA forfeits any argument that its decision to steer funds to smaller operations and shallower losses was not arbitrary and capricious.

Plaintiffs challenged USDA's failure to explain why it decided to use progressive factoring to steer additional funds to smaller operations and shallower losses. Plaintiffs' Complaint raises this challenge in unambiguous language. ECF No. 1 ¶¶ 287–88 (explaining that progressive factoring steered money away from farmers with larger losses and towards farmers with smaller losses and that the agency provided a cursory explanation that did not explain its reasoning). USDA acknowledges this challenge but does not address it in its brief. *See* ECF No. 38 at 13. It never identifies where in the administrative record it explained the virtue of its decision; the reason *why* it believed it was a good idea to steer funds to smaller operations and shallower losses. USDA does not even provide a post hoc explanation of this in its brief. *See id.* (repeating assertion that it steered additional funds to smaller operations and shallower losses but still not explaining USDA's reasons for preferring that). Without opposing argument, this Court should conclude that this unexplained facet of progressive factoring makes its adoption arbitrary and capricious. *See Strickland*, 2024 U.S. Dist. LEXIS 101547, at *19 (N.D. Tex. June 7, 2024) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), for the proposition that the Court must judge agency action based on the grounds in the record)).

### 2. Refined arguments using new information are not new claims.

With the benefit of the full administrative record, Plaintiffs were able to probe USDA's internal process. An evaluation of that internal process lays bare that what was true of the result was equally true of the process. At no point did USDA perform the kind of diligent, reasoned decisionmaking required of agencies. Plaintiffs are not asserting any new claims. *See* ECF No. 38

at 14, 16. The one case USDA cites for this proposition bears little resemblance to this one. *See id.* at 14. There, the plaintiff moved for summary judgment and began requesting declaratory relief after their complaint only requested injunctive relief. *Med-Cert Home Care, LLC v. Becerra*, Civil Action No. 3:18-CV-02372-E, 2023 U.S. Dist. LEXIS 169087, at *29 (N.D. Tex. Sep. 21, 2023) ("Plaintiff's references to declaratory judgment in its Motion for Summary Judgment are the first and only time Plaintiff has asserted such claims in this case."). The only precedential authority cited in *Med-Cert* is similarly unrelated. *Cutrera v. Board of Supervisors* concerned a plaintiff who raised a First Amendment retaliation claim for the first time at summary judgment after not including it in her complaint. 429 F.3d 108, 113 (5th Cir. 2005). Unlike here, that is something that defendants were prejudiced by in losing the opportunity to conduct discovery.

Plaintiffs have not asserted any new claims. They have always argued that progressive factoring was arbitrary and capricious. Plaintiffs could not have fully explained these arguments before receiving the administrative record, making this the first opportunity to argue them in detail. Even if the Court does conclude that Plaintiffs raised new claims, the relevant inquiries are whether USDA was on notice about the claims, *see Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 367 (5th Cir. 2000) (focusing the inquiry on whether the argument or claim "unduly prejudices or surprises the opposing party"), and whether Plaintiffs could have raised the claims earlier, *see Reed v. Neopost United States, Inc.*, 701 F.3d 434, 442 (5th Cir. 2012) (considering a claim raised for the first time in response to a motion for summary judgment when the claim only became available then). USDA has suffered no prejudice or surprise (and does not argue that it has); the arguments were made in Plaintiffs' motion for summary judgment in a case with no discovery. In the alternative, should the Court conclude that Plaintiffs have raised new claims and that the new claims are improperly raised in the motion for summary judgment, the proper course would be to

construe it as a motion for leave to amend. *See Douglas v. Wells Fargo Bank*, 992 F.3d 367, 373 (5th Cir. 2021).

### 3.    The administrative record does not reveal USDA's decisionmaking.

USDA's brief does not address the problem with the administrative record: "[t]he agency must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 (5th Cir. 2023) (quotation marks omitted). Instead, USDA goes after procedure, addressed above. A review of the substance of USDA's brief and the record fails to illuminate USDA's process.

USDA first responds that the memo providing the original payment thresholds and "*the final decisions*" for progressive factoring is not final agency action. App. 862 (emphasis added). That is accurate, but it misses the point. Plaintiffs never claimed the memo was final agency action—for one thing, it was not published. Plaintiffs instead highlight the memo as significant internally. Once an internal decision had been made—as it clearly was—one would expect that before it was altered, there would be discussion in the record about *why*. But the record contains no discussion about why the "final decisions" were not, in fact, final. USDA does not point to any. The "final decisions" were changed later with no reason given. That is the hallmark of arbitrary and capricious agency action: a sudden and explained about-face. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

USDA's second response is equally off the point. The question presented is not whether USDA's decision was "reasonable." *See* ECF No. 38 at 14. Rather, the question presented is whether the agency's choices are adequately and fully explained. *See, e.g.*, *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974) (explaining both that the agency's path must be reasonably discernable by a reviewing court and that a reviewing court may not

provide explanations that the agency itself did not). They are not. USDA, in fact, does not even attempt to argue that they are. *See* ECF No. 38 at 16 (arguing instead that remand is the proper remedy if this record is inadequate).

USDA's responses to Plaintiffs' explanation of why the producer-payee structure is also arbitrary and capricious are similarly misguided. First, USDA's claim that producer-payee "may be applied to either a flat factor or progressive factor payment system" demonstrates why USDA's use of the producer-payee system is arbitrary and capricious. *See* ECF No. 38 at 16. If USDA pays every farmer 26 cents on the dollar for their losses, no matter how great the losses, then it does not matter how a farmer structures their entity. They will get 26 cents on the dollar. If, instead, USDA pays farmers different amounts based on the size of their losses—like the progressive factoring system—then how farmers structure their entity is important.

That neither USDA's brief nor the administrative record recognizes that this choice was significant *only because of* USDA's use of progressive factoring is why USDA's adoption of progressive factoring was arbitrary and capricious. Agency action is arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem . . . ." *State Farm*, 463 U.S. at 43. Contrary to USDA's assertion, it was "breaking new ground"—it had never used progressive factoring before. ECF No. 38 at 16. It was critical for USDA to consider whether the switch to progressive factoring required it to modify any other elements of the program. It failed to do so.

Second, USDA's new assertions of reasons for producer-payee lack support from the administrative record. *See* ECF No. 38 at 17 (citing no materials in the administrative record). "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland Sec. v.*

*Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). Post hoc explanations by lawyers do not suffice. USDA's brief does nothing to explain where in the record USDA's reasoning can be traced. Because the Court cannot trace USDA's decisionmaking process, it should hold that progressive factoring's adoption was arbitrary and capricious.

## II.        Congressional silence is not a blank check for USDA to discriminate.

USDA's primary argument for why it had authorization to discriminate is that Congress was silent as to its preferences when it appropriated the disaster relief programs. ECF No. 38 at 18–19. This does not help USDA. *See Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 460 (5th Cir. 2020) (explaining that agency may not treat congressional silence "as a mere 'gap' for it to fill"). USDA entirely ignores Plaintiffs' argument that the "fundamental problem with the agency's position" is that Congress has long known of USDA's desire to engage in remedial discrimination and "how to confer authority to regulate it," yet never did so for disaster relief. *See id.* at 465–66. This alone warrants a high degree of skepticism, especially since USDA's argument would mean that it can *always* employ active discrimination unless expressly forbidden. *See id.* at 462 (rejecting argument that "is all elephant and no mousehole"); *Merck & Co. v. Dep't of Health & Hum. Servs.*, 962 F.3d 531, 541 (D.C. Cir. 2020) ("[T]he breadth of the Secretary's asserted authority is measured not only by the specific application at issue, but also by the implications of the authority claimed."). When Congress created a "socially disadvantaged" designation for use in certain, specific circumstances, it did not write USDA a blank check to discriminate in programs that never mention it. Further, this Court should evaluate whether USDA can even satisfy ordinary requirements of statutory interpretation when it creates racial discrimination by executive fiat from Congressional silence. USDA barely argues that it does—

instead claiming only that the "capacious" language in the appropriation permits USDA's action. ECF No. 38 at 18. That conflicts with modern precedents around statutory silence.

> **A.    Race and sex discrimination implicate the major questions doctrine.**

USDA's efforts to limit the major questions doctrine are unavailing. As the en banc Fifth Circuit just explained, "the major questions doctrine rests on the principle that administrative agencies have no independent constitutional provenance." *All. for Fair Bd. Recruitment v. SEC*, No. 21-60626, Slip Op. at 33 (5th Cir. Dec. 11, 2024) (en banc). "Because the agency has no inherent or implied authority, its powers to make major decisions must come only from unequivocal statutory text." *Id.* USDA minimizes the significance of treating congressional silence as permission to engage in racial discrimination. This Court should not.

USDA first argues this case does not involve a major question because its discrimination is not "novel or transformative." Cite at 19. Yet it points to not one case where its claim to possess this power was ever challenged, let alone upheld. *See W. Virginia*, 597 U.S. at 725 (observing that prior EPA rule it cited as historic precedent "was never addressed by a court"). So even if it had exercised this power in an analogous fashion, it still loses because USDA cannot "defeat a statute's text by 'adverse possession.'" *Airlines for Am. v. Dep't of Transp.*, 110 F.4th 672, 676 (5th Cir. 2024) (quoting *Rapanos v. United States*, 547 U.S. 715, 752 (2006)).

But USDA is also wrong about its prior measures. ECF No. 38 at 19. It points to no examples of it employing discrimination in generalized disaster relief. The only instance it points to is one statute where *Congress* authorized it to reimburse "socially disadvantaged" producers of

honeybees, livestock, and farm-raised fish at a greater rate for losses suffered. 7 U.S.C. § 9081(d).[1] Putting aside the obvious differences with the programs at issue here that apply to crop loss, this was, in fact, expressly authorized by Congress, further undercutting USDA's claim that statutory silence is authorization. Congress knows how to authorize a race preference when it wants to.[2]

Indeed, 7 U.S.C. § 9081 demonstrates that what it looks like when Congress wishes to impose a preference. Unlike the one program it offers as precedent, USDA has taken an unrelated statutory provision creating a class of farmers called "socially disadvantaged" and applied it to new appropriations that do not mention socially disadvantaged farmers. USDA only illustrates how novel its use of discrimination is in the challenged programs.

USDA all but admits that it believes it has the power to act any time Congress does not act in a manner *USDA* thinks serves equity. It boldly says just that: "USDA's determination that race-based relief was necessary is underscored by the inefficacy of the neutral alternatives that Congress has repeatedly attempted." ECF No. 38 at 27. Agencies do not acquire more power just because the means chosen by Congress are judged by an agency to be "inefficient." The question is not whether Congress failed to deliver an efficient solution at all, but whether Congress authorized USDA to utilize a race preference. When the "'economic and political significance' of

---

[1] Plaintiffs did not challenge the regulatory enactment that follows from this statute, the Emergency Assistance for Livestock, Honeybees, and Farm-Raised Fish Program (ELAP). *See* 7 C.F.R. § 1416.1(a)(1). Had Plaintiffs done so based on its unlawful race and sex discrimination, they would have excluded it from any argument that it lacked clear congressional authorization.

[2] USDA's assertion that Congress authorized race and sex discrimination *sub silentio* by providing disaster relief funding despite USDA's repeated discrimination without authorization is without merit. ECF No. 38 at 20. "The Court may not 'replace the actual text with speculation as to Congress' intent.'" *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (quoting *Magwood* v. *Patterson*, 561 U.S. 320, 334 (2010)). Nor may USDA "defeat a statute's text by 'adverse possession.'" *Airlines for Am.*, 110 F.4th at 676 (quoting *Rapanos*, 547 U.S. at 752).

[the agency's asserted authority] provide[s] a 'reason to hesitate before concluding that Congress' meant to confer such authority," courts must look for clear congressional authorization. *Id.* at 721 (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000)). Here, USDA asserts the power to engage in the "sordid business" of race and sex discrimination, a deeply significant question. *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., concurring).

The Fifth Circuit just noted the eyebrow-raising significance of racial discrimination performed by an agency whose business it normally is not. *See All. for Fair Bd.*, No. 21-60626, Slip Op. at 34. "[B]y stepping outside its ordinary regulatory domain," USDA's behavior should result in a "raise[d] eyebrow" and heightened scrutiny from this Court. *See id.* at 33–34 (noting the unnatural nature of the idea that Congress granted a "diversity mandate" to the SEC rather than to the Equal Opportunity Employment Commission or the Department of Justice).

The Fifth Circuit also recognized the "staggering" political significance of racial discrimination aimed at equity concepts like "diversity and inclusion" in response to "the social justice movement." *Id.* at 34. "We can think of few more politically divisive issues in the Nation." *Id.* Indeed, USDA makes no effort to reconcile the many statements made by the executive branch over how politically significant racial discrimination is today. ECF No. 38 at 20. It implicitly acknowledges that the public stances taken by the Secretary and President preclude it from arguing that racial discrimination is not politically significant by dismissing it is as a non-dispositive factor, Just yesterday, the en banc Fifth Circuit found that that when random agencies try to center "social justice" into their missions, it is of such political significance as to implicate the major questions doctrine. *See All. for Fair Bd. Recruitment*, No. 21-60626, Slip Op. at 34. That logic governs here.

Remarkably, USDA goes so far as to say that the major questions doctrine is not a "free-floating license for courts to override statutory text," *id.* at 20, without acknowledging that USDA is the one taking a marker to a blank page in the statute and writing in the powers it wants. USDA has conceded that the political significance of its actions militates in favor of finding this a major question, warranting reconsideration of this Court's prior ruling.

USDA downplays economic significance by claiming that it should be evaluated based on the amount of *additional* payment it awarded to its preferred races and sexes. *Id.* at 21. It cites no authority for this novel attempt to bottle up the major questions doctrine. *Id.* There is good reason to evaluate more than just the amount of the additional payments: USDA claims the authority to discriminate based on race and sex with all the funds. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 159 (considering economic significance based on the agency's assertion that it possessed the power to ban all tobacco products, rather than on what action it had actually taken); *N.C. Coastal Fisheries Reform Grp. v. Capt. Gaston LLC*, 76 F.4th 291, 300 (4th Cir. 2023) (evaluating economic significance by the sum total of fishing and boating rather than the impact of only the regulation at issue). The Fifth Circuit agrees. *See All. for Fair Bd. Recruitment*, No. 21-60626, Slip Op. at 33 (considering the power claimed over the $25 trillion traded on the exchange, not the economic impact of only the one regulation at issue). The Court should review the economic significance of the power USDA *asserts*, which is to redirect all disaster relief funding to its preferred races and sex. That power far outstrips the sums set aside for disaster relief under the challenged programs.

This Court should hold that whether agencies may discriminate based on race and sex in spending $25 billion presents the sort of major question that requires clear congressional authorization.

B.      **USDA lacks statutory authority under any analysis.**

USDA lacks authority to discriminate based on race and sex even absent a finding that the question is major. USDA's only response to this is that congressional silence is enough for them to do what they like. That is incorrect. *See supra* II (citing *Gulf Fishermens Ass'n*, 968 F.3d at 460). The fact that Congress gave separate authority to use the socially disadvantaged farmer classification in other programs cuts against USDA's argument, not for it. *Cf. Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 273 (5th Cir. 2015); *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks and brackets omitted)). The anti-surplusage canon leads to a similar place—if USDA could always create additional benefits and special programs based on race and sex, it would make little sense for Congress go to the trouble of creating the socially disadvantaged category and assigning its use to specific, identifiable programs. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 176–79 (2012) (Scalia & Garner). Lastly, as the Fifth Circuit just explained anew, agencies "are creatures of statute. They accordingly possess only the authority that Congress has provided." *All. for Fair Bd. Recruitment*, No. 21-60626, Slip Op. at 33 (quoting *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (per curiam)). USDA lacks any authority to discriminate based on race and sex in the challenged programs.

III.     **This Court should continue to hold that USDA unlawfully discriminated based on race and sex.**

USDA agrees that all eight challenged programs discriminate based on race and sex. ECF No. 38 at 31. As this Court explained, "consistent Supreme Court precedent bears little tolerance for the practice . . . ." *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *13. And this Court concluded

that USDA likely cannot satisfy strict scrutiny. *Id.* at \*22. Nothing in USDA's brief should disturb that conclusion. USDA lacks the evidence it needs that would show that it is "remediating specific, identified instances of past discrimination . . . ." *Id.* at \*17 (quotation omitted). USDA never so much as acknowledges the prior—and relatively recent—efforts taken to address its past discrimination, or explains why they were deficient. It provides no evidence whatsoever of many of the races included in the payments. Rather than present the kind of novel and compelling evidence required under strict scrutiny, USDA returns to familiar—and repeatedly discarded— evidence that this Court already ruled was neither recent nor compelling enough. USDA shows neither a compelling interest nor that the challenged programs are narrowly tailored.

USDA fails to address the elephant in the room. It does not dispute that it is currently paying out $2.2 billion to victims of its past discrimination. *See* Inflation Reduction Act of 2022, Pub. L. 117-169, § 22007(e) (2022) (IRA). Remarkably, despite both the Court and Plaintiffs pointing out that Congress had just authorized this extraordinary sums to actual victims of USDA's discrimination, USDA makes no reference to that in its brief.[3] *Strickland*, 2024 U.S. Dist. LEXIS 101547, at \*19 ("Only the opposite has occurred since then."); ECF No. 32 at 14, 21. Even before this multi-billion dollar payment, USDA had paid $2.4 billion in class action lawsuits brought by farmers alleging racial discrimination. *See Holman v. Vilsack*, No. 21-1085, 2021 U.S. Dist. LEXIS 127334, at \*6 (W.D. Tenn. 2021) (summarizing settlements). Those two sums alone total nearly $5 *billion*.

By continuing to invoke its past mistreatment as a justification without explaining why or how those fell short, USDA fails to recognize this fact or provide a limiting principle. *See Parents*

---

[3] The IRA also set aside additional substantial sums for "underserved farmers," including financial and credit training, land loss assistance, research, education, and extension, and "Equity commissions." *See* Pub. L. 117-169, § 22007(a)–(d). USDA mentions none of this.

*Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 (2007) (explaining that once past wrongs are remedied "[a]ny continued use of race must be justified on some other basis"). Was USDA's past mistreatment worth more than $5 billion? How much more is the taxpayer expected to bear? Is USDA continuing to actively discriminate? The Court already explained that USDA's showing of discrimination did not justify the discriminatory farm loan forgiveness program in 2021 and that the past decade has seen no further racial discrimination against the socially disadvantaged groups; all that has happened since are preferences in their favor and remediation for past discrimination. *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *19. There is even less of a reason to believe USDA has a compelling interest now than in 2021. Nor, even if there were a compelling interest, is there reason to believe USDA needs to use a racially discriminatory approach rather than the race-neutral approach of Section 22007 and the *Pigford* lawsuits.

USDA's categories suffer from another fatal flaw. USDA does not even try to assert evidence of a compelling interest for many of its preferred races. Native Hawaiians are deemed "socially disadvantaged." Yet the word "Hawaii" or "Hawaiian" do not appear in USDA's brief. It does not mention "Pacific Islanders" either. The same is true for "Alaska" and "Alaskan Natives," though USDA does perhaps lump them in when it mentions "Indigenous farmers," as if Inuits must have the exact same cultural experience as Seminoles. "Asian-Americans" at least get a passing reference but again, this assumes that Japanese- and Pakistani-Americans can all be lumped together. USDA fails to even attempt to assert a compelling interest regarding these racial groups (not to mention the tailoring problems they present, *see* ECF No. 32 at 16).

For the races USDA does proffer evidence to support a compelling interest, it cites a total of 16 pieces of evidence. None of them move the needle. Eight of them were briefed for the Court

when arguing the preliminary injunction motion. *Compare* ECF No. 38 at 5 (citing *Pigford* and related settlements; House statement by Congressman Scott; Senate statement by Senator Stabenow; and the "Emergency Relief for Farmers of Color Act of 2021"), 6 (citing GAO reports 19-539 and 19-464 and the 2019 USDA civil rights hearing), 27 (citing a 2021 Congressional Research Service report documenting changes to Farm Services Agency committees), *with* Pls.' Reply in Support of Motion for Preliminary Injunction, ECF No. 22, at 18–19, *and with Strickland*, 2024 U.S. Dist. LEXIS 101547, at *22 (granting preliminary injunction). The Court correctly rejected it all because the statistical, outcome-based evidence failed to show intentional discrimination, and because some of the outcomes suggested that white farmers were at greater financial risk than USDA's preferred races. *See Strickland*, 2024 U.S. Dist. LEXIS 101547, at *18.

Of what remains, four are isolated statements in Congress or letters between Secretary Vilsack, an individual congressman, and amicus Rural Coalition. *See* ECF No. 38 at 7 (citing letter from Rural Coalition to Secretary Vilsack and two letters between Secretary Vilsack and Representative Thompson), 26 (citing remarks by Representative Costa). As this Court and others have already held, these are not enough. *See Strickland*, 2024 U.S. Dist. LEXIS 101547, at *22; *Wynn*, 545 F. Supp. 3d at 1278 n.4 ("[A]ny floor statement made by legislators advocating for Section 1005's passage that are not backed by statistical or anecdotal evidence should likely be afforded little or no weight."); *see also Holman*, 2021 U.S. Dist. LEXIS 127334, at *24 (same). These four isolated communications USDA cites to are irrelevant. Even if they were not, they at most provide general statistical evidence of the kind this Court has already held insufficient. *See Strickland*, 2024 U.S. Dist. LEXIS 101547, at *18.

The final four pieces of evidence USDA cites are more of the same. One is a conclusory statement in a report authored by the Rural Coalition way back in 2010. *See* ECF No. 38 at 24

(citing AR 0123). Stale evidence does nothing for USDA, and neither do conclusory statements by interest groups. *Wynn*, 545 F. Supp. 3d at 1285, 1279 ("Due to the significant remedial measures previously taken by Congress, for purposes of this case, the historical evidence does little to address the need for continued remediation through Section 1005."); *see also Holman*, 2021 U.S. Dist. LEXIS 127334, at *16, *23–24. The other three are reporting by the New Republic, the Environmental Working Group, and Politico. ECF No. 38 at 22 (New Republic); 30 (Environmental Working Group and Politico). All contain generalized statistical evidence of the kind this Court has correctly—and repeatedly—rejected. *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *18; *see also, e.g.*, *Wynn*, 545 F. Supp. 3d at 1280 (explaining that "[e]ven taking these statistics at face value, they are less useful than they may appear to be," and explaining the flaws of the statistics in detail); *see also Holman*, 2021 U.S. Dist. LEXIS 127334, at *17–19 (same); *Miller*, 2021 U.S. Dist. LEXIS 264778, at *26 (same).

Nor is USDA's approach narrowly tailored, as this Court already held. *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *19. USDA simply repeats the unsuccessful arguments it advanced at the preliminary injunction stage without responding to the Court's reasoning in the preliminary injunction order. *Id.* The Court held that (1) race-neutral alternatives were workable; (2) the racial classification system is both under- and over-inclusive; and (3) the discrimination negatively impacts third parties like the Plaintiffs. *Id.* All of this remains true. Rather than address these fatal flaws, USDA simply repeats much of its prior briefing. *Compare* ECF No. 38 at 26–31, *with* ECF No. 21 at 32–36.

The programs cannot be narrowly tailored because a more tailored (and race-neutral) way to address discrimination is to (1) stop discriminating[4] and (2) remedy the actual, specific victims of discrimination. Even if it were true that USDA's preferred races and sex were the groups most financially at risk because of USDA's past discrimination, ECF No. 38 at 29, financially at-risk farmers are still eligible for additional assistance through the limited resource or beginning farmer categories. That USDA wishes to include Oprah Winfrey's farm speaks to the incoherence of its policies. Stated bluntly, the programs are hideously over and underinclusive.

In the face of neither new evidence nor new argument, this Court should maintain its prior holding for all the reasons explained in Plaintiffs' motion for summary judgment. *See* ECF No. 32 at 15–16.

## IV. This Court should vacate and remand the Rule and enter a permanent injunction.

USDA presents no reason why this Court should limit its relief to remand with instructions to fully compensate Plaintiffs. This is an action brought under the APA with legal remedies fully proscribed by law that are not party-limited. Furthermore, this case easily satisfies the factors for a permanent injunction.

### A. Vacatur is the proper remedy, and it cannot be party-restricted.

Even as USDA acknowledges that vacatur is the typical remedy for an APA violation, it still asks for relief to be limited to Plaintiffs. Its request for what it admits is an atypical remedy, *see* ECF No. 38 at 35, lacks legal support and should be denied. This Court should vacate in part the unlawful portions of the eight challenged programs and remand the programs to USDA to

---

[4] As rampant as USDA seems to think discrimination is at its agency, among the "neutral alternatives," ECF No. 38 at 24, 27, that USDA claims to have tried unsuccessfully, it never mentions firing its racist employees, reporting them to enforcement officials for civil rights violations, or submitting itself to outside monitoring for chronic violations of civil rights laws.

reformulate the programs without the unlawful components and correct all payments made in accordance with the revised programs. *See Southwestern Elec. Power Co. v. U.S. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (vacating portions of a rule by specifically describing them as "regulating legacy wastewater and residual combustion leachate"); *Tex. Med. Ass'n v. U.S. HHS*, 654 F. Supp. 3d 575, 594 (E.D. Tex. 2023) (vacating individual words from a regulation and remanding).

USDA makes no effort to explain how its demand to cabin relief to Plaintiffs comports with the text of 5 U.S.C. § 706, which provides that when a rule is "not in accordance with law," then it "*shall*" be "set aside"—in other words, vacated. 5 U.S.C. § 706 (emphasis added); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 9 (2020) (holding unlawful agency action "must be vacated"). As this mandatory language makes clear, "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022); *see Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 114 (5th Cir. 2024) ("'[S]hall'—not may."). The effect of vacatur is to remove the source of power for the agency action. That means that the agency no longer has the power to act at all, not just upon Plaintiffs. *Cf. F.E.C. v. Cruz*, 596 U.S. 289, 301 (2022) (explaining agency "literally has no power to act—including under its regulations— unless and until Congress authorizes it to do so by statute.").

Because the agency has no legal authority to act as it did, vacatur cannot be limited to a party. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2463 (2024) (Kavanaugh, J., concurring); *Career Colls. of Tex. v. U.S. Dep't of Educ.,* 98 F.4th 220, 255 (5th Cir. 2024) (explaining § 706 "is not party restricted"); *see also Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 52 (D.D.C. 2020) (Jackson, J.) (explaining vacatur of a rule "for everyone" is normal APA remedy); Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L. J. 2304, 2311 (2024)

("The APA authorizes the universal vacatur of rules."); T Elliot Gaiser, Mathura Sridharan, & Nicholas Cordova, *The Truth of Erasure: Universal Remedies for Universal Agency Actions*, U. Chi. L. Rev. Online (Aug. 28, 2024), https://perma.cc/5VKG-ZG2R (explaining that because the APA sets forth legal remedies, separation of powers "requires" universal remedies under the APA).

USDA questions whether Congress authorized the remedy of vacatur under § 706 at all. ECF No. 38 at 34. This argument overlooks the reams of cases that say otherwise. It also overlooks the language of § 706, "which authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed'—unmistakably a remedy." *Corner Post,* 144 S. Ct. at 2467 (Kavanaugh, J., concurring) (quoting 5 U.S.C. § 706(1)).[5] The argument that § 706 does not authorize remedies is of recent vintage. *See id.* at 2461 (Kavanaugh, J., concurring) (criticizing government's "newly minted position" as "both novel and wrong" and explaining that it would "revolutionize long-settled administrative law[.]"); Ronald M. Levin, Vacatur, Nationwide Injunctions, and the Evolving APA, 98 Notre Dame L. Rev. 1997, 2008 (2023) (calling the government's arguments in *United States v. Texas* "[d]eeply revisionist").

USDA also argues that vacatur is discretionary and claims Plaintiffs fail to show a "persuasive reason why vacatur is necessary." ECF No. 38 at 35. Yet USDA agrees that "binding precedent holds vacatur to be the 'default rule' in this Circuit"—making it Defendants, not Plaintiffs, who must shoulder the burden to deviate from the default rule. *Id.* (citing *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023)); *see also Tex. Med. Ass'n v. HHS*, No. 6:23-cv-59, 2023 U.S. Dist. LEXIS 135310, at *34 (E.D. Tex. Aug. 3, 2023). Courts only stop short of vacating

---

[5] Defendants rely on Justice Gorsuch's concurrence in *United States v. Texas*, but Justice Gorsuch acknowledged that "the matter is [not] open and shut," 599 U.S. 670, 701 (2023), and the law of this Circuit is clear. *Career Colls. of Tex.*, 98 F.4th at 255.

illegal agency action when there is "at least a serious possibility that the [agency] will be able to substantiate its decision given an opportunity to do so, and when vacating would be 'disruptive.'" *Cent & S.W. Servs. v. EPA*, 220 F.3d 683, 692, (5th Cir. 2000).

Courts also consider the "seriousness of the deficiencies of the action" when deciding whether to vacate. *Tex. Med. Ass'n*, 2023 U.S. Dist. LEXIS 135310, at *33 (cleaned up). USDA would not have been able to carry its burden when requesting disfavored remand even if it had made the argument. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). The seriousness of USDA's racial discrimination cannot be overstated, as this Court already recognized. Prelim. Inj. Order at 17. That is not something it can fix with a better explanation. *See, e.g.*, *Allied-Signal, Inc. v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (holding remand without vacatur appropriate because the agency may be able to provide a better reasoned explanation). Nor would it be disruptive to the public because there is no reliance interest in the perpetuation of a discriminatory compensation payment, especially one that leaves most eligible farmers victimized and shortchanged. *See* Prelim. Inj. Order at 21 (recognizing no public interest in the violation of constitutional rights). It might make life more difficult for USDA to formulate new funding formulas, but race preferences can never be justified by mere administrative convenience. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989) (rejecting "simple administrative convenience" as a compelling interest for racial preferences).

Finally, as this Court recognized, "Plaintiffs don't even seek economic relief." *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *27. And that is Plaintiffs' choice to make—*not* USDA's, as "the plaintiff is the master of his complaint, and defendants cannot restate his claims, consistently recasting the claims against the plaintiff's consistent opposition." *Wells v. City of Alexandria*, 178 Fed. Appx. 430, 433 (5th Cir. 2006) (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp. (Group)*, 285

F.3d 677, 685 (8th Cir. 2002)). This Court should grant the relief Plaintiffs sought—relief that will actually remedy their injuries—not the relief USDA would prefer to give them.

> **B.    This Court should order a 90-day deadline for compliance.**

USDA complains that it would be "drastic" to order compliance in 90 days. ECF No. 38 at 33. It has been in the business of discriminating in disaster relief for *years*, fully aware that its actions were highly suspect. If it has not developed a backup plan by now, its workload should not elicit sympathy.

Any further delay inflicts additional injury because Plaintiffs have an accruing injury. Far from a purely "financial" injury, *see id.* at 32, the denial of equal treatment, i.e., the "discrimination itself," causes "serious non-economic" harm that recurs each moment it remains unremedied. *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984). Indeed, this Court previously agreed that Plaintiffs have an irreparable stigmatic injury that is inflicted on an ongoing basis and cannot be fixed by a non-discriminatory payment. *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *27 ("[D]amages don't remedy stigmatic harms." (quoting *Nuziard II*, 721 F. Supp. 3d at 503)); *see also id.* ("Economic relief will not help Plaintiffs here."). USDA does not say why this Court, or, for that matter, the *Nuziard* court, got it wrong.

Even if only money were at stake, each day Plaintiffs are without their full amount leaves them in a comparatively worse financial position than their peers who benefited from USDA's discrimination. *See Atl. Mut. Ins. Co. v. Comm'r*, 523 U.S. 382, 384 (1998) (explaining the "time value of money," i.e., "the fact that a dollar today is worth more than a dollar tomorrow" (cleaned up)). Money is worth less today than it was in 2020 or 2022. Each day USDA dawdles puts Plaintiffs in a worse position relative to their peers. Besides, USDA has had since June 7—the day

this Court found Plaintiffs were likely to prevail—to prepare. It cannot complain of the unfairness of a 90-day window.

USDA argues that retaining jurisdiction and imposing a timeline "is typically reserved for cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance with court orders or resistance to fulfillment of legal duties." *Id.* (quoting *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 37, 41 (D.D.C. 2008)). Of course, *Baystate* was just listing examples; it did not articulate a rule, and certainly not one binding for this Circuit. Rather, "it is not unusual for courts to retain jurisdiction in such instances, or to impose time limits for review." *Lewis v. United States*, No. 18-1838, 2020 U.S. Dist. LEXIS 198326, at \*10 (E.D. La. Oct. 26, 2020) (explaining the difference between inappropriate judicial control over agency decisionmaking and appropriate judicial control over the case in front of it). Even applying the *Baystate* list, the government's pattern of recycling the discriminatory "socially disadvantaged" definition despite an unmitigated pattern of losses, including in *this* district, *see Strickland*, 2024 U.S. Dist. LEXIS 101547, at \*19 (citing cases rejecting USDA's socially disadvantaged definition), undermines confidence in the agency's sincere desire to rectify its ongoing practice of discrimination. USDA deserves to be kept under close watch.

### C.    This Court should also order a permanent injunction.

USDA mostly reheats the same arguments it made against a preliminary injunction in arguing against a permanent injunction. One is in order here. *See id.* at \*30 (granting preliminary injunction).

USDA's lone original argument is to contend that Plaintiffs did not address the factors for a permanent injunction. ECF No. 38 at 33. But the Court already determined that Plaintiffs face

irreparable harms that cannot be compensated by monetary damages, that an injunction would serve the public interest, and that, on balance, a remedy in equity is warranted. *Id.* These are the same factors that govern a permanent injunction. *See Bay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court's prior rulings are now the law of the case. *See Bisgaard v. Bitgood*, 4:22-cv-03279, 2024 U.S. Dist. LEXIS 14490, at *7 (S.D. Tex. Aug. 14, 2024) (recognizing that legal issues decided when issuing a preliminary injunction are law of the case). And USDA does not suggest that the Court wrongly evaluated any factor other than likely success.

The public interest factor weighs heavily. *See Nuziard II*, 721 F. Supp. 3d at 506 (recognizing the "strongest public interest" in enjoining an unconstitutional race-based program). It would be grossly unfair to the public if Plaintiffs were the only non-"socially disadvantaged" victims of natural disaster to be treated equally. This outcome would undermine public confidence in the judiciary. *Id.* As observed by the Court in *Nuziard*, "the federal government may not flagrantly violate such rights with impunity." *Id.* at 509. USDA has done so for years. "Time's up." *Id.*

An injunction is necessary to remedy Plaintiffs' stigmatic injuries. *See id.* at 503. USDA fails to appreciate that far more than dollars are at stake here. If money were enough, then the *Nuziard* court should not have issued the injunction, a case USDA cites. ECF No. 38 at 33. Each day that Plaintiffs suffer unequal treatment inflicts a stigmatic harm that "no standards could compute[.]" *Nuziard II*, 721 F. Supp. 3d at 503.

The permanent injunction should prevent USDA from continuing to unlawfully discriminate based on race and sex. As this Court already noted, "Plaintiffs have pending applications before USDA Programs that employ 'socially disadvantaged' benefits designations." *Strickland*, 2024 U.S. Dist. LEXIS 101547, at *26. The Court concluded that "[a]n injunction on

constitutional grounds, therefore, will likely redress Plaintiffs' stigmatic harm in their ongoing applications to USDA Programs." *Id.* at 27. The Court should extend this logic. USDA will continue to discriminate against Plaintiffs in the absence of ongoing injunctive and declaratory relief.

## CONCLUSION

Plaintiffs ask this Court to grant summary judgment for Plaintiffs and partially vacate and remand the challenged programs. The Court should also enjoin USDA from using race and sex preferences and declare those preferences unlawful.

Dated: <u>December 12, 2024</u>.                    Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK
  Georgia Bar No. 396831
  Tennessee Bar No. 021399
BENJAMIN I. B. ISGUR
  Virginia Bar No. 98812
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
(770) 977-2131
bboucek@southeasternlegal.org
bisgur@southeasternlegal.org

WILLIAM E. TRACHMAN
  Colorado Bar No. 45684
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wtrachman@mslegal.org

ED MCCONNELL
  Texas Bar No. 13442500
Tormey & McConnell, LLC
310 SW 6th Ave.
Amarillo, TX 79101
Tel. (806) 355-2700; Fax. (806) 355-4771
ed@tmcattorneys.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief conforms to the requirements of Local Rule 7.2. It was prepared in 12-point Times New Roman Font. It is double-spaced and has margins that are at least one inch on all four sides. No text other than page numbers is in the margins.

Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK