## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RUSTY STRICKLAND, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 2:24-cv-00060-Z |
| THE UNITED STATES DEPARTMENT OF ARGRICULTURE, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Deputy Branch Director

ALEXANDER V. SVERDLOV
(NY Bar No. 4918793)
FAITH E. LOWRY
(TX Bar No. 24099560)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-5581
Email: faith.e.lowry@usdoj.gov

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

I.    USDA's Decision to Use a Progressive Factoring Payment Calculation System in ERP 2022 to Distribute a Limited Pot of Emergency Funds Is Discretionary and Therefore Not Reviewable. ........................................................................................ 1

II.   The Administrative Record Demonstrates that USDA's ERP 2022 Payment Calculation Was Not Arbitrary or Capricious. .......................................................... 2

III.  USDA's Use of the Socially Disadvantaged Farmer Designation Is Authorized by Statute and Constitutional. ............................................................................................ 5

      A.    USDA's use of the socially disadvantaged farmer designation is authorized by statute. ..................................................................................................... 6

      B.    USDA's use of the socially disadvantaged farmer designation satisfies strict scrutiny. .................................................................................................... 9

IV.   Plaintiffs Fail to Justify Vacatur and Injunctive Relief. ........................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Alliance for Fair Board Recruitment v. SEC*,
  2024 WL 5078034 (5th Cir. Dec. 11, 2024) ................................................................ 7-8

*Baystate Med. Ctr. v. Leavitt*,
  587 F. Supp. 2d 37 (D.D.C. 2008) ............................................................................ 16

*Board of Trustees of Glazing Health & Welfare v. Chambers*,
  941 F.3d 1195 (9th Cir. 2019) .................................................................................. 14

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) ...................................................................................... 15

*Cutrera v. Bd. of Supervisors of La. State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ..................................................................................... 13

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................... 12

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019) ..................................................................................................... 1

*Freedom From Religion Found., Inc. v. Abbott*,
  58 F.4th 824 (5th Cir. 2023) ...................................................................................... 14

*Gill v. Whitford*,
  585 U.S. 48 (2018) ..................................................................................................... 12

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .................................................................................................. 1-2

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017) ....................................................................................................... 7

*Jackson v. Gautreaux*,
  3 F.4th 182 (5th Cir. 2021) ........................................................................................ 13

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) ..................................................................................... 15

*Jones v. Cain*,
  600 F.3d 527 (5th Cir. 2010) ..................................................................................... 15

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ........................................................................... 1, 2

*Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*,
   478 U.S. 421 (1986) ............................................................................... 11

*Make the Rd. N.Y. v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020) ................................................................ 1

*Nuziard v. Minority Bus. Dev. Agency*,
   721 F. Supp. 3d 431 (N.D. Tex. 2024) ................................................... 13

*Oklahoma v. Castro-Huerta*,
   597 U.S. 629, 642 (2022) ....................................................................... 7

*Russello v. United States*,
   464 U.S. 16, 23 (1983) .......................................................................... 6

*Twin Rivers Paper Co. LLC v. SEC*,
   934 F.3d 607 (D.C. Cir. 2019) .............................................................. 13

*Webster v. Doe*,
   486 U. S. 592 (1988) .............................................................................. 2

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ............................................................................... 8

*Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*,
   586 U.S. 9, 23 .......................................................................................... 2

## Statutes

7 U.S.C. § 9081 ..................................................................................... 6

Pub. L. No. 117-328, 136 Stat 4459 (2022) .................................... 6, 7

## Regulations

7 C.F.R. § 1416.1 .................................................................................. 6

87 Fed. Reg. 30164 (May 18, 2022) .................................................... 7

88 Fed. Reg. 74404 (Oct. 31, 2023) ............................................*passim*

The administrative record compiled in this case supports USDA's decision to use a progressive factor in its ERP 2022 payment calculation to more widely distribute disaster relief funds that fell billions of dollars short of uncovered losses. That record likewise supports USDA's use of the socially disadvantaged farmers designation to provide modest additional benefits to certain minority farmers based on their membership in groups that were subject to past discrimination. Because USDA's use of the socially disadvantaged farmer designation in the challenged programs is program-specific and based on findings of strong evidence of past discrimination, its use is narrowly tailored to USDA's compelling interests. Plaintiffs' reply ignores many of the points raised in Defendants' motion for summary judgment, relying instead on conclusory references to the Court's preliminary injunction order. Now having the benefit of the complete administrative record and fully developed arguments related to Plaintiffs' equal protection claim, the Court should deny Plaintiffs' Motion for Summary Judgment and grant summary judgment in favor of USDA on all claims.

## I.    USDA's Decision to Use a Progressive Factoring Payment Calculation System in ERP 2022 to Distribute a Limited Pot of Emergency Funds Is Discretionary and Therefore Not Reviewable.

Plaintiffs are correct that under Supreme Court precedent, the APA exception for actions committed to agency discretion by law is read "quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *See Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 631 (D.C. Cir. 2020) (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019)). "But rare does not mean never." *Id.*

Rather, "[t]he § 701(a)(2) exception is generally limited to certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion[.]'" *Dep't of Commerce*, 588 U.S. at 772 (quoting *Lincoln v. Vigil*, 508 U. S. 182, 191 (1993)). These categories of presumptively unreviewable decisions include not only "a decision not to institute enforcement proceedings," *id.* (citing *Heckler v. Chaney*, 470 U. S. 821,

831-32 (1985)); a "decision by an intelligence agency to terminate an employee in the interest of national security," *id.* (citing *Webster v. Doe*, 486 U. S. 592, 600-01 (1988)); and decisions not to reconsider a final action, *Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (citation omitted); but also "[t]he allocation of funds from a lump-sum appropriation," "which is another administrative decision traditionally regarded as committed to agency discretion." *Lincoln*, 508 U.S. at 192.

Plaintiffs do not dispute that ERP 2022 offered assistance to cover "necessary expenses related to [covered] losses," as directed by Title I of the Disaster Relief Supplemental Appropriations Act, 2023 (providing USDA a lump sum of $3.7 million "to remain available until expended, for necessary expenses related to losses of revenue, quality, or production losses of [certain] crops" under such terms and conditions "as determined by the Secretary"). And they do not point to any additional language in the statute limiting or otherwise guiding the "terms and conditions" to be determined by the Secretary. Indeed, the only limitations that Plaintiffs identify—that the appropriations were "aimed at disaster relief for individual calendar years and causes," Pls.' Reply at 3—have nothing to do with whether a flat or progressive factor payment calculation should be used. Plaintiffs have not offered the Court any "meaningful standard by which to judge the propriety" of USDA's decision to use progressive factoring as opposed to a flat factor, and the statute provides none. Accordingly, the Court should revisit its conclusion that USDA's decision to use a progressive factor in ERP 2022's payment calculation is reviewable under the APA and grant summary judgment on this claim in favor of the USDA.

## II.    The Administrative Record Demonstrates that USDA's ERP 2022 Payment Calculation Was Not Arbitrary or Capricious.

Plaintiffs first argue in their Response that USDA "forfeited" its defense of Plaintiffs' primary APA claim—a challenge to USDA's decision to use progressive factoring—by failing to explain "*why* it believed it was a good idea to steer funds to smaller operations and shallower losses." Pls.' MSJ at 4. But USDA's reasoning is straightforward: targeting

2

shallower losses allowed USDA to provide a greater benefit to the "majority of producers rather than a few." 88 Fed. Reg. at 74408, n.14. The Court recognized this interest in its preliminary injunction order. Order at 8, ECF No. 26 ("The USDA was well within its discretion to apply progressive factoring to ensure[] the limited available funding is distributed in a manner benefitting the majority of producers rather than a few." (citing 88 Fed. Reg. at 74470, n.14)). And it is clearly stated in USDA's motion for summary judgment, which references both the Notice of Funding Availability ("NOFA") and the broader Administrative Record.

> For example, the NOFA provides,

> Progressive factoring is a mechanism that ensures the limited available funding is distributed in a manner benefitting the majority of producers rather than a few. Additionally, **progressive factoring increases emergency relief payments to most participants while reducing larger potential payments** which increases the proportion of funding provided to smaller producers.

88 Fed. Reg. at 74408, n.14 (emphasis added). Defendants cited this provision of the NOFA in the cross-motion for summary judgment, along with other references to the record. Defs.' MSJ at 13 (citing 88 Fed. Reg. at 74408, n.[1]4); *id.* at 3 ("Under this calculation method, more than 80% of farmers received a greater payment than they would have under a 27% flat rate percentage system."), 10 (citing AR 881, 884). While Plaintiffs do not agree with USDA's decision to distribute funds in this manner, they cannot seriously claim that USDA has failed to articulate the reasoning behind its decision or otherwise forfeited its defense of Plaintiffs' primary APA claim.

Beyond their challenge to the use of progressive factoring in the ERP 2022 payment calculation, Plaintiffs challenge for the first time in their motion for summary judgment the breakpoints and percentages used in ERP 2022's progressive factor payment calculation, and the decision to allocate relief payments through direct attribution. Defendants opposed these claims both as unsupported by the pleadings and on the merits. Defs.' MSJ at 15-16. Plaintiffs argue in response that they "could not have fully explained these arguments before receiving

the administrative record" and that the proper course would be to construe the motion for summary judgment as a motion for leave to amend. Pls.' Resp at 5. Their response fails on both fronts.

As USDA argued in its response and cross-motion, the agency had no notice of Plaintiffs' objections to either (i) the breakpoints and percentages in ERP 2022, or (ii) the direct attribution aspect of the payment calculation for payment limitations purposes until Plaintiffs filed their motion for summary judgment. This is despite the fact that the breakpoints and direct attribution method of calculation are both apparent on the face of the NOFA. *See* 88 Fed. Reg. 74414 (describing the breakpoints and percentages); 88 Fed. Reg. 74415 (describing direct attribution: "A payment made to a legal entity will be attributed to those members who have a direct or indirect ownership interest in the legal entity, unless the payment of the legal entity has been reduced by the proportionate ownership interest of the member due to that member's ineligibility."). It is unsurprising that the administrative record does not include a greater level of detail behind USDA's decision-making with respect to these program details; because they were not challenged in the Complaint, the administrative record was not compiled with an eye toward these aspects of the program, and USDA would be prejudiced by their consideration at this stage of the proceedings. *See* Defs.' MSJ at 16 ("Regardless, evaluating that alteration as its own final decision would require the examination of a separate record.").

To the extent the Court nevertheless construes Plaintiffs' motion for summary judgment as a motion for leave to amend their Complaint, leave should be denied. These aspects of the ERP 2022 payment calculation are entirely within USDA's discretion, similar to USDA's decision to use a progressive factor as opposed to a flat factor, *supra* at 1-2; thus, leave to amend would be futile. Plaintiffs should not be permitted to broadly audit the details of ERP 2022, searching for and then raising new claims at summary judgment, after the administrative record has been compiled, and without any prior notice to USDA.

At base, the administrative record supports USDA's decision to respond to a shortfall in Congressional funding by using a progressive factoring payment calculation to prioritize shallower losses, providing more than 80% of farmers with a greater benefit than they would have received under a flat factor, Defs.' MSJ at 10, 13–14 (citing 88 Fed. Reg. at 74408, n.[1]4; AR 881, 884). Even as to Plaintiffs' newly raised claims, the record also supports USDA's decision to establish breakpoints and payment percentages that conform to overall payment limitations, *id.* at 14–16 (citing, *e.g.*, 88 Fed. Reg. at 74411-14; AR 862, 870, 884, 900). Finally, the record supports USDA's decision to provide payments at the producer-payee level, consistent with direct attribution principles that trace back to the 2008 Farm Bill, overall payment limitations, and available supporting documentation, *id.* at 16–17 (citing, *e.g.*, AR 795, 7 CFR § 1400.105, CCC-901 and -902 (referenced in the ERP 2022 application materials, 88 Fed. Reg. 74415)). And each of these decisions must be understood within their broader context, in which USDA must consider overall funding and individual payment limitations, *see* Defs' MSJ at 15–16 (citing AR 794, 884, 900)—limitations that Plaintiffs ignore in their response.

In sum, the ERP 2022 payment calculation is supported by the administrative record and reasonable. Plaintiffs have not demonstrated that any of the challenged features of the ERP 2022 payment structure are arbitrary and capricious. To the extent the Court reaches these APA claims, it should grant Defendants' motion for summary judgment.

## III. USDA's Use of the Socially Disadvantaged Farmer Designation Is Authorized by Statute and Constitutional.

Each of Plaintiffs' two challenges to USDA's use of the socially disadvantaged farmer designation to direct benefits to certain minority groups and women fails, including their challenge under the major questions doctrine, in which they argue that USDA's use of this designation was not statutorily authorized, Pls.' Reply at 8-13, and their equal protection challenge, *id.* at 13-18.

### A.    USDA's use of the socially disadvantaged farmer designation is authorized by statute.

Plaintiffs' reply does not undermine the statutory authority for USDA's use of the "socially disadvantaged" designation to direct additional benefits to certain minority groups and women.  Indeed, Plaintiffs' arguments on this score ignore the plain language of, and history of, the authorizing legislation—and wrongly attempt to wield the major questions doctrine to defeat both.

1.    Contrary to Plaintiffs' repeated claims, USDA did not adopt the "socially disadvantaged" designation in its disaster relief programs based on "congressional silence," Pls. Reply at 13, much less in the face of Congress's refusal to grant USDA the required authority, *id.* at 8.  Rather, as Defendants detailed in their opening brief, Congress gave USDA a capacious charge to distribute disaster relief "under such terms and conditions" as the Secretary deemed appropriate.  Pub. L. No. 117–43; *see also* Div. N, Tit. I, Pub. L. No. 117-328, 136 Stat 4459, 5201.  This expansive authorization came decades after Congress itself directed USDA to use the "socially disadvantaged" designation across a range of USDA programs—including, as Plaintiffs acknowledge, in disaster relief funding that it originally authorized in 2014.  *See* Pub. L. No. 113-79, Feb. 7, 2014 (codified at 7 U.S.C. § 9081(a), (d) (authorizing use of "socially disadvantaged farmer or rancher" category with respect to "[e]mergency assistance for livestock, honey bees, and farm-raised fish"); 7 C.F.R. § 1416.1.

Against this background, Plaintiffs' attempts to read something into the fact that Congress did not specifically direct the use of the "socially disadvantaged" designation in the later-enacted programs is unavailing.  Pls. Reply at 10.  Having first created the designation and normalized its use in the realm of disaster relief more than a decade earlier, Congress should be taken at its word when it subsequently granted the Secretary discretion to use "such terms and conditions as [he] determined."  Pub. L. No. 117–43.[1]  Indeed, the very cases

---

[1]    Incidentally, it is this timing that distinguishes Congress's actions here from circumstances where "Congress includes particular language in one section of a statute but omits it in another section of the same Act."  *Russello v. United States*, 464 U.S. 16, 23 (1983).

Plaintiffs cite demand as much. *See, e.g.*, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("As this Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text."); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (courts must "presume . . . that [the] legislature says what it means and means what it says" (cleaned up, citation omitted)).

Taking Congress's direction at face value is especially appropriate here, given that (as Defendants observed previously) Congress was *aware* that the Secretary was employing the "socially disadvantaged" designation starting in 2020—yet it *kept* appropriating disaster relief using the same expansive grants of discretion. *Compare Notice of Funds Availability; Emergency Relief Program*, 87 Fed. Reg. 30164, 30169 (May 18, 2022) ("Similar to other FSA disaster assistance programs like ELAP and other recent ad hoc disaster programs, historically underserved farmers and ranchers will receive an increase to their ERP Phase 1 payment that is equal to 15 percent.") *with* Div. N, Tit. I, Pub. L. No. 117-328, 136 Stat 4459, 5201 (Dec. 29, 2022) (providing that the funds provided shall be subject to the same "terms and conditions" as previous programs). After all, when "the Executive Branch [] misconstrue[s] the intent of a statute[] Congress can and often does correct such misconceptions." *Bob Jones Univ. v. United States*, 461 U.S. 574, 599 (1983). Congress's repeated decisions to not do so— and to rely on the same broad authorizing language in subsequent enactments—"make out an unusually strong case of legislative acquiescence in and ratification by implication." *Id*. For all their insistence that Congress knows how to express "a preference" in legislation, Plaintiffs notably fail to rebut this history. Pls. Reply at 10. Yet this history makes clear that Congress viewed the Secretary's repeated use of the "socially disadvantaged" designation as falling within the ambit of the statutes' broad authorizing text.

2.    Plaintiffs' repeated efforts to invoke the major questions doctrine fail for the same reasons. Unlike the recent Fifth Circuit decision in *Alliance for Fair Board Recruitment v.*

---

Traditional canons of construction indicate a deliberate withholding of authority only in the latter circumstance. *Contra* Pls. Reply at 13.

*SEC*, USDA has not "'claimed to discover in a long-extant statute an unheralded power' that it 'located . . . in the vague language of an ancillary provision of the'" relevant statute. 2024 WL 5078034, at *16 (5th Cir. Dec. 11, 2024). Nor has the agency "intruded into territory far outside its ordinary domain." *Id*. Rather, as this Court correctly observed, the agency has been using the socially disadvantaged designation across its programs for approximately 20 years—and has extended that designation here based on clear and expansive authorization. PI Order at 9. Plaintiffs identify no case recognizing a major question issue in remotely similar circumstances. *See, e.g.*, *All. for Fair Bd. Recruitment*, 2024 WL 5078034, at *16 (major questions doctrine triggered where the "relevant statutory provisions date[d] either to 1934 or 1975" yet "SEC has never claimed the authority to impose diversity requirements, or anything resembling them, on corporate boards" and those efforts stepped "outside its ordinary regulatory domain . . . into the province of other agencies"); *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 728 (2022) (doctrine implicated where the "view of EPA's authority was not only unprecedented; it also effected a fundamental revision of the statute, changing it from [one sort of] scheme of regulation into an entirely different kind" (cleaned up)).

Notably, Plaintiffs do not address this Court's prior rejection of their major questions argument. *See* Pls. Reply at 9-11. Instead, they merely protest that, by adopting the challenged classifications, USDA stepped into "a deeply significant question." *Id.* at 11. Yet, as Defendants previously explained, the Supreme Court has never applied the doctrine in this way. Defs' MSJ at 20-21. Nor, contrary to Plaintiffs' suggestion, has the Fifth Circuit. *See All. for Fair Bd. Recruitment*, 2024 WL 5078034, at *16 (analyzing "political significance" of issues the agency confronted as only one of several categories).

In short, Plaintiffs fail to show that the delegation of broad discretion to the Secretary to set appropriate "terms and conditions" for disaster relief programs is any less than it seems on its face—or that Congress was required to do anything more before the Secretary could employ the same kinds of criteria that USDA has long employed pursuant to explicit

Congressional direction and with full Congressional acquiescence. Employing the "socially disadvantaged" designation when Congress expressly gave USDA expansive discretion is not the stuff of administrative usurpation. Rather, it is a straightforward extension of a system that Congress has expressly contemplated and left to the agency's discretion.

### B.     USDA's use of the socially disadvantaged farmer designation satisfies strict scrutiny.

1.     As USDA argued in its motion for summary judgment, when USDA uses race-neutral payment criteria in its *ad hoc* programs, those payments consistently fail to benefit minority farmers in proportion to their representation within the producer population. AR 514. USDA does not attribute these disparities to ongoing discrimination, as Plaintiffs seem to suggest, but rather to the lingering effects of historical discrimination, as set forth in Defendants' motion for summary judgment. Defs.' MSJ at 22-24 (citing AR 123, 209, 239, 340). Confronting and eliminating these persistent effects of historical race discrimination by USDA itself constitutes a compelling interest.

Indeed, USDA has faced litigation challenging USDA's use of race-neutral criteria in its relief programs, brought by plaintiffs who allege that choosing to structure programs in this manner amounts to a choice to prioritize relief for white farmers in violation of the equal protection rights of minority farmers. *Pride v. USDA*, 1:23-cv-02292 (D.D.C.), Compl. ¶ 6. USDA denies these claims, but they demonstrate the interest USDA has in addressing any the effects of discrimination across USDA's programs. *See* Defs.' MSJ at 25. Plaintiffs have declined to respond to or even acknowledge this evidence of a compelling interest.

Instead, Plaintiffs attempt to use the financial assistance recently issued by USDA through the Discrimination Financial Assistance Program ("DFAP") to attack USDA's articulated interest in addressing the effects of historical discrimination. But this is not an "elephant in the room," Pls.' Reply at 14; it is a non-sequitur. *See* Pls.' Reply at 14. DFAP applications closed in January 2024, and payment awards were made starting in July 2024—months after the most recent of the challenged programs was announced (ERP 2022,

announced in October 2023). https://www.22007apply.gov/program-overview.html; 88 Fed. Reg. 74404. To the extent that DFAP has the effect of eliminating lingering effects of historical discrimination, one would expect to see those results in the future. But those yet-to-be-seen results do not undermine USDA's use of the socially disadvantaged farmer designation until such benefits are realized. The limiting principle here is straightforward: as long as USDA programs manifest persistent effects of historical discrimination, USDA maintains an interest in addressing those disparities using the tools at its disposal.[2] *See* Pls.' Reply at 14.

2.    As Defendants argued in their motion for summary judgment, each of the factors used to assess narrow tailoring support USDA's use of the socially disadvantaged farmer designation to extend modest benefits to groups that have been shown to have experienced historical discrimination, including, as relevant here, (1) the necessity for the relief and the efficacy of alternative remedies, (2) the flexibility and duration of the relief, and (3) the impact of the relief on third parties. *See* Defs.' MSJ at 26.

Plaintiffs' criticism of USDA's evaluation of race-neutral alternatives to the socially disadvantaged farmer designation misstates USDA's positions and is otherwise unpersuasive. *See* Pls.' MSJ at 18, n.4. First, USDA does not believe that discrimination is rampant at its agency, as Plaintiffs suggest. (And in any event, individual ERP 2022 relief payments were based on objective criteria, not the discretionary decisions of any individual employees.) Where isolated instances of discrimination occur in other USDA programs, Title VII and ECOA may provide statutory remedies, as they have existed for decades. Similarly, the USDA Office of Assistant Secretary for Civil Rights reviews claims for discrimination, and has for decades. *See* Defs.' MSJ at 26-28. These remedies have long been available, but have not eliminated the effects of historical discrimination that continue to persist across USDA's

---

[2] To the extent that the Court finds the current record lacking to support findings of historical discrimination against particular racial groups, as Plaintiffs' briefing invites the Court to do (Pls.' Reply at 15), that would not provide a justification for eliminating the socially disadvantaged farmer designation as a whole.

10

programs. Accordingly, they do not provide a race-neutral alternative to USDA's use of the socially disadvantaged farmer designation.

As to the second factor, USDA's use of the socially disadvantaged farmer designation is both flexible and time-limited. *See* Defs.' MSJ at 28. Again, Plaintiffs decline to address this argument in their reply. And while they criticize Defendants for repeating arguments made in opposition to Plaintiffs' request for a preliminary injunction, the Court's preliminary injunction order did not consider the flexible and time-limited nature of USDA's use of the socially disadvantaged farmer designation in its *ad hoc* program. This factor overwhelmingly favors a finding of narrow tailoring, and Plaintiffs have not argued to the contrary.

With respect to the third factor, Plaintiffs have not identified any evidence showing that white male farmers are either competitively disadvantaged by USDA's additional assistance to socially disadvantaged farmers or that white farmers were historically denied equal treatment by USDA. Defs.' MSJ at 29. And they do not dispute that white farmers continue to receive the vast majority of agricultural funding. *Id.* (citing *Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 481 (1986)). Rather, they make the conclusory argument that "the discrimination negatively impacts third parties like the Plaintiffs." Pls.' Reply at 17. But the mere fact that consideration of race or sex may negatively affect someone does not by itself demonstrate a lack of narrow tailoring. Because Plaintiffs have not demonstrated any particularized harm suffered by white farmers when USDA extends modest benefits to groups that were historically discriminated against, this factor favors a finding of narrow tailoring.

Lastly, Plaintiffs' reply attacks USDA's use of the socially disadvantaged farmer designation as both over- and under-inclusive, primarily relying on the Court's preliminary injunction order. Pls.' Reply at 18. But the evidence in the record supports USDA's determinations that certain minority groups suffered past discrimination. Defs.' MSJ at 29–31. On the other hand, there is no evidence to show that white male farmers as a group have

11

suffered the same history of discrimination as socially disadvantaged farmers or failed to receive funding proportional to their representation within the producer population.

Here again, Plaintiffs cite the Court's preliminary injunction order without much further elaboration. Pls.' Reply at 18. But as Defendants showed in their motion, any group may seek approval from the Deputy Administrator for inclusion within the socially disadvantaged designation, if they can make a strong showing of past discrimination. Defs.' MSJ at 31 (citing, *e.g.*, 87 Fed. Reg. 19465). This prevents the inclusion of groups for which strong evidence of past discrimination does not exist and allows the designation to remain tailored to USDA's compelling interests.

For each of these reasons, the Court should revisit its conclusion that USDA's socially disadvantaged designation is not narrowly tailored.

## IV.    Plaintiffs Fail to Justify Vacatur and Injunctive Relief.

Nor does Plaintiffs' reply rescue their misbegotten request for vacatur and an injunction. Plaintiffs do not dispute—because they cannot—that a remand directing USDA to recalculate their payments for the specific challenged programs would remedy their financial losses. But financial loss was the only type of injury they alleged in their complaint and in their opening brief. *See* Compl. ¶¶ 174-244; *id.* ¶¶ 245-49 (summarizing alleged injuries); Pls. MSJ Br. at 34. Indeed, as Defendants previously observed, Plaintiffs themselves categorically stated that "correct[ing] the payments [USDA] made" would "remedy the [challenged] race and sex preferences." Pls. MSJ Br. at 34. And because a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury," Plaintiffs have no entitlement to— and this Court lacks jurisdiction to grant—anything more. *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (noting that numerous decisions have "emphasized that '[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established'").

12

Attempting to resist this result, Plaintiffs point to this Court's preliminary injunction order and assert—in passing—that they are also seeking to remedy a "stigmatic" injury. MSJ Reply at 22, 24. But there are at least two fundamental problems with this argument. First, "[i]t is well settled in [this] circuit that '[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'" *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). This is especially true when it comes to asserting injury. Because injury is an element of Article III standing, Plaintiffs must "fairly raise [their] theory of injury" in the complaint—or, at the very least, in "its opening [summary judgment] submissions." *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019). That Plaintiffs failed to do so in their opening brief suggests that they meant what they said in their complaint.

Second, and in any event, Plaintiffs still fail to show that the financial remedy would not remedy any alleged stigmatic injury. As Defendants previously explained, that type of financial remedy would definitionally remove the very source of unequal treatment that Plaintiffs maintain gave rise to the stigma in the first place. *See* Defs' MSJ Br. at 32-33. Plaintiffs do not—and cannot—dispute that fact. Instead, in urging the Court to order a short remand, Plaintiffs protest that they are suffering "an accruing injury" that "recurs each moment it remains unremedied." Pls. Reply at 22. As Plaintiffs themselves appear to recognize, however, this assertion only supports providing Plaintiffs a remedy quickly: it does not demonstrate that money cannot make Plaintiffs whole. Indeed, unlike in the *Nuziard* case that Plaintiffs cite, they have not been excluded from the challenged programs on an ongoing basis. *See Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 449 (N.D. Tex. 2024). Rather, they have, in their telling, been underpaid a specific number of times in a manner they themselves calculate—so their injury is, indeed, capable of financial compensation. *Contra id.* at 503 (noting that "no standards could compute Plaintiffs' damages" when they were

13

precluded from participating in a program). And, revealingly, Plaintiffs provide no explanation for how vacatur or an injunction would afford them any greater relief with respect to that underpayment.

Plaintiffs attempt to sweep all this under the rug by pointing to this Court's prior conclusion that a preliminary injunction was appropriate because Plaintiffs suffer a stigmatic rather than financial injury. Pls. Reply at 22; *see generally* PI Order at 18-20. Respectfully, the Court should reconsider that conclusion given how Plaintiffs themselves have framed their case. Indeed, there is a reason that Plaintiffs themselves did not embrace stigmatic harm as their main theory of injury, even after it was articulated by this Court. As this Court recognized, that type of injury can only be remedied by an injunction—which is not available with respect to any programs that are now closed. *See* PI Order at 1 (noting that of the eight USDA programs, only one is "active"). So if Plaintiffs were proceeding on that theory of injury—and seeking only prospective relief—they would lack standing to challenge any program except ERP 2022; or, at the very least, their claims would be moot. *See generally Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) (noting that where a statute or regulation is no longer operative "mootness is the default"); *Board of Trustees of Glazing Health & Welfare v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) ("[I]n determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot."). Defendants do not understand Plaintiffs to be disclaiming their challenge to the now-closed programs or embracing this Court's conclusion that they "don't even seek economic relief." PI Order at 20. Indeed, the fact that Plaintiffs continue to press challenges to the now-closed programs— and to insist upon a rapid remand directing USDA to "correct the[ir] payments," Pls. MSJ at 34—suggests that they view financial compensation as an appropriate remedy for their harms.

Recognizing that a remand would fully cure Plaintiffs' injuries renders most of their remaining arguments about remedy irrelevant. Plaintiffs spend pages arguing that vacatur of

14

the underlying agency action is legally permissible under the APA. *See* Pls. Reply at 18-21. But Defendants' opening brief already acknowledged that vacatur is available in the Circuit. *See* Defs' MSJ Br. at 35; *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023). The issue here isn't who has advanced a better reading of the APA's provisions. Rather, it is whether there is any justification for a vacatur when an alternative form of remedy offers Plaintiffs complete relief. *Cargill*, 57 F.4th at 472 (noting that circumstances may dictate that a "more limited remedy" than vacatur is appropriate). Plaintiffs cite no authority suggesting that vacatur is invariably *required*—and, as noted above, they fail to establish that this remedy would afford them any meaningful relief at all. Under these circumstances, a more limited remedy is appropriate. *See id.*

Likewise unavailing are Plaintiffs' newfound arguments for why a permanent injunction satisfies the traditional four-factor test. Pls. Reply at 23-24. Plaintiffs did not present those arguments previously, and a reply brief is not the proper place to raise them. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."). More to the point, however, Plaintiffs still fail to explain why an injunction against the challenged programs is appropriate when an adequate monetary remedy is at hand. *See* Pls. Reply at 23-24; *see, e.g.*, *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (irreparable harm justifying an injunction exists only "where there is no adequate remedy at law, such as monetary damages").[3]

That leaves solely the question of timing for the remand Plaintiffs are seeking. *See* Pls. Reply at 22-23. Of course, the timing of any remand must depend on the scope of what the Court orders. A remand directing the agency to merely recalculate Plaintiffs' payments would present far fewer logistical difficulties—and thus take far less time to complete—than an

---

[3] Notably, Plaintiffs appear to no longer be explicitly requesting an injunction reaching *outside* the scope of the challenged programs. *See generally* Pls. Reply at 23-24. To the extent they have not abandoned the argument, however, it should be rejected for all the grounds articulated in Defendants' opening brief. *See* Defs' MSJ at 34.

expansive remand requiring the agency to review and "formulate new funding formulas" for past programs—a laborious and likely futile endeavor given that the money from those programs has been distributed and expended, and USDA is not aware of a plausible mechanism by which it could seek to claw that money back. Plaintiffs ignore this reality, just as they largely dismiss the fact that the agency has neither failed to comply with "a statutory deadline" nor disregarded "court orders" in a way that would justify the Court retaining jurisdiction. *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 37, 41 (D.D.C. 2008) (citing caselaw). To the extent it orders a remand, the Court should not retain jurisdiction and afford USDA sufficient time to comply.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Summary Judgment and grant summary judgment in favor of the USDA.

Dated: January 9, 2025

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Deputy Branch Director

*/s/ Faith E. Lowry*
ALEXANDER V. SVERDLOV (NY Bar No. 4918793)
FAITH E. LOWRY (TX Bar No. 24099560)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-5581
Email: faith.e.lowry@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On January 9, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Faith E. Lowry*
FAITH E. LOWRY
Trial Attorney
U.S. Department of Justice
