**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| RUSTY STRICKLAND, *et al.*,<br><br> *Plaintiffs*,<br><br> v.<br><br> THE UNITED STATES DEPARTMENT<br>OF AGRICULTURE, *et al.*,<br><br> *Defendants*. | Case No. 2:24-cv-00060-Z |

**DEFENDANTS' COMBINED MOTION TO DISMISS IN PART AND RENEWED**
<u>**CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

<div style="margin-left:50%">

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Branch Director

NATALIE M. VILLALON
DC Bar No. 90015127
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 860-9963
Email: Natalie.M.Villalon@usdoj.gov

*Counsel for Defendants*

</div>

i

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

I.    USDA's Disaster-Relief Programs and the Race- and Sex-Based Classifications. 2

II.   Procedural History ........................................................................................ 6

LEGAL STANDARDS ............................................................................................. 9

ARGUMENT ............................................................................................................ 10

I.    Defendants Are Entitled to Dismissal of Plaintiffs' Moot APA Claims .............. 10

      A.    USDA Provided Plaintiffs All the Relief They Might Have Won.................... 10

      B.    Neither Exception to Mootness Applies ............................................. 13

      C.    There is No Other Redressable Injury or Relief Available.............................. 16

            1.    Retroactive Economic Relief Is Not Available............................................. 16

            2.    Sovereign Immunity Bars the Monetary Relief Plaintiffs Seek.................... 19

            3.    The Court Cannot Order Clawbacks............................................................. 23

            4.    Remand is Not Available............................................................................... 26

II.   Defendants Are Entitled to Summary Judgment on Plaintiffs' Remaining APA
Claim Concerning Progressive Factoring ............................................................. 28

      A.    Progressive Factoring is Race- and Sex-Neutral ............................................. 28

      B.    USDA's Decision to Employ Progressive Factoring is Committed to Agency
Discretion and Entitled to Deference ......................................................... 30

      C.    Progressive Factoring is Rational and Well-Supported.................................... 33

CONCLUSION........................................................................................................... 36

## TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) .................................................................... 13

*Amawi v. Paxton*, 956 F.3d 816, 819 (5th Cir. 2020) ........................................................ 11

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) .............................................................. 20, 21

*Brazos Elec. Power Coop., Inc. v. Sw. Power Admin.*, 819 F.2d 537 (5th Cir. 1987) ...... 33

*Califano v. Goldfarb*, 430 U.S. 199 (1977) ....................................................................... 19

*Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409 (5th Cir. 2014) ...................... 15

*Chamber of Com. of United States v. United States Sec. & Exch. Comm'n*, 88 F.4th 1118 (5th Cir. 2023) .................................................................................................................... 27

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................. 23

*De Lao v. Califano*, 560 F.2d 1384 (9th Cir. 1977) ........................................................... 17

*De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir. 1985) ..................... 9

*Department of Agriculture v. Moreno*, 413 U.S. 528 (1973) ............................................. 19

*FCC v. Fox TV Stations, Inc.*, 556 U.S. 502 (2009) .......................................................... 36

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) .................................................. 33

*FDIC v. Meyer*, 510 U.S. 471 (1994) ................................................................................. 19

*Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024) ...................................... 10, 14

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329 (5th Cir. 2002) .......... 10

*Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022) ........................... 10, 11

*Frontiero v. Richardson*, 411 U.S. 677 (1973) .................................................................. 19

*Hansberry v. Lee*, 311 U.S. 32 (1940) ............................................................................... 24

*Heckler v. Chaney*, 470 U.S. 821 (1985) ............................................................... 25, 31, 33

*Heckler v. Mathews*, 465 U.S. 728 (1984) ............................................................. 16, 17, 18

iii

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855 (D.C. Cir. 1984) ................................................................. 31, 32

*Jimenez v. Weinberger*, 417 U.S. 628 (1974) ....................................................... 19

*Keepseagle v. Veneman*, No. 99-03119, 2001 WL 34676944 (D.D.C. 2004) .................. 18

*Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012)................................. 11

*Le Blanc v. U.S.*, 50 F.3d 1025 (Fed. Cir. 1995)................................................... 17

*Libertarian Party v. Dardenne*, 595 F.3d 215 (5th Cir. 2010) ......................................... 15

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ............................................... 30, 31, 32, 33

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) .................................................. 26

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) ...................................................................................... 33

*LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168 (5th Cir. 1989)................................... 24

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ....................................... 30, 32

*Murphy v. Hunt*, 455 U.S. 478 (1982) ............................................................. 15

*National Black Police Ass'n v. District of Columbia*, 108 F.3d 346 (D.C. Cir. 1997)..... 13

*New Hampshire v. Maine*, 532 U.S. 742 (2001)........................................... 22, 23

*Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634 (D.C. Cir. 2020) ............................. 31

*Pigford v. Glickman*, No. 97-1978, 185 F.R.D. 82 (D.D.C. 1999).................................. 18

*Safari Club Int'l v. Jewell*, 842 F.3d 1280 (D.C. Cir. 2016).............................................. 15

*Schieber v. United States*, 77 F.4th 806 (D.C. Cir. 2023).............................................. 32

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017)............................................... 19

*SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001)...................................... 27

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009) ........................... 13, 14

*Spell v. Edwards*, 962 F.3d 175 (5th Cir. 2020) ................................................. 11, 13, 15

iv

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ....................................................................... 11

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).............................................. 23

*Strickland v. U.S. Dep't of Agric.*, 736 F. Supp. 3d 469 (N.D. Tex. 2024) ............... passim

*Suburban Mortg. Assocs., Inc. v. HUD*, 480 F.3d 1116 (Fed. Cir. 2007)......................... 21

*Taylor v. Sturgell*, 553 U.S. 880 (2008)............................................................................. 24

*Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771 (5th Cir. 2010).................................... 10

*U.S. Dep't of the Treasury v. Galioto*, 477 U.S. 556 (1986) ............................................. 11

*U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253 (5th Cir. 1991) ... 23

*United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of Camden*, 465 U.S. 208 (1984) ...................................................................................... 11

*United States v. Testan*, 424 U.S. 392 (1976)...................................................................... 17

*United States v. Wurts*, 303 U.S. 414 (1938)...................................................................... 24

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021)............................................................... 28

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016)................................................................... 29

*Willingham v. Dep't of Lab.*, 475 F. Supp. 2d 607 (N.D. Tex. 2007)................................ 10

*Woods v. United States*, 724 F.2d 1444 (9th Cir. 1984) ..................................................... 24

*Yarls v. Bunton*, 905 F.3d 905 (5th Cir. 2018).................................................................... 11

*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010)......................................... 21

**Constitutional Provisions**

U.S. Const. Art. III, § 2......................................................................................................... 11

**Statutes**

28 U.S.C. § 530D...................................................................................................................... 8

5 U.S.C. § 701.................................................................................................................... 31, 32

v

5 U.S.C. § 702 ............................................................................................. 17, 19

5 U.S.C. § 706 .................................................................................................. 26

7 U.S.C. § 7001 ................................................................................................ 24

Extending Government Funding and Delivering Emergency Assistance Act , Div. B, Tit.
   I, Pub. L. No. 117–43, 135 Stat. 344, 356 (2021) ........................................................ 2

Disaster Relief Supplemental Appropriations Act, 2023, Div. N, Pub. L. No. 117–328,
   136 Stat. 4459 (2022) ................................................................... 4, 21, 30, 34

Tucker Act, 28 U.S.C. §§ 1346, 1491 ................................................................ 18

Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 .................................. 18

Federal Tort Claims Act, 28 U.S.C. § 2674 ....................................................... 18

Payment Integrity Information Act of 2019, 31 U.S.C. § 3351(4) ..................................... 25

**Regulations**

7 C.F.R. § 718.306 ........................................................................................... 24

7 C.F.R. Part 9 .................................................................................................. 12

**Federal Register**

*Notice of Funds Availability; Emergency Livestock Relief Program (ELRP),*
   87 Fed. Reg. 19465 (Apr. 4, 2022) ........................................................... 12, 15

*Notice of Funds Availability; Emergency Relief Program (ERP),*
   87 Fed. Reg. 30164 (May 18, 2022) ........................................................... 3, 12

*Notice of Funds Availability; Emergency Livestock Relief Program (ELRP) 2022,*
   88 Fed. Reg. 66361 (Sep. 27, 2023) ............................................................... 12

*Notice of Funds Availability; Emergency Relief Program 2022 (ERP 2022),*
   88 Fed. Reg. 74404 (Oct. 31, 2023) ........................................................ passim

*Pandemic Assistance Programs and Agricultural Disaster Assistance Programs*,
   88 Fed. Reg. 1862 (Jan. 11, 2023) ........................................................................ 3, 4, 14

*Notice; Emergency Relief Program 2022 (ERP 2022)*,
   89 Fed. Reg. 68125 (Aug. 23, 2024) ........................................................................ 7, 29

*Removal of Unconstitutional Preferences Based on Race and Sex in Response to Court
   Ruling*, 90 Fed. Reg. 30555 (Jul. 10, 2025) ............................................................ passim

 *Agricultural Disaster Assistance Programs*,
   90 Fed. Reg. 44623 (Sep. 16, 2025) ........................................................................ passim

**Rules**

Fed. R. Civ. P. 12(h)(3) .............................................................................................. 9

Fed. R. Civ. P. 19 ................................................................................................. 23, 24

Fed. R. Civ. P. 15 ................................................................................................. 35

**Other Authorities**

3 Admin. L. & Prac. § 8:31 (3d ed.) .............................................................................. 22

FSA, USDA Announces August 14 Application Deadline for Emergency Relief Program
   Assistance (July 15, 2024), https://perma.cc/UE3D-XXZY ........................................... 5

Initial Rescissions of Harmful Executive Orders and Actions, WHITE HOUSE (Jan. 20,
   2025), https://perma.cc/352Z-EGRK ........................................................................ 7

Congressional Research Service, "Recouping Federal Grant Awards: How and Why
   Grant Funds Are Clawed Back," https://crsreports.congress.gov/product/pdf/R/R48243
   (Oct. 21, 2024) ...................................................................................................... 25

**INTRODUCTION**

This case is primarily about a challenge to certain aspects of government benefit programs that the government has formally rescinded and publicly disavowed as unconstitutional.  This challenge is now moot.

As filed, this lawsuit challenged United States Department of Agriculture (USDA) disaster-relief programs administered pursuant to statutory and regulatory provisions, and Notices of Funding Opportunity (NOFAs), adopted during the prior administration.  After President Trump was sworn into office in early 2025, USDA reconsidered the eight discretionary aid programs challenged in this lawsuit and rescinded the "socially disadvantaged" designation that allotted enhanced benefits to farmers based solely on their race or sex.  First, in a Final Rule published on July 10, 2025, USDA amended its regulations to eliminate the race- and sex-based classifications from a variety of discretionary programs, including three of the eight programs challenged in this case.  *See Removal of Unconstitutional Preferences Based on Race and Sex in Response to Court Ruling*, 90 Fed. Reg. 30555 (Jul. 10, 2025).  Second, in a formal Notice published on September 16, 2025, USDA announced the amendment of its NOFAs to eliminate the same race- and sex-based classifications for the five remaining programs challenged in this case.  *See Agricultural Disaster Assistance Programs*, 90 Fed. Reg. 44623 (Sep. 16, 2025).

In light of those concrete regulatory actions, and given USDA's formal and far-reaching commitment to administering the programs in a race- and sex-neutral manner moving forward, Defendants are entitled to dismissal of Plaintiffs' Administrative Procedure Act (APA) claims based on the socially disadvantaged classification because those claims are now moot.  Defendants are further entitled to summary judgment in their

1

favor on Plaintiffs' APA claims concerning the race- and sex-neutral "progressive factoring" payment-proration method in the Emergency Relief Program 2022 (ERP 2022) because USDA's adoption of that methodology was discretionary and therefore not subject to review, and regardless, Plaintiffs fail to identify any legal defect in the use of progressive factoring. The Court should grant Defendants' motion and deny Plaintiffs' request for a second remand or any other relief.

## BACKGROUND

### I.    USDA's Disaster-Relief Programs and the Race- and Sex-Based Classifications

Over the past several years, Congress has regularly appropriated funds to support farmers facing crop loss and other hardships caused by natural disasters and the COVID-19 pandemic. Doc. 21-1 (Ducheneaux Decl.) ¶ 3 and Part II (overview of the eight challenged programs). These programs provide vital relief that sustains vulnerable farm operations, supplementing federal crop insurance. *Id*. ¶ 120. To this end, USDA often advises Congress what level of funding is needed to adequately cover estimated losses, and Congress largely leaves to USDA's discretion how to structure these *ad hoc* relief programs and distribute the funds. *See id*. ¶¶ 15, 45. When appropriated funds are insufficient to cover estimated losses, USDA must determine how to distribute available funds to accomplish Congressional objectives. *See id.* ¶ 50.

For example, in 2021, Congress passed the Extending Government Funding and Delivering Emergency Assistance Act, which provided $10 billion to cover crop losses due to natural disasters in 2021 and 2022 "under such terms and conditions as determined by the Secretary," to "remain available until December 31, 2023." Div. B, Tit. I, Pub. L. No. 117–43, 135 Stat. 344, 356 (2021). USDA used these funds to establish the

2

Emergency Relief Program 2020 and 2021 (ERP 2020/2021). *See Notice of Funds Availability; Emergency Relief Program (ERP)*, 87 Fed. Reg. 30164 (May 18, 2022). ERP 2020/2021 Phase 1 relief payments were tied to a farmer's existing crop insurance and Noninsured Crop Disaster Assistance Program (NAP) coverage, applying a flat factor designed to ensure that payments would not exceed available funding and, in aggregate across all farmers, would not exceed 90 percent of losses for insured crops, as required by the Extending Government Funding and Delivering Emergency Assistance Act. *See*, *e.g.*, 87 Fed. Reg. at 30168; *see also Pandemic Assistance Programs and Agricultural Disaster Assistance Programs*, 88 Fed. Reg. 1862 (Jan. 11, 2023) (implementing ERP 2020/2021 Phase 2). Under the NOFA for ERP Phase 1 and Final Rule for ERP Phase 2, "historically underserved" farmers and ranchers—including veterans, beginning farmers, limited resource farmers, and "socially disadvantaged" (*i.e.*, minority and women)[1] farmers—received a 15 percent increase to their calculated ERP payments. *See* 87 Fed. Reg. at 30166; 88 Fed. Reg. at 1865.

Plaintiffs Alan & Amy West Farms, Bryan Baker, Double B Farms LLC, and Rusty Strickland each participated in ERP 2020/2021, and received sizeable payments. *See*, *e.g.*, Doc. 21-1 ¶¶ 70-73. ERP 2020/2021 is now closed, and funding has expired. *Id*. ¶ 77. Only obligations for payment calculation errors, omissions, and appeals can be created. *Id*.

---

[1] *See, e.g.*, 88 Fed. Reg. at 1886 ("Socially disadvantaged farmer or rancher means a farmer or rancher who is a member of a group whose members have been subjected to racial, ethnic, or gender prejudice because of their identity as members of a group without regard to their individual qualities. For entities, at least 50 percent of the ownership interest must be held by individuals who are members of such a group. Socially disadvantaged groups include the following and no others unless approved in writing by the Deputy Administrator: (1) American Indians or Alaskan Natives; (2) Asians or Asian-Americans; (3) Blacks or African Americans; (4) Hispanics or Hispanic Americans; (5) Native Hawaiians or other Pacific Islanders; and (6) Women.").

In 2022, Congress similarly passed the Disaster Relief Supplemental Appropriations Act, 2023, and appropriated approximately $3.2 billion "to remain available until expended," to cover crop losses due to natural disasters occurring in 2022, under such terms and conditions "as determined by the Secretary." Div. N, Pub. L. No. 117-328, 136 Stat. 4439, 5201 (2022). Based upon this authority, USDA's Farm Service Agency (FSA) designed ERP 2022 using the same model it had used for 2020 and 2021 emergency disaster assistance, incorporating similar methods of calculating payments, and separating the disbursement of assistance into two tracks, Track 1 and Track 2. *See* Doc. 21-1 ¶¶ 47–49; *Notice of Funds Availability; Emergency Relief Program 2022 (ERP 2022)*, 88 Fed. Reg. 74404 (Oct. 31, 2023); AR 872.

Unlike in 2020 and 2021, however, Congress's appropriated funds for ERP 2022 fell significantly short of the expected losses. *See* Doc. 21-1 ¶ 50; AR 870 (ERP 2022 "[f]unding to address impacts to crops is approximately $3.2 billion. Losses not covered by crop insurance or NAP are estimated at $10 billion."). To help address this shortfall in available funding, USDA introduced in ERP 2022 a payment proration method called "progressive factoring," which covered 100 percent of initial losses while providing gradually diminishing coverage for higher amounts of loss. AR 869–86; Doc. 21-1 ¶¶ 51–59 (explaining how the method applies). Under this calculation method, more than 80 percent of farmers received a greater payment than they would have under a 27 percent flat rate percentage system. AR 881; Doc. 21-1 ¶ 112 ("If a flat factor had been applied, the factor would have been 27% based on Agency estimates"). Progressive factoring sought to "ensure[ ] the limited available funding is distributed in a manner benefitting the majority of producers rather than a few." *See* 88 Fed. Reg. at 74410, n.14.

For Track 1 and Track 2 payments under ERP 2022, underserved farmers and ranchers were defined as a beginning farmer or rancher, limited resource farmer or rancher, socially disadvantaged farmer or rancher, or veteran farmer or rancher. *See* 88 Fed. Reg. at 74408. For Track 1, payments subject to progressive factoring applied equally for all farmers and ranchers, including those defined as underserved. USDA refunded the underserved farmers' and ranchers' federal crop insurance premiums and fees. *See* 88 Fed. Reg. at 74411, n.18. All Track 1 payments, including those for underserved farmers and ranchers, were multiplied by an additional flat 75 percent factor to ensure payments did not exceed available funding. *See* 88 Fed. Reg. at 74414, n.28. For Track 2 payments, USDA applied progressive factoring to all payments, including those for underserved farmers and ranchers. After applying progressive factoring, underserved farmers also "receive[d] an increase to their Track 2 payment that is equal to 15 percent of the gross Track 2 payment after progressive factoring not to exceed the calculated Track 2 payment before progressive factoring." 88 Fed. Reg. at 74414 n.15.

ERP 2022 Track 1 and Track 2 closed for applications on August 14, 2024. *See* FSA, USDA Announces August 14 Application Deadline for Emergency Relief Program Assistance (July 15, 2024), https://perma.cc/UE3D-XXZY. Plaintiffs Bryan Baker, Double B Farms, and Alan & Amy West Farms received funds under both Tracks. *See* Doc. 21-1 ¶¶ 70-73. Plaintiff Rusty Strickland applied for and received funds under Track 1 but had not applied for Track 2 as of the time this lawsuit was filed. *See id.* ¶ 73.

Pursuant to the formal Notice published by USDA on September 16, 2025, the definition for underserved farmer or rancher in ERP 2022 no longer includes the race- and sex-based classifications. *See* 90 Fed. Reg. at 44624–25.

## II.    Procedural History

Plaintiffs filed this action on March 29, 2024.  Doc. 1 (Complaint).  Plaintiffs are four Texas farming operations or individuals who participated in one or more USDA disaster-relief programs.  They challenge eight such *ad hoc* disaster-relief programs, each of which specifically directed some portion of the appropriated funds to "historically underserved" farmers, including "socially disadvantaged" farmers.  *See id.* ¶¶ 1–3, 14, 21, 34, 64; *see also* Doc. 21-1 ¶¶ 14, 21, 34, 64.  The funding sources for all but one of these challenged programs—ERP 2022—have expired.  *See* Doc. 21-1 ¶¶ 77-79, 94.

The Complaint asserts claims under the APA, alleging that USDA's use of race- and sex-based classifications in administering the challenged programs violates the Fifth Amendment and is contrary to law.  *See* Doc. 1 ¶¶ 145–188.  Plaintiffs also allege that USDA's use of a "progressive factoring" methodology in ERP 2022 is arbitrary and capricious.  *See id.* ¶¶ 189–201.  Plaintiffs seek declaratory and injunctive relief holding unlawful and setting aside the challenged race- and sex-based classifications.  *See id.* at 46–47.  In the alternative, Plaintiffs request that the Court remand the challenged programs to USDA "to remedy the Fifth Amendment violations."  *Id.*  The Complaint does not request retroactive relief.  *See id.*

On June 7, 2024, this Court granted Plaintiffs' motion for a preliminary injunction with respect to ERP 2022, finding Plaintiffs likely to succeed on the merits of their equal protection and APA claims.  *See Strickland v. U.S. Dep't of Agric.*, 736 F. Supp. 3d 469, 475 (N.D. Tex. 2024) ("Plaintiffs complain of eight [USDA] Programs, but only [ERP 2022] is active.").  The Court held that progressive factoring as a determination alone is race-neutral, but that ERP 2022's application of progressive factoring, combined with exemptions and additional benefits for socially disadvantaged producers, constituted

6

discrimination on the basis of race and sex that USDA could not justify under strict and intermediate scrutiny. *Id.* at 480–84. The injunction barred USDA from making or increasing payments under ERP 2022 based on the "socially disadvantaged farmer or rancher" category. *Id.* at 487. The injunction did not prohibit USDA from applying progressive factoring, so long as it was conducted without reference to race or sex classifications. *Id.* USDA acted immediately to comply with the injunction. *See Notice; Emergency Relief Program 2022 (ERP 2022)*, 89 Fed. Reg. 68125 (Aug. 23, 2024).

From August 2024 to January 2025, the parties briefed cross-motions for summary judgment, where Defendants defended the merits of the race- and sex-based socially disadvantaged designation in the eight challenged programs and the use of progressive factoring in ERP 2022. *See* Docs. 32, 38, 43, 44, 48.

On January 20, 2025, President Donald J. Trump took office and revoked Executive Order 13985 of January 20, 2021 (Advancing Racial Equity and Support for Underserved Communities Through the Federal Government), and Executive Order 14091 of February 16, 2023 (Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government). *See* Initial Rescissions of Harmful Executive Orders and Actions, WHITE HOUSE (Jan. 20, 2025), https://perma.cc/352Z-EGRK. Shortly thereafter, the Court ordered the parties to brief the impact of those Executive Orders on the instant litigation. Doc. 49.

Defendants then notified the Court that the Department of Justice "independently determined that the USDA programs challenged in this case are incompatible with the Constitution to the extent they discriminate based on race and sex," that it "will no longer defend the merits of the USDA programs at issue in this case to the extent they provide

increased benefits based on race and sex," and that it therefore "withdraws the portions of its prior brief to the extent they defended the race- and sex-based preferences at issue in this case." Doc. 52 at 3–4. Defendants maintained that "USDA's decision to use the race- and sex-neutral 'progressive factoring' in [ERP 2022] is otherwise permissible." *Id.* at 4. Pursuant to 28 U.S.C. § 530D, the Department of Justice also notified Congress that it was withdrawing the government's defense of the race- and sex-based preferences in this case. *See* Letter from Sarah M. Harris to the Honorable Mike Johnson, Re: Race- and Sex-Based Preferences in USDA Emergency Relief Programs (March 10, 2025), https://www.justice.gov/oip/media/1393166/dl?inline ("530D Letter").

The Court stayed the case until the parties agreed to a voluntary remand for USDA to reconsider the challenged programs. *See* Docs. 53, 59, 61, 63, 65, 66. The parties agreed that the Court may retain jurisdiction over the case in the interest of efficient resolution. Doc. 65 at 2–3; *see also* Doc. 63 at 1 ("Retaining jurisdiction would allow Plaintiffs the opportunity to 'raise [a] challenge to the Court' should they believe that USDA's implementation of progressive factoring still violates the APA following remand.").

On remand, USDA revised the challenged programs through formal, nationwide rulemaking and notice-based action. First, in a Final Rule published in the Federal Register on July 10, 2025, USDA amended its regulations for the Coronavirus Food Assistance Program 2 (CFAP 2), Pandemic Assistance Revenue Program (PARP), and ERP Phase 2, as well as several other discretionary USDA programs that Plaintiffs did not challenge in this case, to eliminate the race- and sex-based "socially disadvantaged" designation when determining benefits under those programs. *See Removal of*

*Unconstitutional Preferences Based on Race and Sex in Response to Court Ruling*, 90

Fed. Reg. 30555 (Jul. 10, 2025) ("July 2025 Final Rule").  Second, in a formal Notice

published in the Federal Register on September 16, 2025, USDA announced similar

changes to the provisions of ERP Phase 1, the Emergency Livestock Relief Program

(ELRP) Phases 1 and 2, ERP 2022 Track 1 and Track 2, and ELRP 2022, which had each

been announced and administered through a NOFA rather than a rule and regulation.  *See*

*Agricultural Disaster Assistance Programs*, 90 Fed. Reg. 44623 (Sep. 16, 2025)

("September 2025 Notice").  Regarding those programs, the September 2025 Notice

announced that "any remaining payments that are issued will not use the 'socially

disadvantaged farmer or rancher' designation to provide increased benefits."  *Id.* at

44624.

On September 30, 2025, Defendants timely notified the Court that USDA had

completed the remand, *see* Doc. 69, and the parties conferred regarding next steps, *see*

Docs. 73, 77, 79.  Due to their disagreements over mootness and progressive factoring,

the parties ultimately requested that the Court reopen the case to allow renewed cross-

motions for summary judgment, Doc. 79, and the Court issued a second amended

scheduling order to that effect, Doc. 82.  This motion follows.

## LEGAL STANDARDS

"If the court determines at any time that it lacks subject-matter jurisdiction,"

including at the summary judgment stage, "the court must dismiss the action."  Fed. R.

Civ. P. 12(h)(3); *see, e.g.*, *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385,

1386 (5th Cir. 1985) (affirming the district court's dismissal for lack of subject-matter

jurisdiction at the summary judgment stage).  "The party invoking federal jurisdiction"—

plaintiffs—bears the burden of proof in establishing subject-matter jurisdiction. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002).

"[R]eviewing an administrative decision on summary judgment calls for a modified standard: whether the agency acted appropriately given the standards of review set forth by the Administrative Procedure Act or the statute authorizing the agency's action." *Willingham v. Dep't of Lab.*, 475 F. Supp. 2d 607, 611 (N.D. Tex. 2007) (Robinson, J.). The APA allows a federal court to overturn an agency's decision "only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole." *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (citation omitted). Overall, the Court's review is "highly deferential to the administrative agency whose final decision is being reviewed." *Id.*

## ARGUMENT

### I.    Defendants Are Entitled to Dismissal of Plaintiffs' Moot APA Claims

#### A.    USDA Provided Plaintiffs All the Relief They Might Have Won

Through its publication of the July 2025 Final Rule and September 2025 Notice rescinding the race- and sex-based "socially disadvantaged" classifications from the challenged programs, USDA provided Plaintiffs all the relief from those classifications that they might have won in this litigation. *See* 90 Fed. Reg. at 30555–59; 90 Fed. Reg at 44623–25. Their APA challenge is thus moot. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024). The Court is "unable to provide relief beyond what the [agency] already gave." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374, 375 (5th Cir. 2022). Therefore, Defendants are entitled to dismissal of Plaintiffs' APA claims against the now-rescinded classifications.

10

Article III of the Constitution extends federal courts' "judicial power" "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016) (citing U.S. Const. Art. III, § 2). A controversy that becomes moot deprives the court of subject-matter jurisdiction. *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018). "A matter is moot 'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

It is well settled that when the government formally repeals or rescinds an allegedly unconstitutional policy, a legal challenge to that policy generally becomes moot. *See Franciscan All.*, 47 F.4th at 374; *Spell*, 962 F.3d at 179 ("[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed."); *Amawi v. Paxton*, 956 F.3d 816, 819, 821 (5th Cir. 2020) (by amending the challenged statute, the defendants "provided the plaintiffs the very relief their lawsuit sought," so "even assuming [the prior statute was] unconstitutional, the defendants can do nothing more to ameliorate [the] claimed injury"). This applies to equal protection claims just as it does to other constitutional claims. *See, e.g.*, *U.S. Dep't of the Treasury v. Galioto*, 477 U.S. 556, 559–60 (1986) (plaintiff's "equal protection" claim became moot upon Congress's amendment of challenged statute); *United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of Camden*, 465 U.S. 208, 213 (1984) (deletion of an ordinance's one-year residency requirement "moot[ed] appellant's equal protection challenge" to that durational requirement).

Plaintiffs challenged the constitutionality of the "socially disadvantaged" classifications in eight USDA programs. *See* Doc. 1 ¶ 65. The challenged provisions for three of those USDA programs were set within regulations. *See* 88 Fed. Reg. at 1862–66 (ERP 2021 Phase 2); *id.* at 1866–69 (PARP); *id.* at 1869–70 (CFAP 2); *see also* 7 C.F.R. Part 9. USDA repealed and replaced the challenged provisions of those regulations by issuing the July 2025 Final Rule. *See* 90 Fed. Reg. at 30556–59. The challenged provisions for the five other USDA programs were set within NOFAs published in the Federal Register. *See* 87 Fed. Reg. 30164 (ERP 2021 Phase 1); 87 Fed. Reg. 19465 (ELRP 2021 Phase 1); 88 Fed. Reg. 66366 (ELRP 2021 Phase 2); 88 Fed. Reg. 66361 (ELRP 2022); 88 Fed. Reg. 74404 (ERP 2022). USDA repealed and replaced the challenged portions of those NOFAs by issuing the September 2025 Notice. *See* 90 Fed. Reg. at 44623–25.

Plaintiffs filed this case to seek relief from stigmatic harm arising from USDA's allocation of unequal benefits based on race and sex. *See* Doc. 1 ¶ 37 & pp. 46–47 (seeking declaratory, injunctive, and equitable relief); *Strickland*, 736 F. Supp. 3d at 485 ("[H]ere, . . . the *only* predicate for relief is stigmatic harm") (emphasis in original). They indicated that "[t]he way to cure Plaintiffs' injuries is to rework the challenged programs to be lawful." Doc. 61 at 2. They have now obtained precisely that relief: USDA eliminated the classifications that Plaintiffs asked the Court to hold unlawful and set aside. *See supra* pp. 8–9, 11–12. In doing so, USDA affirmed that "[f]uture programmatic relief will be administered without regard to race or sex," 90 Fed. Reg. at 30557, and that "any remaining payments that are issued" under the relevant programs

"will not use the 'socially disadvantaged farmer or rancher' designation to provide increased benefits," 90 Fed. Reg. at 46624.

Accordingly, at this stage, "there is nothing injuring the plaintiff[s] and, consequently, nothing for the court to do." *Spell*, 962 F.3d at 179. There is no longer a live controversy following USDA's rescission of the socially disadvantaged classifications. As discussed further below, there is no applicable exception to mootness, *see* Part I.B, and no other redressable injury or relief available, *see* Part I.C. Therefore, the claims must be dismissed.

## B.      Neither Exception to Mootness Applies

No exception to mootness preserves jurisdiction here. Neither the voluntary-cessation nor the capable-of-repetition exception to mootness applies to USDA's rescission of the challenged classifications.

The voluntary-cessation exception applies when a defendant ceases challenged conduct in an effort to "automatically moot a case" and evade judicial review. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A defendant's voluntary conduct moots a case only if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) (citation omitted). When the government moots a case through formal policy change, courts presume—absent evidence to the contrary—that the change is "not mere litigation posturing." *Id.* at 325; *see National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) ("[T]he mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists.").

13

Plaintiffs invoke *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024), for the proposition that "[c]ourts do not hold the government to a special, more deferential mootness standard." Doc. 77 at 2. But *Fikre* is not on point. It did not involve the rescission of a challenged policy through formal rulemaking or notice-based action. Rather, the plaintiff challenged his placement on a "no fly" list, and the government argued mootness based on his removal from that list. *See* 601 U.S. at 240. But there, the government had not taken formal action that would preclude the plaintiff from being placed back on the list. *See id.* at 242. Nothing in *Fikre* displaced the settled rule that the government's formal rescission of a challenged policy gives rise to a presumption against recurrence. *See id.* at 240–245; *cf. Sossamon*, 560 F.3d at 325.

The record confirms that USDA rescinded the challenged classifications through broad, binding action and not to evade judicial review. *See, e.g.*, 90 Fed. Reg. at 30555–59; 90 Fed. Reg. at 44623–25; 530D Letter. USDA eliminated the race- and sex-based classifications not only from the eight programs challenged here, but also from additional discretionary programs not at issue in this litigation. *See* 90 Fed. Reg. at 30555–61. It did that on the basis that the classifications were unconstitutional, a statement that the Acting Solicitor General communicated to the Speaker of the House as required by statute. *See* 530D Letter. Those changes, as described above, apply nationwide and prospectively, extending well beyond Plaintiffs themselves. Such comprehensive and formal action is "not mere litigation posturing" and falls well outside the voluntary-cessation exception. *Sossamon*, 560 F.3d at 325.

The capable-of-repetition-yet-evading-review exception likewise does not apply. That narrow exception requires a showing that "(1) the challenged action was in its

14

duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014) (citation omitted). Plaintiffs satisfy neither requirement. The challenged classifications were in place for years. USDA had published eligibility criteria for ERP 2020/2021 Phase 1 in April 2022, 87 Fed. Reg. at 19467, and Plaintiffs received payments that same year, *see* Doc. 21-1 ¶¶ 70–73. Plaintiffs continued participating in subsequent programs over the next 20 months before filing this suit in March 2024. *See id.*; Doc. 1. The duration of the challenged conduct was more than sufficient to permit judicial review. *Cf. Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1288 (D.C. Cir. 2016) (this "narrow exception is for quick-burning disputes").

Nor is there any reasonable expectation that Plaintiffs will again be subjected to the rescinded classifications. USDA has eliminated them through the July 2025 Final Rule and September 2025 Notice, and Plaintiffs offer no evidence that the same classifications will be reinstated and applied to deny them equal benefits based on race and sex again. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ("[A] mere physical or theoretical possibility" is not sufficient to satisfy this prong of the exception); *Spell*, 962 F.3d at 180 (speculation about future executive action is insufficient); *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (evidence that there would be an "opportunity" for the unlawful action to occur again is insufficient). Because neither prong of the exception is met, the capable-of-repetition doctrine does not preserve jurisdiction here.

Because no exception to mootness applies, and because the challenged classifications have been withdrawn with no ongoing effect on Plaintiffs, the Court must dismiss Plaintiffs' APA claims concerning the "socially disadvantaged" designations for lack of subject matter jurisdiction.

### C.    There is No Other Redressable Injury or Relief Available

Plaintiffs have already received the full scope of relief that they requested—and that the Court could have awarded—for their challenge to the race- and sex-based "socially disadvantaged" classifications.  They now contend that the case nevertheless remains live because they are entitled to retrospective relief to remedy past payment disparities that occurred while those classifications were in effect.  They are not.

Plaintiffs identify no form of retrospective relief that this Court may lawfully order.  They suggest that past disparities might be remedied by "giving Plaintiffs more money (leveling up)," "taking away funds from the favored races and women (leveling down) by clawing back funds," "some combination of those two options," or some other "novel solution."  Doc. 77 at 3 (citing *Heckler v. Mathews*, 465 U.S. 728, 739 (1984)).  None of those remedies are judicially available.  As explained below, equal protection doctrine does not entitle Plaintiffs to retroactive economic relief absent statutory authorization; sovereign immunity independently bars the monetary relief Plaintiffs seek; and the Court lacks authority to order clawbacks from non-parties.  Because no redressable injury remains, Article III requires dismissal.

### 1.    Retroactive Economic Relief Is Not Available

Plaintiffs argue that this case is not moot because they "remain injured following this first remand."  Doc. 77 at 4.  But Article III requires *redressable* injury.  Plaintiffs cannot satisfy that requirement.

16

The Constitution does not provide a remedy for every injury that may result from government action, even where discrimination is alleged. *See Heckler*, 485 U.S. at 739. Without statutory authorization, the claim of an injury is not sufficient to establish jurisdiction and a right to substantive economic payment. *See id.* ("[T]he right to equal treatment guaranteed by the Constitution is not co-extensive with any substantive rights to the benefits denied the party discriminated against."). Plaintiffs' contention that the government could otherwise "discriminate until caught, then write an apology," Doc. 77 at 5, misunderstands this settled principle. The Constitution does not implicitly create a right to *monetary compensation* from the government for past discrimination. *See Le Blanc v. U.S.*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[T]he Equal Protection Clause of the Fourteenth Amendment . . . do[es] not mandate payment of money by the government."). And it is that compensation that Plaintiffs apparently seek here, though they do not seek such relief in their operative complaint. *See* Doc. 1 ¶ 37 & pp. 46–47.

The APA likewise does not authorize compensatory relief. Without a separate statute providing "substantive rights to the benefits denied the party discriminated against," only prospective and equitable relief is available. *Heckler*, 465 U.S. at 739; *see United States v. Testan*, 424 U.S. 392, 403 (1976) (holding that sovereign immunity precluded retroactive monetary relief); *see also De Lao v. Califano*, 560 F.2d 1384, 1389–91 (9th Cir. 1977) ("[F]or the plaintiffs to be entitled to recover retroactive benefits, there must be a statute which . . . creates a 'substantive right enforceable against the United States for money damages.'") (quoting *Testan*, 424 U.S. at 398). Indeed, the APA specifically disclaims actions seeking monetary relief. *See* 5 U.S.C. § 702 (waiving sovereign immunity only for actions "seeking relief other than money damages").

17

To be sure, Congress has created specific statutory avenues for seeking compensation from the federal government, including, for example, the Tucker Act, 28 U.S.C. §§ 1346, 1491, the Federal Tort Claims Act, 28 U.S.C. § 2674, and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691e(b), among others.  ECOA, for example, has served as the vehicle for several prior successful claims seeking compensation for alleged discrimination by USDA.  *See, e.g.*, *Pigford v. Glickman*, No. 97-1978, 185 F.R.D. 82 (D.D.C. 1999); *Keepseagle v. Veneman*, No. 99-03119, 2001 WL 34676944 (D.D.C. 2004).  But ECOA does not apply here.  *See Garcia v. Veneman*, No. CIV.A.00-2445(JR), 2002 WL 33004124, at *1 (D.D.C. Mar. 20, 2002) ("A disaster benefit decision is not a 'credit transaction' within the meaning of ECOA.") (quoting 15 U.S.C. § 1691(a)).

The notion that Plaintiffs may not recover a monetary benefit from their lawsuit is not unusual in equal protection jurisprudence.  That does not mean that the government can simply "[not] act to correct the prior discrimination," as Plaintiffs argue.  Doc. 77 at 5.  The Supreme Court has repeatedly held that the government may remedy unconstitutional discrimination in two ways—by either withdrawing benefits from the favored class, or extending benefits from the favored class to the broader class— regardless whether that choice affords the plaintiff who prevailed in the suit *any* material benefit.  *See, e.g.*, *Heckler*, 465 U.S. at 739 ("We have frequently entertained attacks on discriminatory statutes or practices even when the government could deprive a successful plaintiff of any monetary relief by withdrawing the statute's benefits from both the favored and the excluded class.").  Here, the government took the first option—it

18

withdrew the challenged beneficiary criteria.  *See* 90 Fed. Reg. at 30555–59; 90 Fed. Reg. at 44623–25.

Regardless, the Supreme Court's jurisprudence makes it clear that these remedies apply prospectively—there is no judicial authorization for retrospective relief to remedy equal protection violations.  The Court's decisions in a series of cases involving federal financial assistance benefits underscores this principle.  In each, the Court struck discriminatory exceptions from the overall benefits scheme.  *See Sessions v. Morales-Santana*, 582 U.S. 47, 72 (2017) (a shorter physical-presence requirement for unwed U.S.-citizen mothers giving birth abroad); *Califano v. Goldfarb*, 430 U.S. 199, 202–204, 213–217 (1977) (plurality opinion) (survivors' benefits); *Jimenez v. Weinberger*, 417 U.S. 628, 630–631, and n.2 (1974) (disability benefits); *Department of Agriculture v. Moreno*, 413 U.S. 528, 529–530 (1973) (food stamps); *Frontiero v. Richardson*, 411 U.S. 677, 678–679, and n.2, 691, and n.25 (1973) (plurality opinion) (military spousal benefits).  The Court did not award retroactive relief to any plaintiffs in any of these cases, however.  *See, e.g.*, *Sessions*, 582 U.S. at 74 (specifying that the general rule will apply "prospectively" to the previously favored group).

Because Plaintiffs lack any entitlement to retroactive economic relief, they cannot rely on such relief to establish redressability or defeat mootness.

### 2.    Sovereign Immunity Bars the Monetary Relief Plaintiffs Seek

Plaintiffs' arguments against dismissal also fail for the independent reason that sovereign immunity bars the monetary relief they seek.  "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  The APA waives sovereign immunity only for suits seeking relief "other than money damage." 5 U.S.C. § 702.  It does not authorize compensatory awards to remedy past injury.

19

*Bowen v. Massachusetts*, 487 U.S. 879 (1988), illustrates the unavailability of relief here. *Bowen* involved a dispute between Massachusetts and the federal government over a Medicaid reimbursement that the Department of Health and Human Services (HHS) had disallowed, which Massachusetts argued was in violation of the Medicaid statute and HHS regulations. *Id.* at 883, 887. The federal government argued before the Supreme Court that, because vacating HHS's denial would lead to funds being paid to Massachusetts, Massachusetts was seeking money damages and therefore had to go to the Court of Federal Claims. *Id.* at 891. The Supreme Court disagreed for two independent reasons. *Id.* at 909. The Court first held that an order setting aside a disallowance decision is not an order for a "money judgment." *Id.* To the extent that a court's vacatur order would lead the government to pay withheld funds, the Court held that the payment of funds "is a mere by-product of that court's primary function of reviewing [HHS's] interpretation of federal law." *Id.* at 910. Next, the Court held that even if the district court had ordered payment of money, "such payments are not 'money damages' . . . since the orders are for specific relief." *Id.* As the Court had earlier explained, a plaintiff seeks specific relief, and the APA waives sovereign immunity, where the plaintiff seeks reimbursement of "funds to which a statute allegedly entitles it." *Id.* at 901. On the other hand, where the plaintiff seeks "money in compensation for the losses, whatever they may be," caused by agency action, the APA does not waive sovereign immunity. *Id.* at 893. Money damages are "given to the plaintiff to substitute for a suffered loss," and "specific remedies," such as specific performance, "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." *Id.* at 895.

20

Here, unlike in *Bowen*, Plaintiffs seek "monetary compensation for an injury." *Id.* at 901; *see* Doc. 77 at 3 ("Plaintiffs' injuries are remediated by . . . giving Plaintiffs more money . . ."); *id.* at 5 ("USDA can also just give injured farmers more money."). Plaintiffs do not seek funds to which any statute entitles them.  Congress has not mandated disaster-relief payments to particular producers, and the relevant programs vest broad discretion in the Secretary.  *See* 136 Stat. at 5201; Doc. 21-1 ¶¶ 95–97.  Plaintiffs also cannot characterize the monetary compensation they seek as a "mere byproduct" of setting aside agency action.  *Bowen*, 487 U.S. at 910.  If Plaintiffs were to ask for their own benefit determinations to be set aside and then seek a recalculation of benefits, they would receive the same amount under both the past and present program rules.  *Cf. id.* Plaintiffs therefore seek quintessential money damages—relief that falls outside the APA's waiver of sovereign immunity.  *See id.* at 901; *Suburban Mortg. Assocs., Inc. v. HUD*, 480 F.3d 1116, 1125 (Fed. Cir. 2007).

Finally, the Court has already adjudicated whether economic relief is available in this case and correctly held that it is not.  *See Strickland*, 736 F. Supp. 3d at 485. Contrary to Plaintiffs' arguments now, *see* Doc. 77 at 6, the Court's ruling on Plaintiffs' motion for preliminary injunction precisely identified the nature of Plaintiffs' injuries and decided whether economic relief might be available to resolve them at the conclusion of this case, *see Strickland*, 736 F. Supp. 3d at 485.  The Court explained that economic relief would not help Plaintiffs because their "*only* predicate for relief is stigmatic harm." *Id.* at 485 (emphasis in original).  That finding was correct and should not be revisited. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (The law of the case doctrine is "designed to prevent unnecessary reconsideration of previously decided

issues."); *see also* 3 Admin. L. & Prac. § 8:31 (3d ed.) ("The 'law of the case' doctrine applies on remand and the agency is bound by findings and conclusions from the reviewing court if properly within judicial authority.").

Moreover, Plaintiffs should be precluded from arguing otherwise, considering that the Court relied on their pleadings and preliminary injunction briefing—which did not request economic relief—when granting Plaintiffs' request for a preliminary injunction. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[C]ourts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'"); Doc. 22 (Plaintiffs' Reply) at 11 ("Plaintiffs got paid the correct amount; it was just via an unconstitutional formula.  USDA does not explain how it could adjust amounts correctly awarded under a formula enacted through regulations with the force and effect of law. Nor, for that matter, do Plaintiffs seek such a remedy.") (citing Doc. 1, at 46–47 (requesting relief)); *Strickland*, 736 F. Supp. 3d at 485 ("Economic relief will not help Plaintiffs here. First, Plaintiffs don't even seek economic relief.").  Plaintiffs still expressly disclaimed any aim for economic recovery immediately prior to remand.  *See* Doc. 61 at 3 ("As this Court correctly noted, Plaintiffs did not seek damages, they sought remand.") (citing Doc. 26 at 20; *Strickland*, 736 F. Supp. 3d at 485).  Although Defendants' position regarding the availability of monetary relief has since changed, that change—unlike Plaintiffs'—"introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity," considering that the Court never adopted

22

Defendants' earlier, incorrect position. *New Hampshire*, 532 U.S. at 750 (quoting *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 259 (5th Cir. 1991)).

In sum, Plaintiffs do not have any other predicate for relief aside from stigmatic harm—harm that was cured by USDA's rescission of the unlawful classifications—because there is no statutory basis for monetary relief, and damages are otherwise barred by sovereign immunity. The Court cannot order the retroactive monetary relief that Plaintiffs now seek, and thus there is no basis to maintain jurisdiction.

### 3.    The Court Cannot Order Clawbacks

Plaintiffs alternatively suggest that their injuries might be remedied if USDA were ordered to claw back payments previously made to socially disadvantaged producers. Doc. 77 at 3–5. That relief is unavailable.

As a threshold matter, Plaintiffs lack standing to seek clawbacks. Any funds recovered would return to USDA, not to Plaintiffs, and Plaintiffs identify no concrete benefit that would flow to them personally as a result of the clawbacks. *See id.* For example, Plaintiffs do not allege that they have faced increased competition from socially disadvantaged farmers who have recouped a higher percentage of their losses after a disaster. Plaintiffs only suggest that the act of clawing back money from socially disadvantaged farmers would vindicate the rule of law and restore a sense of fairness. *See* Doc. 77 at 5. That "psychic satisfaction" is not a cognizable Article III remedy. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("The emotional consequences of a prior act simply are not a sufficient basis" for equitable relief).

Plaintiffs have also failed to join in this lawsuit the farmers whose property interests would necessarily be affected by the requested clawbacks. *See* Fed. R. Civ. P.

23

19.  Pursuant to statutory and regulatory authority, USDA's disaster-relief payments are considered final and can be retained by the recipient after 90 days, with only certain exceptions not relevant here.  *See* 7 U.S.C. § 7001(a); 7 C.F.R. § 718.306.  The 90-day finality time bar passed during the previous Administration.  In practice, it is likely that most producers have already spent such payments, and there thus remain no funds to "claw back."  If the Court were to consider ordering clawbacks in any event, it could not do so without mandatory joinder, or it would otherwise raise serious due process concerns, considering that the affected recipients relied on these disaster-relief payments years ago under the then-valid rules in place at the time.  *See* Fed. R. Civ. 19(a)(2); *see also Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).

Moreover, Plaintiffs identify no precedent in which an Article III court ordered the government to claw back previously distributed benefits from non-parties as a remedy for past discrimination.  Plaintiffs' reliance on *United States v. Wurts*, 303 U.S. 414 (1938), is misplaced.  *Wurts* and similar cases address the government's own authority to recover improperly paid funds, not the remedial powers of a court in an APA action.  *See id.* at 415 (addressing the government's "right to sue"); *LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168, 1175 (5th Cir. 1989) (allowing the government to assert a counterclaim to recover payments previously made to the plaintiff under a loan program); *Woods v. United States*, 724 F.2d 1444, 1448 (9th Cir. 1984) (holding that the government has the right to recoup "damages" for funds wrongfully, erroneously or illegally paid).  Whether

24

USDA could in theory pursue recovery in some separate proceeding is irrelevant to whether this Court may order clawbacks as a form of relief for Plaintiffs here.

Defendants take no position on whether it would be permissible for USDA to pursue a hypothetical recovery action against the farmers who received additional aid under the rescinded classifications. But assuming USDA could do so, federal courts generally presume that an agency's discretion *not* to take enforcement action is committed to agency discretion by law. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Plaintiffs are wrong to suggest that such action would be mandatory. *See* 77 at 4–5 (citing "mandatory requirements" to pursue clawbacks, detailed in Congressional Research Service, Recouping Federal Grant Awards: How and Why Grant Funds Are Clawed Back, https://crsreports.congress.gov/product/pdf/R/R48243 (Oct. 21, 2024)). At the outset, Plaintiffs fail to establish that USDA's prior aid payments would meet the statutory definition of "improper payments." As set forth in the Payment Integrity Information Act of 2019 (P.L. 116-117),

> The term "improper payment"—
> (A) means any payment that should not have been made or that was made in an incorrect amount, including an overpayment or underpayment, under a statutory, contractual, administrative, or other legally applicable requirement; *and*
> (B) includes—
>> (i) any payment to an ineligible recipient;
>> (ii) any payment for an ineligible good or service;
>> (iii) any duplicate payment;
>> (iv) any payment for a good or service not received, except for those payments where authorized by law; and
>> (v) any payment that does not account for credit for applicable discounts.

31 U.S.C. § 3351(4) (emphasis added).

Regarding the first prong, there is no dispute that USDA paid "the *correct* amount; it was just via an unconstitutional formula." Doc. 22 at 11 (emphasis added).

25

However, it is unclear whether an agency's revocation and disavowal of a payment formula as unconstitutional will cause a payment "correctly awarded" under that formula to be retroactively designated as "improper" under § 3351(4)(A).  *Id.*  In any event, the payments do not meet the second prong, as they were not made "to an ineligible recipient," "for an ineligible good or service," "for a good or service not received," or without accounting for a "credit for applicable discounts," nor were they "duplicate."  31 U.S.C. § 3351(4)(B).  The payments would thus not satisfy both prongs of the definition.

Finally, even assuming *arguendo* that USDA has an affirmative duty to claw back the prior aid payments, Plaintiffs have not requested mandamus relief, *see* 5 U.S.C. § 706(1), and would lack standing to do so even if they had.  Plaintiffs cannot demonstrate a judicially cognizable interest in the government's affirmative enforcement against a third party.  *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Because the Court cannot order retroactive monetary relief, compel clawbacks, or otherwise redress Plaintiffs' alleged past injuries, no judicially available remedy remains.

### 4.    Remand is Not Available

Where no judicially available relief remains, remand cannot be used to prolong a case in the hope that the agency might voluntarily provide retroactive compensation or some other "novel solution" to Plaintiffs' satisfaction.  Doc. 77 at 3.  Remand under the APA is not a standalone form of relief; it is a procedural mechanism available only where a court has identified unlawful agency action, and rather than vacating the action, allows the agency a chance to fix its reasoning or process.  *See* 5 U.S.C. § 706(2)(B) (providing that courts "shall . . . hold unlawful and set aside" agency action that is contrary to

constitutional right); *Chamber of Com. of United States v. United States Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023) (noting that "remand" is an exception to the Fifth Circuit's "default rule" of ordering "vacatur" of unlawful agency action); *see also SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (discussing five circumstances where an agency may or may not request a remand).  Once the challenged agency action has been rescinded and no judicially available remedy remains, remand cannot be used to keep the case alive or to invite the agency to confer relief beyond the court's remedial authority.

That is the posture here.  USDA eliminated the challenged race- and sex-based classifications through a binding Final Rule and a formal Notice published in the Federal Register.  Plaintiffs do not identify any ongoing agency action that the Court could lawfully set aside, nor any direct relief the Court could order that would redress their alleged injuries.  Instead, Plaintiffs seek a second remand so that USDA might, of its own accord, devise a hypothetical remedy for past disparities that the Court itself lacks authority to impose.  Article III does not permit courts to retain jurisdiction for that purpose.

Plaintiffs' own briefing underscores this point.  They do not ask the Court to order retroactive monetary relief, to claw back prior payments, or to impose any specific remedial scheme.  *See* Doc. 1 ¶ 37 (addressing this Court's authority to order prospective relief); *id.* at pp. 46–47 (omitting any request for retrospective relief); Doc. 77 at 5 ("Plaintiffs have not requested that this Court order USDA to provide a specific remedy.").  Rather, Plaintiffs ask the Court to declare that they remain injured and to remand the matter so that USDA may propose a remedy beyond the Court's remedial

27

authority.  That approach attempts to circumvent Article III and sovereign-immunity limits indirectly.

The Supreme Court has made clear that Article III confines the judicial power to disputes "traditionally amenable to, and resolved by, the judicial process."  *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (citation omitted).  Because USDA has rescinded the challenged classifications and no judicially available relief remains, dismissal—not remand—is the only disposition consistent with Article III and the APA.

**II.     Defendants Are Entitled to Summary Judgment on Plaintiffs' Remaining APA Claim Concerning Progressive Factoring**

Plaintiffs' sole remaining claim challenges USDA's use of "progressive factoring" to calculate benefits under ERP 2022.  That claim fails as a matter of law.  "Progressive factoring is a mechanism that ensures the limited available funding is distributed in a manner benefitting the majority of producers rather than a few."  88 Fed. Reg. at 74410, n.14.  And USDA is "well within its discretion to apply progressive factoring" for this purpose.  *Strickland*, 736 F. Supp. 3d at 479.  Plaintiffs' disagreement with USDA's policy choice does not render it arbitrary and capricious.  The record provides no basis to interfere with USDA's decision to maintain progressive factoring, where this method is race- and sex-neutral, falls within the scope of USDA's broad statutory discretion to allocate lump-sum appropriations, and is a rational and well-supported means of distributing limited disaster-relief funds to more farmers.

**A.     Progressive Factoring is Race- and Sex-Neutral**

Progressive factoring operates independently of any race- and sex-based classification.  It is applied before and independently of any producer designation and is driven by loss amounts alone.  *See* Comparison of ERP 2022 to ERP 2020/21 Features,

AR 873; AR 868 ("This approach maximizes available assistance to all small-scale operations."); AR 881 ("Progressive Factoring is designed to pay more to program participants who are due a gross payment of less than $30,000 under Track 1A (RMA Records), which is 82% of producers."); Doc. 21-1 ¶ 59.  The Court recognized this independence when it permitted USDA to continue applying progressive factoring "so long as that is done independently of any race- or sex-based considerations." *Strickland*, 736 F. Supp. 3d at 487.  And USDA has done so.  *See* 89 Fed. Reg. at 68125; 90 Fed. Reg. at 44623.

Plaintiffs nonetheless appear to maintain that progressive factoring is a covert means of race- and sex-discrimination.  *See* Doc. 77 at 6–7; Doc. 32 at 24–28.  That assertion is unsupported by the record.  On remand, USDA reconsidered ERP 2022, eliminated all race- and sex-based classifications from the program, and deliberately retained progressive factoring as a neutral payment-calculation methodology.  *See* 90 Fed. Reg. 44623.  Plaintiffs therefore cannot show that discriminatory intent was a substantial or motivating factor behind that decision.  *See Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016).  Nor do Plaintiffs offer any evidence that USDA, having repudiated race- and sex-based preferences across its discretionary programs, nevertheless retained progressive factoring as a disguised means of discrimination.  *Cf.* Docs. 52, 65, 69; 530D Letter; 90 Fed. Reg. at 30556–59; 90 Fed. Reg. at 44623–25.

At the summary judgment stage, Plaintiffs previously attempted to conflate progressive factoring with other elements of the ERP 2022 payment formulas that produced additional benefits to socially disadvantaged farmers.  *See* Doc. 32 at 25–27.  But those elements—such as premium refunds and percentage "top-ups"—are no longer

applied on the basis of race or sex following remand.  *See* 90 Fed. Reg. at 44625.  To the extent progressive factoring once interacted with those features to amplify a discriminatory effect, any such interaction has been eliminated.  What remains is a neutral, loss-based proration method that applies equally to all producers.

Plaintiffs therefore fail to demonstrate a "discriminatory impact and intent" behind progressive factoring, particularly following remand.  Doc. 32 at 28.  The Court should reject their APA challenge to progressive factoring on those grounds.  *See* Doc. 77 at 6–7; Doc. 32 at 24–28.

**B.**    **USDA's Decision to Employ Progressive Factoring is Committed to Agency Discretion and Entitled to Deference**

Plaintiffs' APA claim against progressive factoring fails for the additional reason that USDA's choice to adopt this payment-proration methodology is committed to agency discretion by law.  Agencies routinely make distributive judgments of this kind when administering finite appropriations, and courts are not empowered to second-guess those judgments simply because some recipients would have preferred a different allocation formula.  *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751–52 (D.C. Cir. 2002); *cf. Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).  Congress authorized the Secretary to distribute ERP 2022 funds under such terms and conditions "as determined by the Secretary," 136 Stat. at 5201, supplying no meaningful judicial standard for evaluating whether USDA should have chosen some alternative proration method over progressive factoring.  And USDA's choices regarding the appropriate method to allocate limited funds from a lump-sum appropriation are not reviewable, as Congress intentionally left such choices to agency judgment.  *See Lincoln*, 508 U.S. at 191.

30

The APA precludes judicial review of agency action "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  That exception applies to "certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion,'" *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 642 (D.C. Cir. 2020) (quoting *Lincoln*, 508 U.S. at 191), as well as where the statute granting the authority to act "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *id*. (quoting *Heckler*, 470 U.S. at 830).  Allocation decisions involving finite appropriations fall squarely within this category.  *See Lincoln*, 508 U.S. at 184.

In *Lincoln*, the Supreme Court held that an agency's allocation of funds from a lump-sum appropriation was unreviewable because Congress intentionally left such choices to agency judgment.  *Id.* at 192.  That is because "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id*. (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984).  The same principle applies here.  Title I of the Disaster Relief Supplemental Appropriations Act, 2023, provided a lump-sum appropriation "to remain available until expended," to aid with necessary expenses related to losses of revenue, quality, or production of crops, as a consequence of natural disasters in calendar year 2022, "under such terms and conditions as determined by the Secretary."  136 Stat. at 5201.  ERP 2022's payment-calculation methodology reflects USDA's response to that delegation and to the reality of insufficient funding to cover all projected losses.

31

Courts have extended *Lincoln*'s reasoning beyond classic enforcement decisions and beyond pure lump-sum contexts. *See Milk Train*, 310 F.3d at 751 (concluding that USDA's decision to impose a cap on a milk subsidy program was committed to agency discretion because Congress "left to the Secretary's sole judgment the determination of the manner for providing assistance to dairy farmers"); *Schieber v. United States*, 77 F.4th 806, 814 (D.C. Cir. 2023) (holding that the Department of State's administration of a compensation fund was unreviewable because the governing statute did not "direct[] the Secretary to allocate funds in any particular way—it just requires him to 'determine the amounts due.'") (quoting 22 U.S.C. § 2668a), *cert. denied*, 144 S. Ct. 688 (2024).

USDA's decision to adopt progressive factoring to govern the disbursement of funding in ERP 2022 is the same type of discretionary allocation judgment. *See Lincoln*, 508 U.S. at 192 ("[T]he very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."); *Donovan*, 746 F.2d at 861 (Scalia, J.) ("A lump-sum appropriation leaves it to the recipient agency (as a matter of law, at least) to distribute the funds among some or all of the permissible objects as it sees fit."). The distribution of a lump sum appropriation requires scores of discrete decisions to be made, including many day-to-day decisions of how payments will be calculated, distributed, and administered. Thus, "as long as the agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives, § 701(a)(2) gives the courts no leave to intrude." *Lincoln*, 508 U.S. at 193.

This area of agency discretion is separate from *Heckler*'s presumptively unreviewable non-enforcement decisions. *See Strickland*, 736 F. Supp. 3d at 477; *see*

32

*also Lincoln*, 508 U.S. at 192; *cf. Brazos Elec. Power Coop., Inc. v. Sw. Power Admin.*, 819 F.2d 537, 544 (5th Cir. 1987) (holding that the Flood Control Act's authorization to an agency to "transmit and dispose of such power and energy in such manner as to encourage the most widespread use thereof" provided "no meaningful standard by which to judge the propriety of [the agency's] actions" (citation omitted)). For these reasons, Defendant respectfully requests that the Court revisit its conclusion that the choice to adopt progressive factoring as part of ERP 2022's payment calculation is reviewable under the APA.

### C.    Progressive Factoring is Rational and Well-Supported

Finally, even if reviewable, Plaintiffs' challenge to progressive factoring as arbitrary and capricious fails on the merits. As the Court recognized in its preliminary injunction order, "[t]o satisfy arbitrary-and-capricious review, USDA must 'articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made.'" *Strickland*, 736 F. Supp. 3d at 477 (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020)). "Under this 'deferential' standard, a court 'simply ensures that the agency has acted within a zone of reasonableness.'" *Id.* (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). The record demonstrates that USDA acted well within a zone of reasonableness in selecting the progressive factoring payment-proration method in ERP 2022.

USDA's progressive factoring approach reflects a rational policy judgment about how to distribute scarce disaster-relief resources. Title I of the Disaster Relief Supplemental Appropriations Act, 2023 provided approximately $3.2 million in a lump sum "to remain available until expended, for necessary expenses related to losses of revenue, quality, or production losses of crops" under such terms and conditions "as

33

determined by the Secretary." 136 Stat. at 5201.  Faced with a shortfall, considering its estimations that crop losses exceeded $10 billion, USDA was required to choose among imperfect allocation methods.  *See* Doc. 21-1 ¶ 50.  In accordance with the Secretary's broad discretion to establish terms and conditions, payment factors are one way that USDA keeps program benefits within funding limits, in addition to tools such as payment caps and other eligibility qualifications, among other features.  *See, e.g.*, 86 Fed. Reg. at 48014 (providing that "[CFAP 2] payments to contract producers may be factored if total calculated payments exceed the available funding under 7 C.F.R. 9.203(o).").  Progressive factoring thus represents one such choice applied to ERP 2022.  *See* 88 Fed. Reg. at 74409–18.

Under the progressive factoring model, "farmers losing more recover less, while farmers losing less recover more."  *Strickland*, 736 F. Supp. 3d at 476 (citing 88 Fed. Reg. at 74410).  USDA's NOFA explained that the decision to cover 100 percent of initial losses and provide diminishing coverage for subsequent losses through progressive factoring helps ensure the limited available funding is distributed in a manner benefiting more producers.  *See* 88 Fed. Reg. at 74408, n.14.  Under this payment structure, over 80 percent of farmers received a greater benefit than they would have received under a general flat factor.  *See* Doc. 21-1 ¶ 112.  This generally resulted in smaller farmers receiving a benefit that was more economically significant to their operation than larger farmers because a dollar lost for a smaller farmer has a higher economic impact than a dollar lost for a larger farming operation.  *See* Doc. 21-1 ¶ 65; AR 597.  That Plaintiffs are among the 18 percent of farmers who received a relatively smaller benefit does not show that the decision to use progressive factoring was unreasonable.

Nor can Plaintiffs show that USDA's use of progressive factoring reflected a change of course without explanation, or that it violated any reasonable reliance interests. *See* Doc. 1 ¶¶ 283–300.[2]  *Ad hoc* disaster benefits are never guaranteed; they are always subject to Congressional appropriations.  This means that when Congress provides adequate funding, USDA can extend greater benefits to farmers.  By contrast, when Congressional appropriations are more limited, USDA must determine how to allocate these limited resources—and those decisions are necessarily unique to each program and context-specific.  Because ERP is not a permanently authorized disaster program, by the nature of this kind of *ad hoc* program, progressive factoring does not reflect a change in any consistent payment calculation policy—payment terms always vary.  Thus, as this Court already recognized, "the *ad hoc* nature of these Programs forecloses specific budgeting—and hence, concrete reliance interests" in any of ERP 2022's payment terms. *Strickland*, 736 F. Supp. 3d at 478.  No reasonable producer can or should do any sort of financial planning based on the assumption that an *ad hoc* disaster program that depends entirely on Congressional funding will cover their losses entirely or adequately.

Because Plaintiffs "cannot articulate the proper kind of reliance interests relevant to arbitrary-and-capricious review, . . . 'it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better[.]'" *Id.* (quoting *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009)).  As

---

[2] To the extent Plaintiffs may seek to challenge progressive factoring on a ground not raised in the pleadings, the Court should reject it. *See Med-Cert Home Care, LLC v. Becerra*, Civil Action No. 3:18-CV-02372-E, 2023 WL 6202050, at *11–12 (N.D. Tex. Sep. 21, 2023) (Brown, J.) (citing *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("[T]he district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *and Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) (Plaintiffs may not "raise new claims at the summary judgment stage. [. . .] At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).")).

35

discussed *supra* and as already held by this Court, USDA was well within its discretion and its statutory authority in adopting progressive factoring to distribute its limited available funding in a manner benefiting the greatest number of producers, rather than a few. *See id.* USDA acted reasonably in—and properly explained the underlying basis for—applying a payment structure that benefited more than 80 percent of farmers. *See, e.g.*, Doc. 21-1 ¶¶ 113-15; 88 Fed. Reg. at 74410, n.14. "[B]ased on the foregoing, progressive factoring easily satisfies arbitrary-and-capricious review under the APA." *Strickland*, 736 F. Supp. 3d at 478.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and deny Plaintiffs' request for a second remand or any other relief. The Court should dismiss, with prejudice, Plaintiffs' claims concerning the "socially disadvantaged" designations in the challenged programs, and enter partial summary judgment in Defendants' favor on Plaintiffs' remaining claim concerning progressive factoring.

Dated: January 16, 2025                    Respectfully submitted,

/s/ *Natalie M. Villalon*
NATALIE M. VILLALON
Trial Attorney (DC Bar #90015127)
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 860-9963
Natalie.M.Villalon@usdoj.gov

36

## CERTIFICATE OF SERVICE

On January 16, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Natalie M. Villalon*
Natalie M. Villalon
Trial Attorney
United States Department of Justice