**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

RUSTY STRICKLAND, *et al.*,

      *Plaintiffs*,

    v.

THE UNITED STATES DEPARTMENT
OF AGRICULTURE, *et al.*,

      *Defendants*.

Case No. 2:24-cv-00060-Z

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED
MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF
DEFENDANTS' COMBINED MOTION TO DISMISS IN PART AND
RENEWED CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Branch Director

NATALIE M. VILLALON
DC Bar No. 90015127
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 860-9963
Email: Natalie.M.Villalon@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

ARGUMENT......................................................................................................... 2

I.      Defendants Are Entitled to Dismissal of Plaintiffs' Moot APA Claims ................ 2

II.     The Court Cannot Estop the Government's Jurisdictional Defenses...................... 6

III.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Remaining APA
Claim Concerning Progressive Factoring ............................................................. 11

        A.      Plaintiffs Fail to Show Discriminatory Intent or Impact .................................. 12

        B.      Progressive Factoring Is Not Arbitrary or Capricious ..................................... 14

CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Amco Constr. Co. v. Mississippi State Building Comm'n*, 602 F.2d 730 (5th Cir. 1979) .. 6

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................................. 16

*Califano v. Westcott*, 443 U.S. 76 (1979) .......................................................... 4, 5

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016) ............ 10

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979)....................................... 3, 4

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998) ............................... 7

*Franciscan All., Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022).............................. 3

*Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312 (11th Cir. 2004)......................... 15

*Heckler v. Mathews*, 465 U.S. 728 (1984)............................................................ 5

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .................................................................. 15

*Louisiana v. United States*, 380 U.S. 145 (1965).............................................. 4, 5

*Med-Cert Home Care, LLC v. Becerra*, Civil Action No. 3:18-CV-02372-E, 2023 WL 6202050 (N.D. Tex. Sep. 21, 2023).................................................................. 14

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002)........................... 15

*Minnesota v. U.S.*, 305 U.S. 382 (1939) ............................................................... 6

*New Hampshire v. Maine*, 532 U.S. 742 (2001)................................................... 7

*Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990)...................................... 6

*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365 (1978) ..................... 6

*Pers. of Mass. v. Feeney*, 442 U.S. 256 (1979)............................................ 12, 13

*Schieber v. United States*, 77 F.4th 806 (D.C. Cir. 2023).................................. 16

*Strickland v. U.S. Dep't of Agric.*, 736 F. Supp. 3d 469 (N.D. Tex. 2024) ............... passim

*U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521 (5th Cir. 2012 ... 15

*United States v. Texas*, 599 U.S. 670 (2023) ....................................................... 5

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016)................................................. 12

*Washington v. Davis*, 426 U.S. 229 (1976)..........................................................................14

*Wells v. City of Alexandria*, 178 F. App'x 430 (5th Cir. 2006)...........................................2

*Westcott v. Califano*, 460 F. Supp. 737 (D. Mass. 1978)....................................................5

*Western Nuclear, Inc. v. Huffman*, 825 F.2d 1430 (10th Cir. 1987)...................................4

**Statutes**

5 U.S.C. § 553 .....................................................................................................................20

5 U.S.C. § 701 .....................................................................................................................15

5 U.S.C. § 702 .......................................................................................................................5

5 U.S.C. § 706.................................................................................................................. 1, 3

7 U.S.C. § 7001 .....................................................................................................................5

Disaster Relief Supplemental Appropriations Act, 2023, Div. N, Pub. L. No. 117–328,
   136 Stat. 4459 (2022)......................................................................................................15

**Regulations**

7 C.F.R. § 718.306 ................................................................................................................5

7 C.F.R. § 1400.105 ............................................................................................................18

**Federal Register**

*Agricultural Disaster Assistance Programs*, 90 Fed. Reg. 44623 (Sep. 16, 2025) ........ 1, 3

*Notice of Funds Availability; Emergency Relief Program (ERP)*, 87 Fed. Reg. 30164,
   30167 (May 18, 2022) .....................................................................................................18

*Notice of Funds Availability; Emergency Relief Program 2022 (ERP 2022)*, 88 Fed. Reg.
   74404 (Oct. 31, 2023). ............................................................................................. passim

*Removal of Unconstitutional Preferences Based on Race and Sex in Response to Court
   Ruling*, 90 Fed. Reg. 30555 (Jul. 10, 2025) ................................................................. 1, 3

*Revocation of Statement of Policy on Public Participation in Rule Making*, 78 Fed. Reg.
   33045 (June 3, 2013) .......................................................................................................20

**<u>Other Authorities</u>**

2022 Census of Agriculture, Table 61 (Selected Farm Characteristics by Race: 2022 and 2017), https://perma.cc/A573-6KW5 ............................................................... 13

FSA Fact Sheet (December 2009), https://perma.cc/9V2Y-EUAF .................................. 18

FSA, Payment Limitations, https://perma.cc/EV6S-4759 ................................................ 19

USDA Common Forms, https://perma.cc/JAX3-JT3L...................................................... 19

iv

**INTRODUCTION**

Plaintiffs' renewed motion for summary judgment should be denied. Plaintiffs' APA claims challenging USDA's former race- and sex-based "socially disadvantaged" classifications are moot because those classifications have been formally rescinded and must be dismissed for lack of Article III jurisdiction, and Defendants are entitled to summary judgment on Plaintiffs' remaining APA challenge to the use of progressive factoring in the Emergency Relief Program 2022 (ERP 2022).

This case no longer presents a live controversy as to the challenged classifications. USDA has admitted constitutional error, voluntarily sought remand of the challenged programs, eliminated the race- and sex-based classifications through binding agency action, and committed to administering its discretionary programs on a race- and sex-neutral basis moving forward. *See Removal of Unconstitutional Preferences Based on Race and Sex in Response to Court Ruling*, 90 Fed. Reg. 30555 (Jul. 10, 2025) ("July 2025 Final Rule"); *Agricultural Disaster Assistance Programs*, 90 Fed. Reg. 44623 (Sep. 16, 2025) ("September 2025 Notice"). In an APA case alleging equal protection violations, Plaintiffs' relief is now complete. *See* 5 U.S.C. § 706(2)(B).

Unable to contest mootness on those terms, Plaintiffs attempt to preserve jurisdiction by insisting that USDA must now remediate alleged past payment disparities through additional payments, clawbacks, credits, offsets, or some other novel economic mechanism. Doc. 87 at 33. But Plaintiffs never sought such relief in their complaint. *See* Doc. 1 at 46–47. And throughout this case, Plaintiffs repeatedly embraced this Court's conclusion that "Plaintiffs don't even seek economic relief." *Strickland v. U.S. Dep't of Agric.*, 736 F. Supp. 3d 469, 485 (N.D. Tex. 2024); *see, e.g.*, Doc. 22 at 5; Doc. 43 at 21; Doc. 61 at 3; Doc. 87 at 32. The Court lacks authority to order the relief that

1

Plaintiffs now seek in any event: Article III requires a judicially redressable injury, sovereign immunity bars retroactive monetary relief, Plaintiffs lack standing to seek clawbacks, which are also barred by statutory and regulatory authority, and remand cannot be used as an end-run around those jurisdictional limits. Doc. 85 at 16–26.

Plaintiffs' briefing underscores this problem. In one breath, they argue that Defendants should be estopped from denying the availability of retroactive economic relief. Doc. 87 at 14–17. In the next, they reiterate that they "don't even seek economic relief." *Id.* at 32 (quoting *Strickland*, 736 F. Supp. 3d at 485). They further insist that the remedy is "Plaintiffs' choice to make, as 'the plaintiff is the master of his complaint,'" *id.* (quoting *Wells v. City of Alexandria*, 178 F. App'x 430, 433 (5th Cir. 2006)), while simultaneously demanding that USDA "cure the injury however it sees fit," *id.* at 33, through remedies Plaintiffs never pleaded in the complaint and that the Court cannot compel. At bottom, Plaintiffs identify no form of relief this Court has jurisdiction to award that would redress their alleged injuries. That failure is dispositive.

Finally, the administrative record forecloses Plaintiffs' remaining APA challenge. USDA's race- and sex-neutral decision to apply progressive factoring in ERP 2022 was rational and well within its discretion to determine how to distribute limited disaster-relief funds when estimated uncovered losses exceeded available appropriations by billions of dollars. Plaintiffs have not shown discriminatory or arbitrary and capricious action. Summary judgment should therefore be entered for Defendants on that claim.

## ARGUMENT

## I.    Defendants Are Entitled to Dismissal of Plaintiffs' Moot APA Claims

Plaintiffs' renewed motion for summary judgment rests on the premise that this Court retains Article III jurisdiction over their challenges to USDA's former race- and

2

sex-based classifications because USDA has not "fully remedied" Plaintiffs' alleged injuries. That premise is incorrect.

Under the APA, the principal remedy available to a plaintiff challenging unlawful agency action is for a court to "hold unlawful and set aside" that action. 5 U.S.C. § 706(2). USDA has already done the functional equivalent here. It conceded that the race- and sex-based classifications were unconstitutional, eliminated them by rule and notice published in the Federal Register, and committed to operating the programs on a race- and sex-neutral basis going forward. *See* July 2025 Final Rule, 90 Fed. Reg. at 30555–59; September 2025 Notice, 90 Fed. Reg. at 44623–25. That relief fully resolves Plaintiffs' claims. Once an agency rescinds the challenged policy and replaces it with a lawful alternative, there is no longer a live controversy under the APA, and the claims are therefore moot. *See, e.g.*, *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022) ("The 2020 Rule gave Franciscan Alliance the remedy an APA violation called for—vacatur of the 2016 Rule's [challenged provisions]. Franciscan Alliance's APA claim sought nothing more. Nor could it have."); *see also* Doc. 85 at 11.

Plaintiffs offer no evidence or authority to defeat the presumption that USDA's application of the "socially disadvantaged" classifications will not reoccur, nor do they show that either the voluntary-cessation or the capable-of-repetition exception applies. *See* Doc. 85 at 13–16; *cf.* Doc. 87 at 19–20. Plaintiffs instead contend that the undisputed existence of past payment disparities keeps the case alive. They assert that these disparities have caused "financial equal protection" injuries that USDA's rulemaking did not address. Doc. 87 at 33; *see id.* at 19 (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Plaintiffs believe this Court has jurisdiction to oversee endless

3

remands until those injuries are "remediated" by some form of retroactive economic relief devised by the agency: additional payments ("leveling up"), clawbacks ("leveling down"), credits, offsets, or some other "novel" mechanism. *Id.* at 33. But none of those remedies were sought in the complaint. *See* Doc. 1 at 46–47. And the Court lacks authority to order them. *See* Doc. 85 at 16–26. Article III requires a judicially redressable injury, and remand cannot be used to coerce a federal agency to offer a remedy that the Court itself cannot award. *See id.* at 16–28.

The cases Plaintiffs cite do not compel a different result. *See* Doc. 87 at 20. In *County of Los Angeles v. Davis*, the Supreme Court vacated the court of appeals' affirmance of a district court decree that permanently enjoined a defendant's future discrimination and mandated affirmative-action efforts in hiring; the Court found the controversy moot because of the defendant's compliance with the district court's decree in the five years since its entry. *See* 440 U.S. at 627, 631–33. *Davis* is not analogous, and it certainly does not conflict with finding mootness here—if anything, it supports such a finding. In *Western Nuclear, Inc. v. Huffman*, the Tenth Circuit held that the defendants did not moot the case following the district court's decree when they conducted rulemaking that resolved procedural defects but not substantive defects that the decree did not reach. 825 F.2d 1430, 1434 (10th Cir. 1987). Here, USDA's rulemaking directly addressed—and eliminated—the substantive defects at issue by eliminating the socially disadvantaged classifications from the challenged programs.

Nor do *Louisiana v. United States*, 380 U.S. 145, 154 (1965), or *Califano v. Westcott*, 443 U.S. 76, 90 (1979), support Plaintiffs' assertion that "black letter equal protection law" requires retroactive economic relief to address prior payment disparities.

Doc. 87 at 14. *Louisiana* concerned prospective remedies, including an order deferring the implementation of a new voter-qualification law, and did not mandate any retroactive relief. *See* 380 U.S. at 154–55. *Califano* also affirmed a prospective extension of benefits, not retroactive extension. *See* 443 U.S. at 90; *Westcott v. Califano*, 460 F. Supp. 737, 753–54 (D. Mass. 1978) (ordering that the extension would operate "[w]ith respect to the future operation of these programs"). In any event, USDA has chosen as its remedial path not to extend the "socially disadvantaged" benefits but to eliminate them— and nothing in equal protection doctrine requires retroactive payments once an unlawful classification has been eliminated. *See Heckler v. Mathews*, 465 U.S. 728, 739 (1984).

Plaintiffs cannot avoid mootness by demanding relief the Court lacks jurisdiction to order. *See United States v. Texas*, 599 U.S. 670, 676 (2023) (To meet Article III standards, an injury must be "redressable in federal court."). Because USDA has eliminated rather than extended the "socially disadvantaged" benefits, Plaintiffs would not receive any additional payments if USDA were ordered to recalculate their past benefits based on the revised program rules. *See* Doc. 85 at 21. Thus, any monetary remedy that Plaintiffs might seek would constitute money damages—a remedy that is barred by sovereign immunity. *See id.* at 18–21; *cf.* Doc. 87 at 35–36; 5 U.S.C. § 702. The Court likewise lacks jurisdiction to order USDA to recalculate or claw back benefits paid to non-parties. *See* Doc. 85 at 23–26. Plaintiffs do not have standing to seek clawbacks, and USDA's payments are considered final under statutory and regulatory authority. *See id.*; 7 U.S.C. § 7001(a); 7 C.F.R. § 718.306.

Finally, Plaintiffs cannot preserve jurisdiction by seeking a remand designed to accomplish indirectly what Article III and sovereign immunity forbid directly. Remand

5

is not a substitute for jurisdiction.  Where the Court lacks authority to order the relief

Plaintiffs seek, it likewise lacks authority to retain jurisdiction in the hopes that the

agency might supply that relief on its own.  Doc. 85 at 26–28.

Accordingly, Plaintiffs' challenges to the race- and sex-based classifications are

moot and must be dismissed for lack of subject-matter jurisdiction.

**II.      The Court Cannot Estop the Government's Jurisdictional Defenses**

Plaintiffs contend that judicial estoppel prevents Defendants from invoking

sovereign immunity and Article III limitations on jurisdiction.  That argument fails at the

threshold.  Judicial estoppel cannot "lie against the Government as it lies against private

litigants," particularly in the context of the expenditure of public funds.  *Off. of Pers.*

*Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990).  While the Supreme Court has not reached

the question whether estoppel may ever be appropriate against the Government, it has

"reversed every finding of estoppel that [it] ha[s] reviewed."  *Id.* at 422.  And the

Supreme Court has made clear that "judicial use of the equitable doctrine of estoppel

cannot grant [a litigant] a money remedy that Congress has not authorized."  *Id.* at 426;

*see also Minnesota v. U.S.*, 305 U.S. 382, 389–90 (1939) (holding that sovereign

immunity cannot be waived by the government's litigation conduct).

Judicial estoppel also cannot override constitutional limits on federal judicial

power under Article III.  "Notions of waiver and estoppel cannot confer on a court of the

United States the jurisdiction to decide a claim."  *Amco Constr. Co. v. Mississippi State*

*Building Comm'n*, 602 F.2d 730, 733 (5th Cir. 1979).  It is well settled that "'asserted

inequity' is irrelevant to jurisdiction."  *Id.*; *see Owen Equipment & Erection Co. v.*

*Kroger*, 437 U.S. 365, 377 n.21 (1978) (same).  Courts have an independent obligation to

ensure that Article III jurisdiction exists at every stage of litigation, including where

6

mootness arises.  *See Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) ("[I]f the facts suggest mootness," then "a federal court is obligated to raise the issue.").

In any event, there is no basis for judicial estoppel.  In *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court identified several factors that typically inform the application of judicial estoppel: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading the court to accept the earlier position, such that acceptance of the later position would create the perception that the court was misled; and (3) whether the party would derive an unfair advantage or impose an unfair detriment if not estopped.  532 U.S. at 750–51.  None is satisfied here—except as to Plaintiffs' own conduct.

Defendants have acknowledged that their litigation posture regarding the availability of economic relief evolved as the case progressed.  *See* Doc. 85 at 22–23. But Defendants' present position—that the case is now moot and that the Court lacks authority to order retroactive economic relief—is not "clearly inconsistent" with any position Defendants successfully advanced earlier.  To the contrary, it aligns with the law of the case, as established by this Court's preliminary injunction order, and with the representations Plaintiffs themselves repeatedly urged.

At the outset of this case and through the preliminary injunction and initial summary judgment stages, Defendants defended the constitutionality of the challenged classifications and opposed vacatur or injunctive relief.  In that posture—and in response to a complaint alleging that Plaintiffs were underpaid in a calculable manner— Defendants argued in the alternative that, if relief were warranted, Plaintiffs' alleged injuries could be addressed through recalculation and payment of additional benefits,

7

rather than program-wide vacatur of the challenged classifications. *See* Doc. 21 at 17–19; Doc. 21-1 ¶¶ 89–93; Doc. 38 at 32–33; Doc. 44 at 12–16.  In other words, at *that* point, Defendants posited that "leveling-up" would be an available option *if* USDA kept the challenged classifications in the programs.

Plaintiffs and the Court rejected that argument.  *See* Doc. 22 at 2–6; *Strickland*, 736 F. Supp. 3d at 485.  Plaintiffs affirmatively disclaimed any request for economic relief, arguing that their injuries were stigmatic and that "[n]o way exists to compensate them for the indignity of being discriminated against by USDA."  Doc. 22 at 6.  They further questioned how USDA could permissibly recalculate benefits and expressly stated that they did not seek such relief:

> USDA never explains how it thinks it can recalculate Plaintiffs' payments at the rate available to its preferred races and sex through (presumably) some unspecified regulatory provision.  *See* ECF No. 21-1 ¶ 89.  Plaintiffs got paid the correct amount; it was just via an unconstitutional formula.  USDA does not explain how it could adjust amounts correctly awarded under a formula enacted through regulations with the force and effect of law.  *Nor, for that matter, do Plaintiffs seek such a remedy.*  *See* Compl., ECF No. 1, at 46–47.

*Id.* at 5 (emphasis added); *see id.* at 2–6.

The Court relied on those representations in granting the preliminary injunction, concluding that economic relief would not remedy Plaintiffs' injuries, that "Plaintiffs don't even seek economic relief," and that, here, "the *only* predicate for relief is stigmatic harm."  *Strickland*, 736 F. Supp. 3d at 485 (emphasis in original).

Only after obtaining a preliminary injunction did Plaintiffs pivot to suggest that payment adjustments might be required to "remedy" the alleged constitutional violation.  *Compare* Doc. 22 at 5 ("USDA never explains how it thinks it can recalculate Plaintiffs' payments . . . Nor, for that matter, do Plaintiffs seek such a remedy."), *with* Doc. 32 at 34

8

("To remedy the race and sex preferences, USDA must correct the payments[.]").  But when Defendants again argued that any relief should be limited to payment adjustments to Plaintiffs rather than vacatur or a permanent injunction, *see* Doc. 38 at 35, Plaintiffs pivoted back—reaffirming that they "don't even seek economic relief" and embracing the law of the case, Doc. 43 at 21 (quoting *Strickland*, 736 F. Supp. 3d at 485).

Defendants' posture changed in early 2025, when they ceased defending the constitutionality of the challenged classifications.  *See* Doc. 52 at 3; Doc. 61 at 4.  In that context, Defendants sought to resolve this case expeditiously by offering full monetary relief "to compensate Plaintiffs for their alleged financial loss" and agreeing to a voluntary remand to eliminate the challenged classifications.  Doc. 61 at 4.  Plaintiffs rejected that offer for monetary relief, again invoking the law of the case and reiterating that "Plaintiffs did not seek damages."  *Id.* at 3 (citing Doc. 26 at 20, *i.e.*, *Strickland*, 736 F. Supp. 3d at 485 ("Plaintiffs don't even seek economic relief.")).

Against that record, Defendants' present position is not inconsistent with any position that induced judicial reliance.  It is Plaintiffs—not Defendants—who have repeatedly changed positions regarding the relevance and availability of economic relief, doing so even in different sections of the same brief recently submitted to this Court. *Compare* Doc. 87 at 14–17, *with id.* at 32 (quoting *Strickland*, 736 F. Supp. 3d at 485).[1]

Nor did the Court condition remand on any understanding that USDA would recalculate Plaintiffs' past benefits.  *See* Doc. 87 at 17.  USDA made its plans for remand

---

[1] Anticipating Defendants' own estoppel argument against them, Plaintiffs assert that they "have been consistent about the nature of their injuries and the relief they requested" since "the beginning."  Doc. 87 at 14.  Not so.  Plaintiffs' complaint never requested "past" relief, as they now argue.  *Id.* (citing Doc. 1 at ¶¶ 174, 193, 212, and ¶ F).  And Plaintiffs have not consistently maintained that "prior financial shortfalls" must be addressed to fully resolve their injuries.  *Id.*  In fact, they expressly disclaimed that form of relief prior to receiving a favorable preliminary injunction order, *see* Doc. 22 at 5, and then inconsistently made that argument at the initial summary judgment stage, *compare* Doc. 32 at 34, *with* Doc. 43 at 21.

clear, *see* Doc. 61 at 4–5, Plaintiffs objected, and the Court declined to entertain briefing on the scope of remand before ordering it, *see id.* at 1 ("If the Court does not resolve this dispute now, it will likely need to when USDA returns from remand having failed to cure the equal protection injury inflicted by the challenged programs."); Doc. 65 at 2 n.1 ("Although the Court has declined to entertain briefing on the scope of the remand, Plaintiffs continue to believe that any remand that does not undo USDA's past discrimination will be insufficient to satisfy the APA."). Nothing in the record supports Plaintiffs' assertion that the Court assumed—contrary to the law of the case—that USDA would recalculate past payments after eliminating the challenged classifications.

Finally, Plaintiffs fail to show an unfair detriment. Defendants offered monetary relief through a Rule 68 offer of judgment, Doc. 61 at 4, which Plaintiffs rejected, *id.* at 3. Once rejected, that offer had no continuing force. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016), *as revised* (Feb. 9, 2016). Plaintiffs rejected the offer precisely because they said they did not seek damages, choosing instead to pursue remand with full knowledge that USDA would eliminate the challenged classifications prospectively and would not apply changes retroactively. Doc. 61 at 3; *see id.* at 4 ("During that remand, USDA is willing to take any available and necessary administrative steps *to no longer use* the race- and sex-based 'socially disadvantaged' designation in the challenged programs.") (emphasis added); *id.* at 4–5 (explaining why USDA would not retroactively recalculate and redistribute benefits for several legal and practical reasons, including appropriation caps and statutory and regulatory finality rules). Defendants do not obtain an unfair advantage by reassessing jurisdiction following a remand that provided Plaintiffs all the relief they were entitled to under the APA.

10

In sum, judicial estoppel cannot override Article III or sovereign immunity limits, and it fails on its own terms in any event. The Court should reject Plaintiffs' estoppel theory, maintain the law of the case, and take Plaintiffs at their word: "'Plaintiffs don't even seek economic relief.'" Doc. 87 at 32 (quoting *Strickland*, 736 F. Supp. 3d at 485). Where USDA's amended rules have provided Plaintiffs the equivalent of the relief sought in their complaint, and where Plaintiffs did not and cannot ask this Court to order the other retrospective economic remedies that they would like USDA to offer on its own, this Court no longer has a basis under Article III to maintain jurisdiction over Plaintiffs' claims concerning the socially disadvantaged classifications in the challenged programs.

**III.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Remaining APA Claim Concerning Progressive Factoring**

Plaintiffs' remaining claim challenges USDA's use of progressive factoring in ERP 2022. That claim fails. The administrative record shows that progressive factoring is a race- and sex-neutral mechanism adopted for a legitimate purpose. Plaintiffs have not shown discriminatory intent, disparate impact cognizable under the Constitution, or arbitrary and capricious action under the APA.

As USDA explained in the ERP 2022 Notice of Funding Availability (NOFA), progressive factoring provides 100 percent coverage of initial losses and diminishing coverage for subsequent losses in order to ensure that limited funds are distributed in a manner benefiting more producers. 88 Fed. Reg. 74404, 74410 n.14 (Oct. 31, 2023). Under this structure, more than 80 percent of producers received a greater benefit than they would have under a general flat factor. AR 881. Because a marginal dollar of loss has a greater economic impact on smaller operations, progressive factoring has generally resulted in more economically meaningful relief for those producers. Ducheneaux Decl.

11

¶ 65.  That Plaintiffs fall within the minority of producers who have received a comparatively smaller proportional benefit does not establish constitutional or APA error.

### A.    Plaintiffs Fail to Show Discriminatory Intent or Impact

Plaintiffs' constitutional challenge fails because progressive factoring is facially race- and sex-neutral, operates independently of any (now-eliminated) "socially disadvantaged" classification, and was adopted and retained for a legitimate purpose: distributing limited disaster-relief funds in a way that benefits the majority of producers. The administrative record forecloses any inference of discriminatory intent, and Plaintiffs offer no viable disparate impact theory.

To establish an equal protection violation, Plaintiffs must show that USDA "selected or reaffirmed" progressive factoring "at least in part 'because of' . . . its adverse effects" on a protected class.  *Pers. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *see Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (requiring a showing that that "racial discrimination was a substantial or motivating factor behind enactment" of the challenged policy).  Plaintiffs make no such showing.  They identify no evidence that progressive factoring had adverse effects on white (or white male) farmers as a class, much less that USDA adopted or retained it because of such effects.

Rather, progressive factoring applies uniformly to all producers regardless of race or sex.  Its purpose is to ensure that "limited available funding is distributed in a manner benefitting the majority of producers rather than a few."  88 Fed. Reg. at 74410 n.14. "Additionally, progressive factoring increases emergency relief payments to most participants while reducing larger potential payments which increases the proportion of funding provided to smaller producers."  *Id.*  Plaintiffs' relatively lower overall payment when progressive factoring is applied, rather than a flat factor, stems not from race or sex,

but from the scale of their losses—likely reflecting larger operations.  But "large farm operators" is not a protected class, and Plaintiffs' race does not convert the relative impact on large farms into unconstitutional discrimination.  To the contrary, considering the benefits that progressive factoring confers on small farms—the majority of which are owned by white farmers[2]—Plaintiffs cannot show that progressive factoring has had "adverse effects upon" white farmers as a class.  *Feeney*, 442 U.S. at 279.

Plaintiffs also mischaracterize how progressive factoring operates.  They assert that USDA "designed progressive factoring to give more money to smaller farmers at the expense of comparatively larger farmers," but that is incorrect.  Doc. 87 at 23 (citing 88 Fed. Reg. at 74410 n.14).  Progressive factoring does not award different amounts for the same losses; the ERP 2022 payment ranges apply to all producers equally.  Larger producers are not made to subsidize smaller ones, nor do smaller producers receive enhanced compensation for identical losses.  The premise that progressive factoring provides benefits to smaller farms "at the expense" of larger farms is particularly misplaced, as it suggests that larger farms are entitled to expect a flat factor—a claim this Court has already expressly rejected.  *See Strickland*, 736 F. Supp. 3d at 478.

Nor do Plaintiffs identify any evidence that progressive factoring was designed to benefit minority producers.  The materials they cite concern discrete payment adjustments, such as insurance premium refunds and a 15 percent "underserved" bump-up, that were analytically and operationally separate from progressive factoring.  *See* Doc. 87 at 22–23.  In any event, USDA eliminated race- and sex-based classifications from the "underserved" designation on remand, eliminating any conceivable basis to

---

[2] *See* 2022 Census of Agriculture, Table 61 (Selected Farm Characteristics by Race: 2022 and 2017), https://perma.cc/A573-6KW5.

13

maintain that progressive factoring is discriminatory based on how it interacts with other components of ERP 2022.  Plaintiffs offer no theory to support a claim that USDA maintained any discriminatory intent in September 2025 when it retained progressive factoring in ERP 2022 on remand.

Plaintiffs ultimately concede that progressive factoring is "facially neutral."  Doc. 87 at 24.  Their fallback assertion—that it nevertheless "has a discriminatory effect"— rests on conclusory statements unsupported by the record.  *Id.* at 21, 24.  USDA made no finding that progressive factoring reduced payments to white males as a class.  To the contrary, the record shows that progressive factoring benefited the majority of producers nationwide, including white farmers.  And even if Plaintiffs could show a disparate impact—which they cannot—disparate impact is not cognizable under the Constitution. *See Washington v. Davis*, 426 U.S. 229, 239 (1976).

### B. Progressive Factoring Is Not Arbitrary or Capricious

Plaintiffs also argue that progressive factoring is arbitrary and capricious under the APA.  They challenge (1) the placement of payment thresholds, (2) USDA's decision to steer funds toward smaller operations and shallower losses, and (3) the use of a per-producer payment structure.  Doc. 87 at 33–34.  Each argument fails.

As a threshold matter, Plaintiffs did not raise these specific challenges in their complaint, and the scope of their challenge to progressive factoring in the complaint cannot be read to include these issues.  *See generally* Doc. 1; *see* Doc. 38 at 13–15; Doc. 87 at 35 n.2.  As Plaintiffs had ample opportunity to amend their complaint to include them, these challenges should be rejected.  *See Med-Cert Home Care, LLC v. Becerra*, Civil Action No. 3:18-CV-02372-E, 2023 WL 6202050, at *11–12 (N.D. Tex. Sep. 21, 2023) (Brown, J.) (citing *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F.

14

App'x 521, 522 (5th Cir. 2012) ("[T]he district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) (Plaintiffs may not "raise new claims at the summary judgment stage . . . [where] the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).").

These arguments also challenge allocation decisions concerning lump-sum appropriations, a matter committed to agency discretion and not subject to APA review. *See* Doc. 85 at 30–33; 5 U.S.C. § 701(a)(2). Congress authorized the Secretary to distribute lump-sum ERP 2022 funds under such terms and conditions "as determined by the Secretary," 136 Stat. 4439, 5201 (2022), intentionally leaving the appropriate allocation method to agency judgment and supplying no meaningful judicial standard for evaluating Plaintiffs' particular contentions here. Where this Court has already recognized that, under ERP 2022, "the means of remuneration [is] subject to agency discretion," *Strickland*, 736 F. Supp. 3d at 478, it should further hold that the discretionary decisions that Plaintiffs challenge here—the payment thresholds, the aim to distribute relief more broadly, and the use of a per-producer payment structure—are particular exercises of discretion not subject to APA review. *See Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (holding an agency's allocation of funds from a lump-sum appropriation unreviewable because Congress intentionally left the matter to agency judgment, giving the agency "the capacity to adapt to changing circumstances"); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751–52 (D.C. Cir. 2002) (concluding that USDA's decision to impose a cap on a milk subsidy program was committed to agency discretion

15

because Congress "left to the Secretary's sole judgment the determination of the manner for providing assistance to dairy farmers"); *Schieber v. United States*, 77 F.4th 806, 814 (D.C. Cir. 2023) (holding that the Department of State's administration of a compensation fund was unreviewable because the governing statute did not specify how the Secretary must allocate funds), *cert. denied*, 144 S. Ct. 688 (2024).

Even if properly before the Court, Plaintiffs' arguments fail on the merits.  Under arbitrary and capricious review, the Court applies a deferential standard, asking only whether the agency has "articulate[d] a satisfactory explanation" for its action and "acted within a zone of reasonableness."  *Strickland*, 736 F. Supp. 3d at 477 (citations omitted).  USDA easily satisfies that standard here.

*First*, Plaintiffs challenge the specific breakpoints and percentages used in ERP 2022's progressive factor calculation as insufficiently explained, arguing that the breakpoints were inexplicably changed after an alleged "final decision" about them was made.  Doc. 87 at 26–27.  Plaintiffs make this argument because the breakpoints identified in May 2023 would have resulted in greater payouts than the breakpoints that were ultimately applied.  *See id.* at 26 ("A farmer with $100,000 in losses would be progressively factored down to $15,000 under the published system, but $32,500 under the formula in the memo.").  But while the May 2023 decision memorandum memorialized a final decision as to the overall payment structure, it did not reflect a final decision about specific breakpoints and ranges.  *Id.*  The modeling of breakpoints in the May 2023 memo was intentionally done on an interim basis and thus did not constitute final agency action.  *See id.*; *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (holding that final agency action must be one by which "rights or obligations have been determined").

16

The May 2023 memo acknowledged that the breakpoint factors and ranges in the progressive factoring calculation were subject to change.  *See* AR 863.  In a Pros/Cons list recommending that the Farm Service Agency (FSA) be the one to implement progressive factoring rather than a different agency, the first "Pro" in favor of FSA was the "[a]bility to easily update the factors/ranges (through a program load table handled within FSA), without a change on the application."  *Id.*  Under that point was a note that "[a]fter the application is live, only increases are allowed[,] not decreases to the factors."  *Id.*  The specific breakpoints and percentages thus could not be finalized until all losses were more certain, and the May 2023 memo contemplated that these analyses would be performed through a program load table handled within FSA.  *See id.*

Plaintiffs cannot show that it was arbitrary and capricious for FSA to refine the breakpoints before issuing the NOFA.  There was a good reason to allow changes to be made.  To help ensure that the program stays within funding limits, payment formulas must evolve and be re-modeled as loss data becomes more certain.  *See, e.g., id.* (referencing FSA's "program load table" and the need to perform "data calculations" in connection with changes to the factors/ranges); 88 Fed. Reg. at 74411 ("All ERP 2022 payments are subject to the availability of funding."); AR 870 (estimating uncovered losses to be $10.6 billion).  In addition to allowing breakpoint changes, FSA also implemented other safeguards to prevent cost overruns, including partial initial payments and later adjustments depending on available funds.  AR 884; AR 794; AR 900; *see also* 88 Fed. Reg. at 74414 ("If additional funding is available after ERP 2022 payments are issued, FSA may issue an additional payment, not to exceed the maximum amount

17

allowed by law[.]"). Thus, it was a rational and responsible decision to allow FSA to adjust the breakpoints in response to updated fiscal projections.

*Second*, Plaintiffs argue that USDA acted arbitrarily and capriciously by deciding to "steer funds to smaller operations and shallower losses" without explaining "*why* USDA did so." Doc. 87 at 28 (emphasis in original). But USDA explained that progressive factoring was adopted to ensure that limited available funding is distributed in a manner benefiting *more producers* rather than a few, 88 Fed. Reg. at 74410 n.14, and that this approach "maximizes available assistance to all small-scale operations," AR 868, while ensuring broader coverage when appropriations fall far short of total losses. USDA's rationale is both coherent and reasonable: when funding is insufficient to make producers whole, distributing relief more broadly ensures that a *greater number* of farming operations remain viable, rather than concentrating limited funds in a small subset of high-loss operations. That is a legitimate disaster-relief objective, and Plaintiffs' disagreement with that policy choice does not render it arbitrary or capricious. *See Strickland*, 736 F. Supp. 3d at 478 (recognizing USDA's broad discretion over disaster-relief payment structures).

*Third*, Plaintiffs challenge USDA's decision to calculate ERP 2022 benefits at the producer-payee level. Doc. 87 at 29–31. That approach is reasonable and well established. USDA has long used "direct attribution" across numerous programs, including ERP 2021. *See* FSA Fact Sheet (December 2009), https://perma.cc/9V2Y-EUAF; AR 795 (referring to 7 C.F.R. § 1400.105, "Attribution of Payments"); 87 Fed. Reg. 30164, 30167 (May 18, 2022) (ERP 2020/2021). This approach makes use of the information provided on existing USDA forms, including Form CCC-902 and CCC-901,

which are the forms producers use to report information about their farming operation to be used by FSA to determine the structure of entities for payment purposes throughout a given program year, and Form FSA-578, Report of Acreage. *See* USDA Common Forms, https://perma.cc/JAX3-JT3L. This approach is also consistent with how overall payment limitations are calculated, since they are similarly imposed at the producer level. *See* FSA, Payment Limitations, https://perma.cc/EV6S-4759. This approach also provides more direct relief to a greater number of producers who have an ownership interest in the crop, ensuring that relief reaches all individual owners with a stake in the affected crops.

Plaintiffs' criticisms oversimplify the complex ownership and attribution rules governing these programs. One cannot accurately calculate a projected ERP 2022 payment based on Plaintiffs' incomplete hypotheticals, *see* Doc. 87 at 30 n.9, which would depend on a number of additional factors, such as the specific business entities at issue, their farm operating plans, respective ownership interest, and the identification of crop unit(s) attributed to specific entities, *see* 88 Fed. Reg. at 74415 (describing ERP 2022 application requirements). There are pros and cons to all ownership arrangements, including particular tax and insurance benefits, and so there will always be business structures that benefit more (or less) under a given program. The APA does not require USDA to survey the effects of a particular payment structure for disaster-relief benefits across potential business formations, particularly in *ad hoc* programs where reliance interests are minimal. *See Strickland*, 736 F. Supp. 3d at 478. As such, no producer should structure their farm enterprise in an effort to maximize the returns in future, unannounced, disaster programs. *Id.*

19

*Finally*, Plaintiffs' stray comments about the lack of notice-and-comment rulemaking do not lend additional support to their argument or cast any doubt on the reasonableness of USDA's decision to apply progressive factoring in ERP 2022. *See* Doc. 87 at 25, 30. As Plaintiffs concede, *id.* at 25, full notice and comment rulemaking was not required, *see* 5 U.S.C. § 553(a)(2). Nor was it advisable, as USDA worked to issue time-sensitive disaster-relief funds to farmers in need. *See Revocation of Statement of Policy on Public Participation in Rule Making*, 78 Fed. Reg. 33045 (June 3, 2013). And in any event, USDA did solicit comments on the ERP 2022 NOFA. *See* 88 Fed. Reg. at 74405 ("We will consider comments we receive by January 2, 2024").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request for a second remand or any other relief, and grant Defendants' motion for dismissal in part and summary judgment in part.

Dated: February 3, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Branch Director

NATALIE M. VILLALON
DC Bar No. 90015127
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 860-9963
Email: Natalie.M.Villalon@usdoj.gov

*Counsel for Defendants*

20

**CERTIFICATE OF SERVICE**

On February 3, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Natalie M. Villalon*
Natalie M. Villalon
Trial Attorney
United States Department of Justice