IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| RUSTY STRICKLAND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | 2:24-CV-060-Z |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs brought this suit to challenge two aspects of disaster relief programs administered by the United States Department of Agriculture ("USDA"): (1) classifications based on race and sex that provided more disaster relief to "socially disadvantaged" farmers; and (2) "progressive factoring." After the USDA voluntarily modified the programs to remove classifications based on race and sex, two questions remain for the Court to resolve. First, is the USDA required to correct *past* payment imbalances resulting from the now-rescinded race and sex classifications? Second, is the USDA's decision to allocate funds using progressive factoring arbitrary and capricious?

Before the Court are dispositive motions from both parties addressing these two questions. On January 16, 2026, Plaintiffs filed a Motion for Summary Judgment ("Plaintiffs' Motion") (ECF No. 86), and Defendants filed a Combined Motion to Dismiss in Part and Motion for Summary Judgment ("Defendants' Motion") (ECF No. 85). The parties filed responsive briefs on February 3, 2026. ECF Nos. 91, 92. The Motions are now ripe.

The Court lacks jurisdiction to order retrospective correction of past payment imbalances. And USDA's decision to use progressive factoring *without* race- and sex-based

classifications is not arbitrary and capricious. Accordingly, Plaintiffs' Motion (ECF No. 86) is **DENIED** and Defendants' Motion (ECF No. 85) is **GRANTED**.

**BACKGROUND**

The Court recounted the factual background of this case at length in its order partially granting a preliminary injunction. *See* ECF No. 26. Thus, a truncated factual background, including an update on developments since that Order, will suffice.

Plaintiffs filed this lawsuit in early 2024—during the Biden Administration—challenging aspects of eight disaster relief programs administered by the USDA. ECF No. 1 at 15. The challenged programs provide emergency relief to farmers and ranchers who suffered losses due to adverse events including natural disasters, weather events, and the coronavirus pandemic. *Id.* at 14–29. The programs were funded by Congress via appropriations. *Id.* at 14–15. Because the appropriated funds were not sufficient to cover all eligible losses, USDA had to determine how to allocate the limited funds. *See* ECF No. 21 at 11–13.

Plaintiffs challenge two specific methods USDA used to determine how to allocate emergency relief funds. First, all eight programs allocated more funds to "socially disadvantaged farmers," which included (1) American Indians or Alaskan Natives; (2) Asians or Asian-Americans; (3) blacks or African-Americans; (4) Hispanics or Hispanic-Americans; (5) Native Hawaiians or other Pacific Islanders; and (6) women. *See* ECF No. 26 at 2. Plaintiffs are all white male farmers, in business with white male farmers, or entities owned by white male farmers. ECF No. 1 at 5–9. Thus, they each received less money in disaster relief from the challenged USDA programs than they otherwise would have based on race and sex. *Id.* at 29–39 (comparing the amounts each Plaintiff received under the challenged programs with what they would have received if they qualified as "socially disadvantaged.").

Plaintiffs challenged the "socially disadvantaged farmer" category as both not congressionally authorized and as a violation of the Fifth Amendment's Equal Protection guarantee. *Id.* at 39–43.

Second, one of the challenged programs—Emergency Relief Program 2022 ("ERP 2022")— used "progressive factoring" to allocate relief funds. ECF No. 1 at 23. Progressive factoring differs from the "flat factor" USDA previously used to allocate relief funds. *Id.* Under flat factoring, all affected farmers recover the same percentage of their losses. *Id.* For example, a farmer with $1,000 in losses and a farmer with $10,000 in losses could each recover 27% of their respective losses. *Id.* Under progressive factoring, however, USDA paid 100% of the first $2,000 in losses, 80% of losses from $2,001 to $4,000, 60% of losses from $4,001 to $6,000, 40% of losses from $6,001 to $8,000, 20% of losses from $8,001 to $10,000, and 10% of losses over $10,000. *Id.* The upshot: those who suffered smaller losses recover a greater percentage of their losses than those who suffered larger losses. *Id.* at 24. Plaintiffs operate large farming operations and receive less disaster relief under progressive factoring than they would under a flat factor. *Id.* at 47. They challenge USDA's decision to implement progressive factoring as "arbitrary and capricious" under the APA. *Id.* at 43–45.

Plaintiffs moved for a preliminary injunction enjoining the USDA from using its socially disadvantaged designation and progressive factoring when administering the eight challenged programs. ECF No. 10. After considering briefing on Plaintiffs' motion, the Court enjoined Defendants from relying on the socially disadvantaged designation, but not progressive factoring, when administering ERP 2022. ECF No. 26 at 1. The Court found Plaintiffs were likely to succeed on their equal protection claim as to both race and sex discrimination in ERP 2022, and that a preliminary injunction was otherwise appropriate. ECF No. 26 at 9–21. However, the Court found that progressive factoring "easily satisfies

arbitrary-and-capricious review under the APA." *Id.* at 5–8. Thus, the Court did not enjoin progressive factoring to the extent it is independent of race and sex classifications. *Id.* at 1. The USDA notified the Court that it would comply with the preliminary injunction order. ECF No. 27.

Thereafter, the parties filed motions for summary judgment (ECF Nos. 34, 38) and this case was potentially heading toward a final resolution. Then, President Trump took office. The Trump Administration changed the federal government's policy toward racial equity. *See* ECF No. 49. The Department of Justice reconsidered its position in this case and now agrees with the Court's preliminary injunction order finding the race- and sex-preferences in the challenged programs are likely unconstitutional. ECF No. 52. This change led the parties to agree to a voluntary remand for the USDA to reconsider the challenged programs. ECF Nos. 61, 65. On remand, USDA announced via a legally binding final rule and notice that it will no longer employ the race- and sex-based "socially disadvantaged" designation in the eight challenged programs, in addition to other programs not challenged here. ECF No. 69.

Plaintiff argues the remand did not fully satisfy either of its challenges in this case. On the "socially disadvantaged" designation, they note that while the remand "may address Plaintiffs' prospective injuries, they still have less money than they would if they were of a different race and sex" because USDA did not correct past payment imbalances. ECF No. 77 at 2. On progressive factoring, they argue the Court should reconsider its preliminary injunction reasoning in light of the full administrative record. *Id.* at 6–7. Thus, they request another remand to the USDA with instructions to remedy these injuries. *Id.* at 4–7.

Defendants argue "USDA's voluntary remand fully cured Plaintiffs' asserted equal protection injury by removing all race- and sex-based 'socially disadvantaged' designations from the challenged programs." ECF No. 77 at 7. Thus, they argue Plaintiffs' Equal

Protection claim is moot. On progressive factoring, they argue the Court should convert its preliminary injunction ruling on that issue into a final judgment. *Id.* at 12–13.

On the Court's order, the parties filed renewed motions for the dispositive relief they now seek. Defendants filed a Motion to Dismiss Plaintiffs' challenge to the socially disadvantaged designation, and a Motion for Summary Judgment on Plaintiffs' progressive factoring challenge. ECF No. 85. Plaintiffs filed a Motion for Summary Judgment seeking remand with instructions to cure the Plaintiffs' asserted injuries. ECF No. 86. The Court now considers the Motions.

## LEGAL STANDARD

### I. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may seek dismissal of an action for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). Federal courts have limited jurisdiction. They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A court must consider a jurisdictional challenge "before addressing any attack on the merits." *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). "If the court determines at any time that it lacks subject-matter jurisdiction the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

### II. Motion for Summary Judgment

Summary judgment is appropriate if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating both. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment "is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214–15 (5th Cir. 1996). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record." *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008). And it is the role of the court in an APA case to "sit[] as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022). In such a posture, the "entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). So summary judgment in an APA case "merely serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Oceana, Inc. v. Locke*, 831 F. Supp. 2d 95, 106 (D.D.C. 2011). Judicial review under the APA is limited to the administrative record. 5 U.S.C. § 706.

## ANALYSIS

### I. Challenge to the Socially Disadvantaged Designation

Plaintiffs first challenge the "socially disadvantaged" category, which allowed certain farmers to receive more disaster relief based on race and sex. ECF No. 1 at 39–43. Plaintiffs seek two types of relief: (1) *prospective* relief—changes to the programs to remove the race- and sex-classifications going forward; and (2) *retrospective* relief—correction of the past payment discrepancies based on race and sex. *See* ECF No. 87 at 22 ("To fully redress Plaintiffs' injuries, USDA always needed to (1) address the prior financial shortfalls

[retrospective relief] and (2) discontinue the use of race [and] sex in disaster relief payments [prospective relief].").

*A. Plaintiffs' Claim for Prospective Relief is Moot.*

The USDA has discontinued the use of race and sex in the challenged programs, so Plaintiffs' claim for prospective relief is moot. When a plaintiff brings an APA suit seeking vacatur of certain aspects of an agency regulation, his claim is moot if the agency voluntarily removes the challenged aspects. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022). Plaintiffs' Complaint asked the Court to "vacate and set aside the provisions of each of the challenged programs that apply race or sex preferences." ECF No. 1 at 46. On remand, USDA voluntarily removed the race and sex preferences from the challenged programs. *See Removal of Unconstitutional Preferences Based on Race and Sex in Response to Court Ruling*, 90 Fed. Reg. 30555 (July 10, 2025) ("July 2025 Final Rule") (removing race and sex classifications from the three of the challenged programs); *Agricultural Disaster Assistance Programs*, 90 Fed. Reg. 44623 (Sep. 16, 2025) ("September 2025 Notice") (removing the classifications from the other five challenged programs). Accordingly, Plaintiffs' claim seeking the removal of the race and sex preferences is moot.

The voluntary-cessation exception to mootness does not apply here. A defendant's voluntary conduct can only moot a case if "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). But courts "assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* Here, USDA removed the race and sex preferences through formally announced changes to official policies. *See* July 2025 Final Rule; September 2025 Notice. Thus, they are entitled to an assumption that the change was not mere litigation posturing. Moreover, USDA removed race and sex preferences from *other* programs not

challenged here and committed to not using race and sex classifications in the future. *See* July 2025 Final Rule at 30557 ("Moving forward, USDA will no longer apply race- or sex-based criteria in its decision-making processes, ensuring that its programs are administered in a manner that upholds the principles of meritocracy, fairness, and equal opportunity for all participants."). This is further evidence that USDA does not intend to revert to using race and sex classifications after this action is dismissed. Because the voluntary-cessation exception does not apply, Plaintiffs' claim is moot.

But the mootness of Plaintiffs' claim for *prospective* relief does not necessarily mean the claim for *retrospective* relief is moot. When a plaintiff seeks two forms of relief, and one is no longer available, the other saves the claim from being entirely moot. *See Powell v. McCormack*, 395 U.S. 486, 495–500 (1969). Thus, the Court considers the remaining possible form of relief: retrospective relief for past payment imbalances.

*B. The Court Lacks Jurisdiction over Plaintiffs' Claim for Retrospective Relief.*

Plaintiffs' retrospective relief seeks correction of payments made while the USDA was applying its "socially disadvantaged" category. *See* ECF No. 87 at 22. Because the Court cannot provide this relief, this claim must be dismissed for lack of jurisdiction.

**1. The Parties are not Estopped from Raising their Arguments.**

As a preliminary matter, both parties argue that the other is judicially estopped from raising their arguments related to Plaintiffs' claim for retrospective relief. The Court declines to apply judicial estoppel to either party's arguments.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)

(quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This doctrine is known as judicial estoppel. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." (internal marks omitted)). Courts should only apply judicial estoppel where (1) "the position of the party to be estopped is clearly inconsistent with its previous" position; and (2) the party "convinced the court to accept [the] previous position." *Id.* at 206. "[J]udicial estoppel is an equitable doctrine, and the decision whether to invoke it within the [district] court's discretion." *Id.* at 205.

Plaintiffs argue Defendants are judicially estopped from arguing "the Court cannot order [USDA] to provide more money to Plaintiffs," because Defendants argued the opposite on two prior occasions. ECF No. 87 at 15. First, when opposing Plaintiffs' Motion for a Preliminary Injunction, Defendants argued that Plaintiffs suffered no irreparable injury because USDA could "provide Plaintiffs adjusted benefit payments for each of the applications they claim were improperly processed if they obtain a favorable decision." ECF No. 21 at 14–15 (emphasis omitted). But the Court expressly rejected that argument when it granted Plaintiffs' request for a preliminary injunction. ECF No. 26 at 20 ("Economic relief will not help Plaintiffs here. First, Plaintiffs don't even seek economic relief."). Because the Court rejected Defendants' argument at the preliminary injunction stage, it cannot be the basis for judicial estoppel. *See In re Coastal Plains*, 179 F.3d at 206. Similarly, arguments Defendants raised during the first round of summary judgment briefing cannot judicially estop them here, because the Court did not rule on the merits of those arguments.

Second, Defendants made statements when agreeing to voluntary remand suggesting they would provide economic relief to Plaintiffs. *See* ECF No. 61 at 4 ("USDA is willing to provide relief to the six Plaintiffs in this case."); ECF No. 65 at 1–2 ("[T]he only remaining disagreement . . . [is] whether the remedy to USDA's constitutional violation should be

limited to the six plaintiffs in this case."). Plaintiffs argue the Court relied on these statements to grant voluntary remand, so Defendants should be estopped from contradicting them now. ECF No. 87 at 17. The Court rejects Plaintiffs' argument for two reasons. First, Defendants' statements did not suggest they would provide economic relief to Plaintiffs on remand, at least not as clearly as Plaintiffs now argue. Defendants contemplated providing financial compensation via an offer of judgment, not remand. *See* ECF No. 61 at 4.[1] And in the Joint Motion for Voluntary Remand, USDA's only firm commitment was to revising the challenged programs, not to providing economic relief. ECF No. 65 at 1 ("USDA intends to revise the challenged programs to cure the race and sex discrimination that the agency no longer defends."). But second, and more importantly, even if USDA implied it was considering providing economic relief on remand, the Court did not rely on those statements. In its Order granting voluntary remand, the Court cited only USDA's intention to *revise the challenged programs*. ECF No. 66. It did not rely on any statements that remand would financially compensate the Plaintiffs. *Id.* Because the Court did not rely on those supposed statements, they cannot be the basis for judicial estoppel. *See In re Coastal Plains*, 179 F.3d at 206.

For their part, Defendants argue *Plaintiffs* are judicially estopped from arguing that they can seek monetary relief here. ECF No. 85 at 22–23. At first glance, Defendants' argument is compelling. When seeking a preliminary injunction, Plaintiffs made statements that seem to suggest they do not seek financial relief at all. ECF No. 22 at 5 ("USDA does not explain how it could adjust amounts correctly awarded under a formula enacted through regulations with the force and effect of law. *Nor, for that matter, do Plaintiffs seek such a remedy.*" (emphasis added)). But considering the totality of Plaintiffs' preliminary injunction briefing, it is clear they anticipated economic relief at some point in the case. ECF No. 11 at

[1] Plaintiffs presumably rejected Defendants' offer of judgment. *See* ECF No. 61 at 3 ("Plaintiffs . . . anticipate rejecting USDA's FRCP 68 offer."); *see also* ECF No. 91 at 10.

2–3 ("[I]t will harm the public less, and be easier for USDA to remedy the discrimination at issue, if less money has unlawfully left the government's coffers."); *id.* at 23 ("[I]f [Plaintiffs] prevail, USDA must make the disaster relief equal, even though it has already spent much of what Congress has given it."). Thus, the Court interprets Plaintiffs' arguments about not seeking an economic remedy to be limited to the relief they sought via preliminary injunction.[2] Plaintiffs are not judicially estopped from arguing they seek economic relief.

Because neither party is judicially estopped, the Court proceeds to consider their jurisdictional arguments about retrospective relief.

**2. Sovereign Immunity Bars Plaintiffs' Retrospective Relief.**

Sovereign immunity bars "a suit by private parties seeking to impose a liability which must be paid from public funds in the . . . treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, (1974). While the federal government can waive its sovereign immunity, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* Where the government has not waived its sovereign immunity, the Court lacks subject matter jurisdiction to hear the claim. *See Armendariz-Mata v. DOJ*, 82 F.3d 679, 682 (5th Cir. 1996) ("[C]ourts may not exercise subject matter jurisdiction over a claim against the federal government except as Congress allows.").

Plaintiffs point to the Administrative Procedure Act ("APA") as the statutory source of waiver here. *See* ECF No. 87 at 31. The APA waives sovereign immunity for challenges to agency actions "seeking relief *other than money damages*." 5 U.S.C. § 702 (emphasis added). To be sure, "[t]he fact that a judicial remedy may require one party to pay money to another

[2] To the extent the Court made similar comments when partially granting the preliminary injunction (ECF No. 26 at 20), those comments were similarly limited to the preliminary injunction context.

is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Instead, the term "money damages" distinguishes between "specific relief," which is allowed, and "compensatory, or substitute, relief," which is not. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). When a plaintiff seeks payment of money from the government, Courts consider the request to be for specific relief only if it "is seeking funds to which a statute [or other law] allegedly entitles it." *Bowen*, 487 U.S. at 901; *see also Fort Bend Cnty. v. United States Army Corps of Eng'rs*, 59 F.4th 180, 191 (5th Cir. 2023) ("[W]here the statute in question specifically mandates the payment of money, the suit may go forward under Section 702."). Otherwise, the request is for money damages, and is not allowed under the APA. *See Bowen*, 487 U.S. at 901.

Plaintiffs request money damages, because the regulation in question does not entitle Plaintiffs to a correction of the past payments. The challenged programs previously provided "socially disadvantaged" farmers increased benefits. *See* ECF No. 1. USDA amended the program by *removing* those increased benefits—it did not alter the calculation of Plaintiffs' benefits in any way. ECF No. 69. Thus, Plaintiffs are not entitled to any additional funds under the programs. *See* ECF No. 85 at 21.

Plaintiffs present two primary arguments that their request is for specific relief, and thus is allowed under the APA. First, Plaintiffs argue the funds they seek will remedy an equal protection injury, and they are entitled to equal protection by the United States Constitution. ECF No. 92 at 21. But "the Equal Protection Clause . . . do[es] not mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). To show they are entitled to money as a form of specific relief, Plaintiffs must point to a source of law that "specifically mandates the payment of money" by the government. *Fort Bend Cnty.*, 59 F.4th at 191. Because they have not done so, any order from

this Court requiring USDA to give Plaintiffs more money could only be an award of money damages. *See Bowen*, 487 U.S. at 901.

Second Plaintiffs insist they are not requesting "money damages" at all because they request another *remand* to the USDA. ECF No. 87 at 31–32. "The requested remand is not money damages because it does not compel monetary relief—monetary relief is just one possible result of several the USDA can select from." *Id.* at 32. For example, Plaintiffs suggest USDA could (1) clawback funds previously awarded to "socially disadvantaged" farmers, or (2) provide prospective credits and debits in future programs. *Id.* at 33.

Plaintiffs' argument fails. To begin, the Court cannot order remand unless it has jurisdiction over the claim. *See Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 434 (2026) (Thomas, J., concurring) ("[I]f a federal court determines that it lacks jurisdiction in a case, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal marks omitted)). And here, the Court only has jurisdiction if the requested relief is allowed by the APA. *See Lane*, 518 U.S. at 192; *Armendariz-Mata*, 82 F.3d at 682.

Neither alternative form of relief Plaintiffs propose save their claim. Clawbacks here are squarely foreclosed by statute. *See* 7 U.S.C. § 7001(a) ("[N]o action may be taken by the [USDA] to recover amounts found to have been disbursed as a result of a decision in error [after 90 days]."). Plaintiffs insist "clawbacks are lawful," but do not address the specific statutory impediment to *these* clawbacks. *See* ECF No. 87 at 34.

As to Plaintiffs' suggestion that the USDA could provide debits or credits in *future* programs to correct the past payment imbalances, this relief is barred by sovereign immunity. Sovereign immunity bars any suit "seeking to impose a liability which must be paid from public funds in the . . . treasury." *Edelman*, 415 U.S. at 663. Plaintiffs' suggestion

imposes liability to be paid from public funds because it assumes the existence of future USDA disaster relief programs. USDA's disaster relief programs are *ad hoc*—farmers are not *guaranteed* access to relief funds from programs not yet in existence. *See* ECF No. 26 at 7 ("While Plaintiffs might *anticipate* disaster relief, the *ad hoc* nature of these Programs forecloses specific budgeting."). This theory of relief is not subject to waiver by Section 702 of the APA, because Plaintiffs have shown no specific statutory entitlement to a future relief program with debits and credits to correct past payment imbalances. *See Bowen*, 487 U.S. at 901; *Fort Bend Cnty.*, 59 F.4th at 191. Because neither alternative form of relief is available here, this case is not within the Court's subject matter jurisdiction.

The Plaintiffs are correct that "the same financial disparity based solely on their race and sex exists now as existed at the outset of the case." ECF No. 87 at 19. That does not change the Court's result. Equal protection plaintiffs are not always entitled to a complete, retrospective remedy. "[W]hen the right invoked is that of equal treatment, the appropriate remedy is a mandate of equal treatment." *Heckler v. Matthews*, 465 U.S. 728, 740 (1984) (emphasis omitted). Equal treatment can be achieved by either: (1) "extension of benefits to the excluded class" (leveling up); or (2) "withdrawal of benefits from the favored class" (leveling down). *Id.*; *see also* Aziz Z. Huq, *The Discrete Charm of Leveling Down*, 90 GEO. WASH. L. REV. 1487, 1498 (2022). Here, Plaintiffs argue leveling up or leveling down *requires* a retrospective correction of the payment imbalances. ECF No. 87 at 33. But when a statute extends a benefit to one class and excludes another, the choice between leveling up and leveling down is primarily about which class the remedy operates on: the benefit is either extended to the formerly excluded class or removed from the formerly benefited class. *See Sessions v. Morales-Santana*, 582 U.S. 47, 72–73 (2017). It does *not* mandate retrospective application of the remedy. In fact, the Supreme Court has, on more than one occasion, found

that only a prospective remedy for an Equal Protection injury is appropriate, despite the theoretical possibility of a retrospective remedy in each instance. *See id.* at 77 (finding a leveling down remedy should apply only *prospectively*); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 634 n.12 (2020) (same). As the Supreme Court put it in *United States v. Testan*, retrospective remedies "are for the Congress to provide and not for the courts to construct." 424 U.S. 392, 404 (1976).

Concluding, Plaintiffs' claim for prospective relief is moot, and the Court lacks subject matter jurisdiction over the claim for retrospective relief. Thus, the Court **DISMISSES without prejudice** Plaintiffs' claims challenging the socially disadvantaged designation for lack of jurisdiction. *See Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 468 (5th Cir. 2020) (dismissal for lack of jurisdiction is without prejudice).

**II. Progressive Factoring is not Arbitrary and Capricious.**

For the reasons stated in this Court's June 7, 2024 Order (ECF No. 26), the Court concludes that progressive factoring is reviewable, but when implemented without race and sex classifications, is not arbitrary and capricious under the APA. *See F.T.C. v. Assail, Inc.*, 98 F. App'x 316, 317 (5th Cir. 2004) (noting that district courts have the authority to convert preliminary relief into final relief). The Court will briefly address the new arguments presented by Plaintiffs.

First, Plaintiffs argue progressive factoring was designed with unlawful discriminatory intent and has a discriminatory effect. ECF No. 87 at 21–24. For the most part, Plaintiffs complain about vacated aspects of the program—they even acknowledge as much. *Id.* at 22 ("USDA has ceased its explicit race and sex discrimination."). The only evidence they point to showing discriminatory intent and effect *remain* in the program after remand is the fact that USDA justifies progressive factoring as benefitting smaller producers,

and USDA believed at the time that members of the "socially disadvantaged" group usually operated smaller farms. *Id.* at 87. But this evidence is not sufficient to establish USDA implemented progressive factoring "because of" its discriminatory effect. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279–80 (1979). When it initially adopted progressive factoring, USDA was not shy about race- or sex-discrimination. It *expressly* provided extra benefits to members of its preferred races and sex. *See* ECF No. 1 at 22–29. If USDA implemented progressive factoring to discriminate, it would not have hidden it through implications in successive footnotes. *See* ECF No. 87 at 23.

Next, Plaintiffs argue progressive factoring is arbitrary and capricious. ECF No. 87 at 24–30. They begin by arguing the specific breakpoints used in USDA's implementation of progressive factoring were set—and modified—without detailing how USDA made those decisions. *Id.* at 26–27. But the record demonstrates reasonable explanations for these choices. In a document listing the "pros" and "cons" of FSA implementing progressive factoring, USDA listed the following as a positive: "Ability to easily update the factors/ranges (through a program load table handled within FSA) without a change on the application." Combined with the fact that expected losses more than tripled the amount of available funding (ECF No. 30-3 at 111), this provides a sufficient explanation for both the choice of breakpoints and the modification: ensuring sufficient funds remained in the program. *See also* 88 Fed. Reg. at 74410, n.14 (explaining that progressive factoring reflects choices about how USDA should allocate limited funding). Under the APA's "deferential" standard, USDA sufficiently "explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Plaintiffs also argue progressive factoring is arbitrary and capricious because USDA did not explain why it wanted to benefit smaller operations. ECF No. 87 at 28. But USDA did

explain this decision: It wanted to provide more benefit to a larger number of producers. 88 Fed. Reg. at 74410, n.14 ("Progressive factoring is a mechanism that ensures the limited available funding is distributed in a manner benefitting the majority of producers rather than a few.").

Finally, Plaintiffs argue USDA did not explain why it applied progressive factoring on a per-producer basis and note that progressive factoring produces odd results when applied on a per-producer basis. ECF No. 87 at 28–30. But as Defendants explain, USDA regularly uses direct attribution in its programs. *See* ECF No. 91 at 18–19. And USDA *did* consider and explain its decision to apply progressive factoring at the producer level. ECF No. 30-3 at 103. According to USDA, the benefits of doing so included: (1) minimizing disturbance on the application process; (2) higher payments to primary policy holders; (3) more accurate calculations of a progressive factor; and (4) accommodating producers' ability to opt out certain crops. *Id.* Any of these explanations standing alone would likely have been enough to meet the APA's low bar. Taken together, they are more than sufficient to prelude a finding that progressive factoring is arbitrary and capricious. *See Prometheus Radio Project*, 592 U.S. at 423.

In short, Plaintiffs' new arguments do not persuade the Court to change its initial determination that "progressive factoring easily satisfies arbitrary and-capricious review under the APA." ECF No. 26 at 8. Accordingly, Plaintiffs' APA challenge to progressive factoring is **DISMISSED with prejudice**.

## CONCLUSION

For the reasons above, Plaintiffs' Motion (ECF No. 86) is **DENIED** and Defendants' Motion (ECF No. 85) is **GRANTED**. Plaintiffs' challenges to the socially disadvantaged

classification are **DISMISSED without prejudice**. Plaintiffs' challenge to progressive factoring is **DISMISSED with prejudice**.

**SO ORDERED.**

September 30, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE